UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

CARRIE M. LEO,

                          Plaintiff,


               -v-                                        Index No. 6:20-cv-07039

                                                          (Hon. Frank P. Geraci, Jr.)
NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL
CONSERVATION, and THE UNITED STATES DEPARTMENT
OF AGRICULTURE, and the following INDIVIDUALS, in their
individual and official capacities: BASIL SEGGOS—
Commissioner, SONNIE PERDUE—Secretary, WILLIAM
POWELL—Lieutenant/Captain, DEC Division of Law
Enforcement, JOSEPH THERRIEN—Director, DEC Special
Licenses Unit, ANDREA D'AMBROSIO—USDA Animal Care
Inspector, and John/Jane Does #1-15.

                          Defendants.
_____


**STATE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS**


                              LETITIA JAMES
                              Attorney General of the State of New York
                                *Attorney for State Defendants*
                              The Capitol
                              Albany, New York 12224



BRITTANY M. HANER
MICHELE ROMANCE CRAIN
*Assistant Attorneys General,*

               Of Counsel

Dated:    March 22, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS .................................................................................................................................. 2

ARGUMENT ....................................................................................................................... 5

I.   LEO FAILED TO STATE ANY DUE PROCESS CLAIM, WHICH WOULD IN
     ANY EVENT BE TIME-BARRED ........................................................................... 7

     A.  The Court Lacks Jurisdiction over Leo's Due Process Claims............................ 8

     B.  Leo Lacks a Federally Protected Right or Interest............................................... 9

         1.  Possession of the Animals and DEC-Issued Licenses ................................. 10

         2.  Operating a Wildlife Rehabilitation Center ................................................. 11

     C.  Leo's Due Process Claims Related to the Thomas Litigation are Precluded by the
         Doctrine of *Res Judicata* .................................................................................. 13

     D.  Leo Lacks a Federally-Protected Right to Be Free from Reputational Injury and
         Failed to State a "Stigma Plus" Claim .............................................................. 13

     E.  Leo's Substantive Due Process Claims are Duplicative .................................... 15

II.  LEO FAILED TO STATE EQUAL PROTECTION OR CONSPIRACY CLAIMS
     AND THEY ARE TIME-BARRED............................................................................ 16

III. LEO FAILED TO STATE A CLAIM FOR UNREASONABLE SEARCH AND
     SEIZURE CLAIMS AND SUCH CLAIMS WOULD BE TIME-BARRED ........... 19

IV.  LEO FAILED TO STATE FREE SPEECH OR RETALIATION CLAIMS......................... 20

III. LEO SEEKS UNAVAILABLE RELIEF ................................................................... 22

CONCLUSION................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*13391 Broadway LLC v. Vill. of Alden*,
No. 19-CV-882S, 2020 U.S. Dist. LEXIS 222942 (W.D.N.Y. Nov. 30, 2020) ...............14, 18

*Ahlers v. Rabinowitz*,
684 F.3d 53 (2d Cir. 2012)........................................................................14, 27

*Albright v. Oliver*,
510 U.S. 266 (1994)..................................................................................23

*Algarin v. Town of Wallkill*,
421 F.3d 137 (2d Cir. 2005)........................................................................21

*Austin v. Cuomo*,
No. 1:20-ev-00893, 2020 U.S. Dist. LEXIS 235383 (W.D.N.Y. Dec. 15,
2020) ..................................................................................................13, 20, 29

*Ayeni v. Mottola*,
35 F.3d 680 (2d Cir. 1994)..........................................................................26

*Barrett v. State*,
220 N.Y. 423 (1917) .................................................................................17

*Bldg. Indus. Elec. Contractors Ass'n v. City of N.Y.*,
2011 U.S. Dist. LEXIS 86759 (S.D.N.Y. Aug. 4, 2011) *aff'd* 678 F.3d 184 (2d
Cir. 2012) ....................................................................................... 13, 25, 28-29

*Board of Regents v. Roth*,
408 U.S. 564 (1972)................................................................................ 17-18

*Boddie v. Schneider*,
105 F.3d 857 (2d Cir. 1997).........................................................................28

*Brady v. Town of Colchester*,
863 F.2d 205 (2d Cir 1998).........................................................................28

*Carnell v. Myers*,
No. 17-CV-7693 (KMK), 2019 U.S. Dist. LEXIS 40392, *21 (S.D.N.Y. Mar.
13, 2019) ...............................................................................................22

*Carnell v. Myers*,
U.S. Dist. LEXIS 40392 .............................................................................23

*Cityspec Inc. v. Smith*,
   617 F. Supp. 2d 161 (E.D.N.Y. 2009) ..................................................................18

*Collins v. Suffolk Cty. Police Dep't*,
   349 F. Supp. 2d 559 (E.D.N.Y. 2004) *vacated in part, on other grounds at*
   U.S. Dist. LEXIS 130 (E.D.N.Y. 2005)...........................................................29

*Corley v. City of N.Y.*,
   No. 1:14-cv-3202-GHW, 2017 U.S. Dist. LEXIS 162761, *19 (S.D.N.Y. Sep.
   28, 2017.......................................................................................................28

*Curley v. Vill. of Suffern et al.*,
   268 F.3d 65 (2d Cir. 2001)...............................................................................27

*Eagleston v. Guido*,
   41 F.3d 865 (2d Cir. 1994)...............................................................................13

*Easton v. Sundram*,
   947 F.2d 1011 (2d Cir. 1991) *cert. denied*, 504 U.S. 911 (1992)...........................28

*Evelyn Alexander Wildlife Rescue Ctr. Inc. v. N.Y. State Dep't of Envtl.*
   *Conservation*,
   57 Misc. 3d 1213(A) (Sup. Ct.) ........................................................................17

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013)...............................................................................13

*Global Network Commc'n, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006)...............................................................................16

*Gordon v. Semrug*,
   No. 14-CV-324S, 2017 U.S. Dist. LEXIS 78275 (W.D.N.Y. May 23, 2017).........................12

*Harlen Assocs. v. Inc. Village of Mineola*,
   273 F.3d 494 (2d Cir. 2001)...............................................................................24

*Horton v. California*,
   496 U.S. 128 (1990).........................................................................................26

*Kaluczky v. City of White Plains*,
   57 F.3d 202 (2d Cir. 1995)...............................................................................14

*Kenmore Mercy Hosp. v. Daines*,
   No. 09-CV-162S, 2011 U.S. Dist. LEXIS 105941 (W.D.N.Y. Sep. 18, 2011).........................24

*Lauro v. Charles*,
   219 F.3d 202 (2d Cir. 2000)...............................................................................20

*Leo v. Thomas*,
No. 13-21-00022-CV, 2021 Tex. App. LEXIS 1370 (Tex. App. Feb. 25, 2021)...................10

*Leo v. Thomas*,
Tex. App. LEXIS 1370 (Tex. App., 13th Dist. 2021)...............................................................20

*Luck v. Mazzone*,
52 F.3d 475 (2d Cir. 1995)........................................................................................................17

*Malsh v. Austin*,
901 F. Supp. 757 (S.D.N.Y. 1995) ...........................................................................................26

*Milan v. Wertheimer*,
808 F.3d 961 (2d Cir. 2015)......................................................................................................13

*Mills v. Noonan*,
No. 1:16-cv-00984-MAT, 2017 U.S. Dist. LEXIS 56972 (W.D.N.Y. Apr. 13,
2017) ...........................................................................................................................................26

*Miner v. Clinton Cty.*,
541 F.3d 464 (2d Cir. 2008)......................................................................................................24

*Monahan v. New York City Dep't of Corr.*,
214 F.3d 275 (2d Cir. 2000)......................................................................................................20

*Morse v. University of Vt.*,
973 F.2d 122 (2d Cir. 1992)......................................................................................................13

*N. Am. Soccer League, LLC v. US. Soccer Fed'n, Inc.*,
883 F.3d 32 (2d Cir, 2018)........................................................................................................29

*Natale v. Town of Ridgefield*,
170 F.3d 258 (2d Cir. 1999)......................................................................................................14

*Okure v. Owens*,
816 F.2d 45 (2d Cir. 1987), *aff'd*, 488 U.S. 235 (1989) .........................................................12

*Pauk v. Board of Trustees*,
654 F.2d 856 (2d Cir.1981), *cert. denied*, 455 U.S. 1000 (1982)...........................................13

*Paul v. Davis*,
424 U.S. 693 (1976)............................................................................................................ 20-21

*Rinaldi v. Holt, Rinehart & Winston*,
42 N.Y.2d 369 (1977), *cert. denied*, 434 U.S. 969 ................................................................22

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984)...................................................................................................................27

*Rodriquez v. Margotta*,
 71 F. Supp. 2d 289 (S.D.N.Y. 1999)................................................................18

*Rosenberg v. Martin*,
 478 F.2d 520 (2d Cir. 1973)..........................................................................20

*Ruston v. Town Board. for Town of Skaneateles*,
 610 F.3d 55 (2d Cir. 2010).......................................................................24-25

*Sadallah v. City of Utica*,
 383 F.3d 34 (2d Cir. 2004).......................................................................21-22

*Segal v. City of New York*,
 459 F.3d 207 (2d Cir. 2006)..........................................................................22

*Siegert v. Gilley*,
 500 U.S. 226 (1991)....................................................................................21

*Steinhilber v. Alphonse*,
 68 N.Y.2d 283 (1986)..................................................................................22

*Triestman v. Fed. Bureau of Prisons*,
 470 F.3d 471 (2d Cir. 2006)..........................................................................14

*Vaher v. Town of Orangetown*,
 916 F. Supp (S.D.N.Y. 2013)........................................................................27

*Velez v. Levy*,
 401 F.3d 75 (2d Cir. 2005).......................................................................14, 23

*Village of Willowbrook v. Olech*,
 528 U.S. 562 (2000) (per curiam).................................................................24

*Vitek v. Jones*,
 445 U.S. 480 (1980)....................................................................................21

*Webster v. Himmelbach*,
 271 F. Supp. 3d 458 (W.D.N.Y. 2017) .......................................................13, 19

*Whalen v. Cty. of Fulton*,
 126 F.3d 400 (2d Cir. 1997)..........................................................................12

*Woods v. Candela*,
 13 F.3d 574 (2d Cir. 1994)...........................................................................12

*Yaman v. D'Angelo*,
 206 F. Supp. 2d 394 (W.D.N.Y. 2002) ......................................................15-16

*Zahra v. Town of Southold,*
    48 F.3d 674 (2d Cir. 1995)............................................................................18

*Zherka v. Amicone,*
    634 F.3d 642 (2d Cir. 2011)..........................................................................27

**CONSTITUTIONS**

U.S. Const. Amend. XVI
    § 1.A........................................................................................................23

**FEDERAL STATUTES**

42 U.S.C.
    § 1983.................................................................................................... 8-9

**STATE STATUTES**

ECL
    § 11-0105 ...............................................................................................17
    § 11-0515 ..........................................................................................16, 18

**STATE REGULATIONS**

6 NYCRR
    § 175........................................................................................................18
    § 175.6(e)................................................................................................26
    § 184........................................................................................................18
    § 184.6(a)(3)...........................................................................................19
    § 184.6(a)(8)...........................................................................................26

**RULES**

CPLR
    § 214(5)..............................................................................................12, 27
    § 217(1).........................................................................................13, 16, 28
    § 7804(b) .................................................................................................13

FRCP
    § 8(a)(2) ...................................................................................................12
    § 8(e) .......................................................................................................12
    § 12(b)(1) ..................................................................................13, 16, 28-29
    § 12(b)(6) ............................................................................................13, 25

**MISCELLANEOUS AUTHORITIES**

https://www.dec.ny.gov/hearings/395.html (last visited Mar. 21, 2021)......................25

## PRELIMINARY STATEMENT

Plaintiff, Carrie M. Leo, seeks to reverse the practical consequences of the New York State Department of Environmental Conservation's (DEC or Department) enforcement actions against her as the former operator of a wildlife rehabilitation center. She seeks to hide or have removed any record of the Department's enforcement and to be immunized from its consequences in unrelated litigation she has brought against a Texas wildlife rehabilitator.

Leo brings this action against DEC and the United States Department of Agriculture (USDA) for declaratory and injunctive relief under 42 U.S.C. § 1983 (§ 1983) and, without tying any facts to particular legal theories, requests that the Court punish DEC staff whom she believes are responsible for DEC's enforcement against her and grant an injunction requiring DEC to take enforcement action against her former colleague, Tyler Thomas (Thomas), the Texas rehabilitator. She also asks the Court to adjudicate issues pending in state court.

Leo formerly held two DEC-issued licenses for the possession and rehabilitation of regulated animals. Department staff undertook regulatory enforcement action for numerous violations of her licensing conditions. As required by its regulations, the Department held an administrative hearing before it revoked Leo's license to collect and possess regulated wildlife (possession license). DEC published the resulting Commissioner's Order on its website. At the same time that DEC gave notice of its intent to revoke her possession license, it also denied Leo's application for a license to rehabilitate regulated wildlife (rehabilitation license). Additionally, DEC in part denied requests Leo made pursuant to the state Freedom of Information Law for records, which are currently the subject of litigation in state court. Leo seems to suggest that the Department's actions amount to adverse interference in her pending, separate litigation with Thomas, concerning the possession of certain animals.

Leo's allegations against the Department sound in substantive and procedural due process, equal protection/conspiracy, freedom from unreasonable searches and seizures, and freedom of speech or retaliation. But Leo has failed to state any claim and, even if she had, each would be time-barred under § 1983, New York Civil Practice Law and Rules (CPLR) Article 78, or both.

## FACTS

Leo lives in Walworth, New York, where she operated a wildlife rehabilitation center. Complaint (Compl.) at 2, 4. She complains of events that allegedly occurred between November 15, 2015 and December 6, 2019.[1] In 2012, DEC issued to Leo a rehabilitation license that expired on December 31, 2016. Haner Declaration (Dec.), Exhibit (Ex.) C. Leo alleges that on November 7, 2015 DEC inspected her wildlife center in response to a neighbor's complaint. Compl. at 4-5. She alleges that, at that time, she was licensed and DEC saw nothing of concern. *Id*. On May 16, 2016, DEC returned and seized half a dozen coyotes from her. *Id*. at 5. Leo's rehabilitation license expired on December 31, 2016. *Id.*

On January 25, 2017, Leo applied for a new rehabilitation license. Haner Dec., Ex. D. On August 14, 2017, DEC denied that application and issued notice of intent to revoke Leo's possession license, which had expired more than a year earlier.[2] *Id.,* Exs. B at 2, E, F. A DEC administrative law judge (ALJ) held a hearing on March 13, 2018 that concluded with a hearing report containing recommendations to the DEC Commissioner. *Id.* On November 7, 2018 the Commissioner adopted the recommendations, revoked Leo's possession license, and ordered her to transfer or dispose of all DEC-regulated wildlife she still had. *Id.*, Ex. A.

---

[1]     For purposes of this motion, the State defendants assume the truth of Leo's allegations.

[2]     Leo's possession license expired on July 7, 2016 and she applied to renew it on July 18, 2016. Haner Dec., Exs. B at 2, G (renewal application). Instead of denying the application DEC initiated an administrative enforcement proceeding to revoke, which entitled her to a hearing.

Defendants' motion will focus mainly on actions alleged to have occurred on or after December 4, 2017 because the Complaint was filed on December 4, 2020; any claims predicated on earlier actions are time-barred. Leo describes many events that occurred more than three years before she filed her complaint. For example, she alleges that on July 16, 2016, DEC issued 11 criminal citations and that she pleaded guilty to two of the charges—according to Leo, one of those charges was for keeping opossums in a cage overnight in the winter and another for was for submitting her annual license log late. Compl. at 5; *see also* Haner Dec., Ex. B at 10-11 (pleaded guilty to violation for providing improper opossum caging). She also complained that her stepfather, the owner of the property where the wildlife center was located, was cited by the Town of Walworth in May 2016. *Id.*

Leo further alleges that, on an unknown date in 2017, DEC Captain William Powell (Powell) and DEC Officer Kevin Thomas (Officer Thomas)[3] made her "take the entire center down," even though it had been inspected by the Town zoning officer in 2015. *Id.* In April 2017, she boarded several animals with Thomas, a colleague, who never returned them. Leo believes DEC assisted Thomas in relocating the animals to Texas. *Id.* Since that time, she has been attempting to recoup the animals. *Id.* Leo asserts that on September 10, 2018, an unidentified court granted her a preliminary injunction for the return of the animals and states that an unnamed defendant told her that the animals were stolen or dead. *Id.*[4] Leo further alleges that DEC gave documents to Thomas that prejudiced her rights. *Id.* at 5, 7, 9. She alleges that since the injunction issued, Powell, Joseph Therrien (Therrien), and James Farquhar of DEC, and

---

[3]     DEC Officer Kevin Thomas (Officer Thomas) and Tyler Thomas (Thomas) are two different individuals.

[4]     Leo apparently withdrew her appeal in that litigation on February 25, 2021. *See Leo v. Thomas*, No. 13-21-00022-CV, 2021 Tex. App. LEXIS 1370 (Tex. App. Feb. 25, 2021).

Andrea D'Ambrosio and Tonya Hadjis of USDA, have acted against her interests by secretly protecting her "friend"—presumably Thomas—but she fails to state when or how this occurred. *Id.* at 5. Without details or dates, Leo claims that the DEC, USDA, and Thomas have conspired to keep her animals away from her. She alleges that DEC staff, including Powell and Therrien, conspired against her and made false statements about her. *Id.* at 5, 7. Specifically, she alleges that Powell and Therrien, and "possibly other [DEC] officers," defamed her, presumably to Town officials and witnesses in the Thomas litigation, by accusing her of animal cruelty and starving animals. *Id.* at 6-7. She also alleges that Powell solicited false testimony and manipulated potential witnesses (it is unclear what she means by "potential witnesses"). Leo goes on to allege that DEC staff members Powell, Therrien, Paul Stringer, and James Farquhar misrepresented the status of her DEC licenses, and that Powell and Therrien incited her neighbors to act against her, including vandalizing her center and unlawfully releasing her animals. *Id.* at 6.

Leo claims that DEC denied the renewal of her license and violated a multitude of unspecified rules and regulations during that process, and that DEC wrongly accused her of unspecified legal violations. *Id.* at 6. Lastly, she alleges that DEC attempted to entrap her by failing to process her rehabilitation license application timely. *Id.* at 7.

Leo seeks no monetary relief against DEC but asks the Court to require DEC to: (1) provide a copy of the "phone summary" and "orders" mentioned in a November 2017 email from Therrien to Thomas and alluded to by Thomas in a December 2019 Facebook post; (2) provide her with unredacted emails; (3) cease and desist from collaborating with Thomas; (4) remove the Commissioner's Order for her administrative case from its website because she is getting threats and receiving angry remarks; (5) cease and desist all "retaliatory efforts"; (6) punish supervisory

staff who committed misconduct; (7) revoke Thomas's licenses; (8) work with the State of Texas to charge Thomas with "unlawful import" of animals; and (9) terminate the employment of Powell, Officer Thomas, Therrien, James Farquhar, and Paul Stringer. She also seeks a declaration as to the status of her possession license (a) on April 23, 2017, (b) on July 2017, and (c) before the November 7, 2018 Commissioner's Order. *Id.* at 10-11.

## ARGUMENT

Leo's allegations appear to implicate: substantive and procedural due process; equal protection/conspiracy; 4th Amendment protection from unreasonable searches and seizures; and 1st Amendment freedom of speech and retaliation for protected speech.[5] Leo failed to state a claim under any of these theories, but even if she had, each of them would be time-barred. Many of her claims are not properly before the Court, and Leo seeks various forms of unavailable relief. For these reasons, the Complaint should be dismissed.

To state a valid § 1983 claim, Leo must allege that she was (1) deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States and (2) the challenged conduct was attributable to a person acting under color of law. *See, e.g., Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). A plaintiff need only aver "a short and plain statement showing that the pleader is entitled to relief," and "[a]ll pleadings shall be so construed as to do substantial justice." FRCP 8(a)(2), 8(e). The statute of limitations period applicable to § 1983 suits in New York is three years and is borrowed from the general or residual state statute for personal injury actions. CPLR § 214(5); *see also Okure v. Owens,* 816 F.2d 45 (2d Cir. 1987), *aff'd* 488 U.S. 235 (1989); *Gordon v. Semrug*, No. 14-CV-324S, 2017 U.S. Dist. LEXIS 78275, *11 (W.D.N.Y. May 23, 2017). Federal law determines when a § 1983 accrues. *Woods v.*

---

[5]       *See* December 28, 2020 Screening Order. [Docket 5].

*Candela,* 13 F.3d 574 (2d Cir. 1994); *Morse v. University of Vt.,* 973 F.2d 122, 125 (2d Cir. 1992). A § 1983 claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of his claim. *See, e.g., Milan v. Wertheimer,* 808 F.3d 961, 963 (2d Cir. 2015); *Pauk v. Board of Trustees,* 654 F.2d 856, 859 (2d Cir.1981), *cert. denied,* 455 U.S. 1000 (1982). Where the alleged constitutional violation results in an improper restraint on a plaintiff's protected liberty interest, the claim accrues when the restraint is *initially imposed* and not when a subsequent violation by a defendant, based on the same, initial unconstitutional conduct, occurs. *Webster v. Himmelbach*, 271 F. Supp. 3d 458, 467 (W.D.N.Y. 2017); *Austin v. Cuomo*, No. 1:20-ev-00893, 2020 U.S. Dist. LEXIS 235383, *17-18 (W.D.N.Y. Dec. 15, 2020) (accord). "[T]he proper focus is on the time of the [unlawful] act, not the point at which the consequences of the act become [] painful." *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994) (internal citations omitted).

"[A CPLR] Article 78 proceeding is the proper vehicle to determine whether the law has been lawfully applied, or the validity of certain government acts pursuant to a valid statute . . ."). *Bldg. Indus. Elec. Contractors Ass'n v. City of N.Y.*, 2011 U.S. Dist. LEXIS 86759 (S.D.N.Y. Aug. 4, 2011) *aff'd* 678 F.3d 184 (2d Cir. 2012). CPLR Article 78 claims are subject to a four-month statute of limitations, CPLR § 217(1), and can only be heard in state court, *id.* § 7804(b), so the Court does not have subject matter jurisdiction over them, FRCP 12(b)(1) (lack of subject matter jurisdiction is grounds for dismissal).

Courts review the grant of a motion to dismiss *de novo*, accept as true all factual allegations, and draw all reasonable inferences in favor of plaintiffs. *See, e.g., Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). To survive a FRCP 12(b)(6) motion to dismiss, the complaint must plead enough facts to state a claim that is plausible, though a

complaint filed *pro se* is held to a less stringent pleading standard than one filed by counsel. *See, e.g., Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012). Courts will liberally construe complaints filed *pro se* to state the strongest arguments that they suggest. *See, e.g., Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

## I.

### LEO FAILED TO STATE ANY DUE PROCESS CLAIM, WHICH WOULD IN ANY EVENT BE TIME-BARRED

Leo appears to allege that her due process rights were violated each time DEC took enforcement action against her. Compl. at 5-9. Additionally, she seems to allege that her substantive due process rights were violated because she cannot possess regulated animals, her DEC licenses were revoked or denied to her, and her wildlife center failed. *Id.*

To state a claim for a procedural due process violation, Leo must show that she (1) has a constitutionally cognizable liberty or property interest, (2) was deprived of that interest, and (3) did not receive constitutionally adequate process in the course of the deprivation. *See, e.g., Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir. 1999). Similarly, to state a claim for a substantive due process violation, Leo must allege (1) a valid property or liberty interest (2) that was infringed upon in an arbitrary or irrational manner. *See, e.g., Velez v. Levy*, 401 F.3d 75, 85 (2d Cir. 2005). "Substantive due process protects against government action that is arbitrary, capricious, conscience shocking, or oppressive in a constitutional sense." *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir. 1995). It is an "outer limit on the legitimacy of governmental action." *Natale v. Town of Ridgefield*, at 263. And it "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action . . ." *13391 Broadway*

*LLC v. Vill. of Alden*, No. 19-CV-882S, 2020 U.S. Dist. LEXIS 222942, * 36 (W.D.N.Y. Nov. 30, 2020).

### A.     The Court Lacks Jurisdiction over Leo's Due Process Claims

Leo purports to state several procedural due process claims. Specifically, she says DEC deprived her of procedural due process by: (1) citing her criminally for eleven regulatory violations related to licensing requirements in 2016; (2) removing coyotes from her possession in 2016; (3) conducting an administrative proceeding to revoke her possession license that concluded with a November 2018 DEC Commissioner's Order; and (4) denying her application for a rehabilitation license on August 14, 2017. Compl. at 5-9; *see also* Haner Dec. Exs. A (Commissioner's Order), B (Hearing Report), C (Rehabilitation License), D (Application), E (Denial Letter), F (Notice of Intent). More specifically, Leo alleges that DEC did not give her notice that she unlawfully possessed animals up to the time Thomas boarded them for her; she could not meaningfully participate in the administrative proceeding to revoke her possession license; DEC refused to automatically renew her rehabilitation license in violation of its own rules; and DEC failed to acknowledge her attempts at redress. Compl. at 6, 7, 14. These claims are not properly before the Court because they are challenges to DEC's regulatory enforcement actions that must be brought under CPLR Article 78, which would be time-barred.

In *Yaman v. D'Angelo*, 206 F. Supp. 2d 394 (W.D.N.Y. 2002), a retail jewelry business owner sued individual police officers under § 1983, claiming that his constitutional rights were violated when he was denied a license to operate his business without due process. The plaintiff alleged that the license denial was an act of retaliation by the officers because he argued with them over their accusations of criminal activity. He further alleged that the officers began a campaign of harassment that forced him to close his business. The *Yaman* court held that no due process violation occurs where a state employee intentionally deprives an individual of property

8

or liberty, so long as the state provides a meaningful post-deprivation remedy. It further held that CPLR Article 78 provided a perfectly adequate remedy whether the alleged deprivation resulted from random acts or state procedures. *Id.* at 398-399. Leo similarly seems to accuse DEC staff of retaliation in their regulatory enforcement against her and claims that her licenses were revoked/denied without due process. Likewise, Article 78 provided Leo with a meaningful remedy to the Department's enforcement actions. Accordingly, this Court lacks jurisdiction over any procedural due process claims, which should be dismissed (that Leo brought her Article 78 challenge too late, or not at all, does not mean the remedy was unavailable). FRCP 12(b)(1).[6]

**B.      Leo Lacks a Federally Protected Right or Interest**

Even if the Court had jurisdiction over Leo's procedural due process claims, she still failed to state any such claim. Leo appears to argue that she was deprived of her right to possess and rehabilitate animals regulated by DEC under New York law. Compl. at 5-9; ECL § 11-0515. She may also have alleged that she was deprived of her right or privilege to carry DEC licenses for that purpose, and she argues that DEC unlawfully denied her application for a rehabilitation license. Compl. at 5, 6.[7] As set forth below, Leo does not have a federally-protected right or privilege to possess the DEC-regulated animals at issue, nor to DEC licenses for that purpose.

---

[6]      Leo filed her Complaint more than four months after DEC issued its November 7, 2018 Commissioner's Order and denied her rehabilitation license application on August 14, 2017. *See* CPLR § 217(1). Leo did not pursue an initial attempt to challenge the Order. Rather, she served DEC with a CPLR Article 78 petition that was not properly filed with the County Clerk. Haner Dec. ¶ 8, Ex. H (Wayne County Court Letter). The Wayne County Supreme Court gave her an opportunity to cure the filing defect, but she failed to file the petition. Haner Dec. ¶ 8. "A court can take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Global Network Commc'n, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir. 2006) (internal citations omitted).

[7]      Although legally irrelevant to deciding this motion, Leo states incorrectly that she applied to renew a rehabilitation license. Compl. at 6. In fact, she submitted an application for a new one because her license expired on December 31, 2016. Haner Dec, Exs. C (rehabilitation license), D (application) (submitted January 25, 2017).

She also has no right or privilege to operate a wildlife rehabilitation center. Therefore, she cannot satisfy an essential element of a § 1983 claim—that she was deprived of such a right or privilege—under either a substantive or procedural due process theory and failed to state a claim.

### 1.    Possession of the Animals and DEC-Issued Licenses

Leo seems to allege that her substantive due process rights were violated because she cannot possess certain regulated animals and because DEC licenses were revoked or denied to her. But she does not have the requisite property interest in either the animals or the licenses to invoke substantive due process protections. Compl. at 5-9.

The Due Process Clause of the 14th Amendment does not create the property interests that it protects. "Such property interests are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Luck v. Mazzone*, 52 F.3d 475, 477 (2d Cir. 1995) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Therefore, any property interest Leo might have arose under New York law. But New York law creates no property interest in possession of wild animals. *See, e.g.*, *Evelyn Alexander Wildlife Rescue Ctr. Inc. v. N.Y. State Dep't of Envtl. Conservation*, 57 Misc. 3d 1213(A), \*5 (Sup. Ct.) ("ECL §11-0105 clearly establishes that the State of New York owns all fish, game, and wildlife and the right of the State to protect wild animals is too well established to be called into question . . . Any purported right petitioners allege over wildlife is not a property right protected by due process.") (citing *Barrett v. State*, 220 N.Y. 423 (1917)). Indeed, the requirement that an individual obtain a license to possess a regulated animal undermines any argument that a property right exists.

Leo also lacks a property interest in the *benefit* of having DEC licenses. "[T]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate

10

claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). New York law

does not provide "a legitimate claim of entitlement to" licensure, *id*., and indeed reserves

discretion to DEC to approve, deny, and revoke licenses and applications for licensure, and to

revoke licenses. *See* ECL § 11-0515; 6 NYCRR Parts 175, 184; *see also 11391 Broadway LLC

v. Village of Alden*, *33-34 (holding that no property interest exists where defendant village had

a high level of discretion in granting mobile home park licenses and plaintiff receiving one was

not a near certainty, noting that there is nothing automatic about issuance of a license in that

case); *see also Zahra v. Town of Southold,* 48 F.3d 674, 680 (2d Cir. 1995) (inquiry focuses on

degree of discretion the deciding authority has in arriving at its decision, rather than an estimate

of probability that it will make a specific decision). Because Leo lacks a property interest in the

benefit of any DEC license, she has failed to state a claim.

### 2.    Operating a Wildlife Rehabilitation Center

Leo seems also to allege that her substantive due process rights were violated when DEC

or its staff caused the failure of her wildlife rehabilitation center. Compl. at 5, 9, 12. The 14th

Amendment secures the liberty to "engage in any of the common occupations of life." *See, e.g.,

Cityspec Inc. v. Smith,* 617 F. Supp. 2d 161, 169 (E.D.N.Y. 2009) (quoting *Board of Regents v.

Roth,* at 572). But it "is not so broad as to protect the right to a particular job." *Cityspec Inc.,* at

169. "It is well settled that one must have no ability to practice one's profession at all in order to

state a claim for deprivation of a liberty interest." *Rodriquez v. Margotta,* 71 F. Supp. 2d 289

(S.D.N.Y. 1999) (internal citations omitted). First, Leo's conduct, and not the conduct of DEC or

its staff, deprived her of the licenses and whatever limitations on her business operations that

flow from it. Second, lacking DEC licenses does not completely deprive Leo of the ability to

operate her business. For example, she could possess non-regulated species, work for another

licensed rehabilitator, or work for a zoo. Moreover, operating a wildlife rehabilitation center

cannot fairly be considered a business in New York, since 6 NYCRR § 184.6(a)(3) prohibits rehabilitators from charging a fee for their services. Thus, Leo failed to state a claim.[8]

Moreover, even if Leo had a substantive due process claim for the failure of her center, it would be time-barred. As alleged, DEC and its staff took actions that were part of a pattern of regulatory enforcement activity intended to harm her that began in 2015 and continued until at least July 2017. *See* Compl. at 4-5 (Powell began acting against her with a telephone argument in November 2015), 9 (DEC inspections on November 7, 2015 and May 10, 2016 resulted in DEC issuing criminal citations for regulatory violations on July 26, 2016); *see also* Haner Dec., Exs. E and F (DEC gave Leo notice of its intent to revoke her possession license and denied her application for a rehabilitation license on August 14, 2017). But it should not be overlooked that she could no longer *legally* continue her operation after her rehabilitation license expired on December 31, 2016. Thus, from a practical standpoint, her operations were shut down at that time—an event for which Leo, not DEC, is responsible.

Any substantive due process claim accrues "when the restraint is *initially imposed* … and not when a subsequent violation by a defendant, based on the same, initial unconstitutional conduct, occurs." *Webster* v. *Himmelbach*, 271 F. Supp. 3d 458, at 467. As alleged, DEC and its staff acted to restrain Leo's freedom to operate her center beginning in 2015. Compl. at 8 ("this matter has been going on from the first Saturday of November 2015 to the present day"). More than three years lapsed between November 2015 when the alleged pattern of harmful conduct began and the December 4, 2020 filing of this action. And a continuing violation theory is not

---

[8]     To the extent Leo alleges a criminal conspiracy or criminal acts by DEC and others, Compl. at 6 (vandalizing and releasing her animals), claims for that harm are improper here because she is alleging criminal acts. A criminal complaint, not a § 1983 claim, is the proper redress.

available to extend the statute of limitations. *See, e.g., Austin v. Cuomo*, \*19-20 (continuing detrimental effects of discrete harm does not extend limitation period). For these reasons, had Leo stated a substantive due process claim related to the failure of her business, it would be time-barred.

### C. Leo's Due Process Claims Related to the Thomas Litigation are Precluded by the Doctrine of *Res Judicata*

Leo claims that DEC and its staff damaged her position in her litigation against Thomas. Compl. at 5-10. But the proper mechanism for Leo to protect her due process rights in that litigation is to raise her complaints before the presiding judge (and preserve the issues for appeal if necessary). Leo apparently withdrew her appeal in that litigation on February 25, 2021. *See Leo v. Thomas,* Tex. App. LEXIS 1370 (Tex. App., 13th Dist. 2021). "The doctrine of *res judicata*, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (internal citations and quotations omitted). Any harm that Leo claims was done to her should be litigated in the Texas proceeding.

### D. Leo Lacks a Federally-Protected Right to Be Free from Reputational Injury and Failed to State a "Stigma Plus" Claim

To the extent that Leo is claiming a substantive due process violation for reputational harms, the law is clear that there is no stand-alone federally-protected right to be free of reputational injury. *See, e.g., Paul v. Davis,* 424 U.S. 693, 701 (1976); *Rosenberg v. Martin*, 478 F.2d 520, 525 (2d Cir. 1973). Neither has Leo alleged facts to support a "stigma plus" violation.

Generally, defamation is an issue of state law. *Lauro v. Charles*, 219 F.3d 202, 207 (2d Cir. 2000) (citing *Paul v. Davis*, 424 U.S. 693, 699-701 (1976)). Although relief is available for defamation committed by government officials in limited circumstances, this is not such a

case. *See e.g., Paul*, at 701-710; *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (labeling an inmate mentally ill and transferring him to a mental hospital, without due process, wrongly stigmatized him).

To state a claim, Leo must allege "a stigmatizing statement plus a deprivation of a tangible interest." *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005). This "stigma plus" claim requires that Leo show (1) "the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (internal citations and quotation marks omitted). This state-imposed alteration of status or burden must be "in addition to the stigmatizing statement." *Id*. (emphasis omitted). "Thus, even where a plaintiff's allegations would be sufficient to demonstrate a government-imposed stigma, such defamation is not, absent more, a deprivation of a liberty or property interest protected by due process." *Id*. (citing *Siegert v. Gilley*, 500 U.S. 226, 233 (1991)).

Leo claims that DEC defamed her, published the DEC Commissioner's Order for her administrative case online, made derogatory statements about her to local officials and her neighbors, and that staff talked to people that confronted her and made derogatory statements about her. Compl. at 6, 7, 9, 10. The only allegation that Leo alleged with particularity was her statement that Powell told others that she is an animal abuser and starves animals, but she did not state when these events occurred. *Id.* at 9. While she did claim that these statements are false, she also pleaded guilty to having violated DEC's regulations. *Id.* at 5, 6, 9. Even if DEC staff had made the statements, it is an opinion statement to say that providing improper caging for opossums is animal abuse by virtue of the fact that it is criminalized behavior. Leo pleaded guilty

to exactly that behavior, so her actions cannot be factually disputed. Opinions, by their nature, cannot be proven wrong. *See Steinhilber v. Alphonse*, 68 N.Y.2d 283, 286 (1986) ("It is well settled that an opinion cannot form the basis of a claim for defamation, since "expressions of an opinion 'false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions.'") (quoting *Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369 (1977), cert denied 434 U.S. 969). Because opinion statements cannot be proven false, Leo would be unable to prove false the opinion statement that she abuses animals. *See* Haner Dec., Ex. B at 8, 10 (Leo pleaded guilty to criminally violating a license condition that required provision of proper caging for the opossums, which is in place "to ensure the physiological and psychological well-being of the animals"). Leo has failed to plead that an injurious statement was made, and made within the applicable statute of limitations period. *Sadallah v. City of Utica*, 383 F.3d 34. Nor has she alleged that any state-imposed burden or alteration of status resulted from any particular statements.

Because Leo lacks a federally-protected interest in the maintenance of a positive public image, and because she failed to state a claim for a "stigma plus" violation, she failed to state a claim for substantive due process violations. Moreover, it is well settled that "the availability of adequate process defeats a stigma-plus claim." *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006). Because adequate process was available to Leo in the form of an Article 78 proceeding, this claim must fail on that ground, too.

### E.    Leo's Substantive Due Process Claims are Duplicative

Leo's substantive due process claims related to the revocation of her possession license, DEC's denial of her application for a rehabilitation license, and the failure of her center duplicate her procedural due process claims. Substantive due process claims should be dismissed where they duplicate claims for procedural due process. *See, e.g. Carnell v. Myers*, No. 17-CV-7693

(KMK), 2019 U.S. Dist. LEXIS 40392, *21 (S.D.N.Y. Mar. 13, 2019) (dismissing duplicative due process claim). Her procedural and substantive due process claims are duplicative because they are "premised on precisely the same set of facts and seek [] to remedy the same conduct as in his procedural due process claim." *Id.*

Additionally, a substantive due process claim does not lie where a more narrow constitutional protection exists. *See, e.g., Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) ("Where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process."); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (citation and quotation marks omitted). Because Leo's substantive due process claim can be framed as a violation of more narrow constitutional protections—procedural due process, equal protection, unreasonable search and seizure protection—it should be dismissed.

## II.

### LEO FAILED TO STATE EQUAL PROTECTION OR CONSPIRACY CLAIMS AND THEY ARE TIME-BARRED

Leo appears to argue that DEC or its staff violated her right to equal protection. Compl. at 5-9. The 14th Amendment prohibits the government from denying "to any person the equal protection of the laws." U.S. Const. Amend. XVI, § 1.A. To state an equal protection claim, Leo must show: (1) adverse treatment "compared with other similarly situated individuals" and (2) "that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to

injure a person." *See, e.g., Miner v. Clinton Cty.*, 541 F.3d 464, 474 (2d Cir. 2008) (internal

quotations omitted). An equal protection claim for selective enforcement similarly requires that

Leo show (1) she was treated differently than others (2) based on impermissible considerations

or malice. *See, e.g., Harlen Assocs. v. Inc. Village of Mineola,* 273 F.3d 494, 499 (2d Cir. 2001).

Leo has not pleaded facts to support an allegation that she was treated differently than others.

Since Leo does not allege that she is a member of a protected class, and nothing suggests

that she is, she must proceed under a class-of-one theory. As a class-of-one, she must allege (1)

"that she has been intentionally treated differently from others similarly situated and that there is

no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562,

564, (2000) (per curiam). She must further allege "an extremely high degree of similarity

between themselves and the persons to whom they compare themselves." *Ruston v. Town Board.*

*for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (internal citations omitted). Specifically,

she must show that (1) no rational person could consider circumstances to differ from those of a

comparator to such a degree that the differential treatment is justified by legitimate government

policy, and (2) a comparison of those circumstances and difference in treatment between

comparators rules out the possibility that any disparate treatment could be attributed to a mistake.

*Id*.

First, Leo failed to plead her claims with sufficient particularity. Conclusory allegations

of disparate treatment are insufficient, and details must be offered to demonstrate that

comparators are similarly situated. *See, e.g., Kenmore Mercy Hosp. v. Daines*, No. 09-CV-162S,

2011 U.S. Dist. LEXIS 105941 (W.D.N.Y. Sep. 18, 2011) (granting a motion to dismiss an equal

protection claim because "[a]lthough plaintiff alleged there were other, similarly situated,

landowners, he provided no details explaining the similarities"). Leo states that DEC did not

17

issue citations to other people for their violations of the law, she was not given a chance to comply but other licensees were given that chance, and that she was cited falsely, excessively, and unfairly. Compl. at 5, 7, 9, 12. But she does not give any information to support those assertions, such as who committed these violations and what they were, whether they were committed under sufficiently similar factual circumstances, whether DEC had reason to know of them, or what DEC did about them if they were aware and how those actions compare. Other than bald conclusory statements, Leo offered no factual basis at all upon which the Court may compare DEC's enforcement against Leo with that of others to establish that she was treated differently than anyone at all. *Kenmore Mercy Hosp. v. Daines*. Nor does DEC's publication on its website of the Commissioner's Order show selective treatment. DEC publishes Commissioner's orders on its website. *See* https://www.dec.ny.gov/hearings/395.html (last visited Mar. 21, 2021). Second, because she pleaded guilty to two criminal violations, Leo cannot establish that DEC's enforcement against her lacked a rational basis.

Finally, Leo has also failed to allege similarity between herself and others for whom DEC did renew a rehabilitation license. Compl. at 6-7. Leo has not provided a basis to demonstrate an "extremely high degree of similarity" of circumstances between herself and others—she has not alleged any facts at all, just a conclusion. *Ruston*, 610 F.3d 55, 59 (FRCP 12(b)(6) motion granted dismissing "class of one" equal protection claim against a village by property owners that were denied sewer hookups for failure to show sufficient degree of similarity between itself and others). She has therefore failed to state an equal protection claim. And this claim, too, should have been brought pursuant to Article 78 *See, e.g., Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, U.S. Dist. LEXIS 86759 (S.D.N.Y. 2011) (Article 78, not § 1983, is the

proper vehicle to determine whether the law has been lawfully applied) *aff'd*, 678 F.3d 184 (2d Cir. 2012).

Leo also made a number of allegations that sound in conspiracy. *See* Compl. at 5-10, 12. Since Leo failed to state a claim for any violation of a constitutional right, she has also failed to state a claim for conspiracy. *See Malsh v. Austin*, 901 F. Supp. 757, 765 (S.D.N.Y. 1995). ("A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right."); *Mills v. Noonan*, No. 1:16-cv-00984-MAT, 2017 U.S. Dist. LEXIS 56972, *18 (W.D.N.Y. Apr. 13, 2017) (same). Since Leo did not sufficiently allege a violation of her rights, it follows that she cannot sustain a claim of conspiracy to violate those rights. Therefore, Leo failed to state a claim for conspiracy.

## III.

### LEO FAILED TO STATE A CLAIM FOR UNREASONABLE SEARCH AND SEIZURE CLAIMS AND SUCH CLAIMS WOULD BE TIME-BARRED

Leo complains that DEC inspected her property twice and seized coyotes from her. Compl. at 4-5. To state a claim for unreasonable search or seizure, Leo must allege that (1) there was a search or seizure that (2) was unreasonable. *See, e.g., Ayeni v. Mottola,* 35 F.3d 680, 684 (2d Cir. 1994). DEC's regulations related to Leo's former licenses, and the terms of the licenses themselves, make clear that DEC's inspections and the seizure of her coyote were reasonable as a matter of law.

Leo's apparent claim of unreasonable search and seizure is fatally undermined by the requirements of her licenses. A search compromises an individual's privacy interests and a seizure contemplates a physical intrusion on a possessory interest of some kind, whether in an object or in oneself. *See, e.g., Horton v. California,* 496 U.S. 128, 133-134 (1990). The Department's regulations require license-holders to allow the Department to inspect at any time.

*See* 6 NYCRR § 175.6(e), § 184.6(a)(8). Further, Leo had no legal right to the coyotes; her

possession of them violated her license. Haner Dec., Ex B at 4 (possession license did not

authorize Leo to possess the coyotes); Ex. I (possession license). The Department inspection,

made in response to a neighbor's complaint, and its seizure of animals that violated Leo's license

were plainly actions taken in furtherance of a legitimate law enforcement interest. *See* Haner

Dec., Ex. A (Commissioner's Order) at 2-3 (explaining violation); *see also Ahlers v. Rabinowitz*,

684 F.3d 53, 60 (complaint must plead enough facts to state a claim that is plausible). Leo failed

to state a claim for unreasonable search and seizure. In any event, such a claim is nonetheless

time-barred because the events alleged occurred more than three years before she filed her

complaint. CPLR § 214(5).

## IV.

### LEO FAILED TO STATE FREE SPEECH OR RETALIATION CLAIMS

Leo seeks to enjoin DEC from retaliating against her. Compl. at 10. She also accuses

DEC of blocking any recourse she could have had for relief against unfair treatment by the

agency. *Id.* at 14. Presumably, these allegations relate to her right to free speech. The 1st

Amendment protects speech "in pursuit of a wide variety of political, social, economic,

educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). A

private citizen must show that (1) they have an interest protected by the 1st Amendment, (2)

defendant public officials' actions were motivated or substantially caused by the exercise of the

protected right, and (3) the action effectively chilled the citizen's exercise of speech. *See, e.g.,*

*Curley v. Vill. of Suffern et al.,* 268 F.3d 65, 73 (2d Cir. 2001). Harm other than chilled speech,

such as retaliation, can also fulfill this last requirement in limited circumstances. *See, e.g.,*

*Zherka v. Amicone,* 634 F.3d 642, 645 (2d Cir. 2011); *Vaher v. Town of Orangetown,* 916 F.

Supp, 2d 404, 431 (S.D.N.Y. 2013). To establish a retaliation claim under § 1983, Leo must

initially show that her conduct was protected by the 1st Amendment, *Brady v. Town of Colchester*, 863 F.2d 205, 217 (2d Cir 1998), and that defendants' conduct was motivated by, or substantially caused by, his exercise of free speech, *see Easton v. Sundram*, 947 F.2d 1011, 1015 (2d Cir. 1991) *cert. denied*, 504 U.S. 911 (1992). Leo failed to state a claim for violations of her right to free speech or for retaliation.

First, to the extent that she considers DEC's enforcement actions to be retaliation against her for an argument she had with Powell in 2015, DEC's enforcement must be challenged in a CPLR Article 78 proceeding that is now time-barred and falls outside the scope of the Court's jurisdiction. Compl. at 9; *see, e.g., Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, U.S. Dist. LEXIS 86759 (S.D.N.Y. 2011), *aff'd*, 678 F.3d 184 (2d Cir. 2012); CPLR § 217(1); FRCP 12(b)(1) (lack of subject matter jurisdiction is ground for dismissal). Therefore, Leo failed to state a retaliation claim on this basis.

Second, to the extent that Leo believes DEC staff said negative things about her in a retaliatory effort to cause her center to fail, a § 1983 claim on that basis is also time-barred. But even if it were not, retaliation claims that are "unsupported, speculative, and conclusory" may be dismissed on the pleadings. *Corley v. City of N.Y.*, No. 1:14-cv-3202-GHW, 2017 U.S. Dist. LEXIS 162761, *19 (S.D.N.Y. Sep. 28, 2017 (citing *Boddie v. Schneider,* 105 F.3d 857, 862 (2d Cir. 1997)). The complaint is bereft of direct allegation that defendants took any retaliatory action against her. The only mention of retaliation in the complaint is in her request for an injunction against DEC for future retaliation. Comp. at 10. For this reason, Leo failed to state a retaliation claim on this basis also.

### III.

### LEO SEEKS UNAVAILABLE RELIEF

Leo is seeking mandatory injunctions requiring DEC to: provide her with certain information that she requested; cease collaboration with persons that allegedly stole her animals; reinstate her possession and rehabilitation licenses and remove any public discussion of their initial revocation; cease all retaliatory efforts; amend inspection reports to reflect her account of events; terminate the licenses of the person who boarded her animals; and discipline or terminate Powell and Therrien, and James Farquhar and Paul Stringer, whom are apparently DEC employees, and to take regulatory enforcement action against her former colleague, Thomas. *See* Compl. ("Prayer for Relief"). Therefore, she "must shoulder a heightened burden of persuasion and demonstrate 'a clear or substantial likelihood of success on the merits.'" *Austin v. Cuomo*, *21-22 (quoting *N. Am. Soccer League, LLC v. US. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir, 2018)). Because Leo failed to state any claim, and each would be time-barred anyway, she has not established a clear or substantial likelihood of success on the merits. Further, injunctive relief is not available for each of Leo's demands. To the extent Leo complains that DEC failed to enforce the law—presumably against Thomas—and requests an injunction requiring DEC to take regulatory enforcement action against him the Court does not have subject matter jurisdiction over her claim. Compl. at 11, 14; *see, e.g., Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, U.S. Dist. LEXIS 86759 (S.D.N.Y. 2011) (A CPLR "Article 78 proceeding is the proper vehicle to determine whether the law has been lawfully applied, or the validity of certain government acts pursuant to a valid statute . . .") *aff'd* at 678 F.3d 184 (2d Cir. 2012); FRCP 12(b)(1) (lack of subject matter jurisdiction grounds for dismissal). Accordingly, her requests for injunctive relief must be denied. Having failed to state any claim, declaratory relief is also unavailable.

To the extent that Leo seeks to protect herself from future retaliation, an injunction for future retaliation is likewise unavailable. *See, e.g., Collins v. Suffolk Cty. Police Dep't*, 349 F. Supp. 2d 559, 563 (E.D.N.Y. 2004) *vacated in part, on other grounds* at U.S. Dist. LEXIS 130, *2 (E.D.N.Y. 2005) ("Subsequent to a finding of unlawful discrimination or retaliation, the Court may enjoin a defendant from further unlawful practices 'if the moving party … demonstrate[s] that there exists some cognizable danger of recurrent violations.'"). Because no claim has been stated for past retaliation, an injunction for future retaliation is unavailable to Leo.

## CONCLUSION

Because Leo failed to state a § 1983 claim in any respect, and because her claims are time-barred, the Court should dismiss the Complaint. Additionally, the Court should reject Leo's requests for relief because they are unavailable.

Dated: March 22, 2021

LETITIA JAMES
Attorney General of the State of New York
 *Attorney for Defendants-Respondents*

By:   /s/ Brittany M. Haner
BRITTANY M. HANER
Assistant Attorney General
Environmental Protection Bureau
The Capitol
Albany, New York 12224-0341
Tel: (518) 776-2389
Brittany.Haner@ag.ny.gov