

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARRIE M. LEO,<br><br>                    Petitioner,<br><br>vs.<br><br>United States Department of Agriculture,<br><br>                    Respondent. | Civil Action No.:   6:2020-cv-07039-FPG<br><br>**PETITION FOR REVIEW**<br>**OF**<br>**AGENCY FINAL DETERMINATION**<br>**MADE BY ALJ & COMPLAINT OF**<br>**DEPRIVATION OF RIGHTS** |

**NOW COMES** Respondent Carrie M. Leo, a self-represented litigant, hereby petition the

court for review of the Order of the United States Department of Agriculture entered on the 26th

day of February 2021 issued in this proceeding by the USDA's Office of the Judicial Officer.

Dated this  27th day of April 2021, in Walworth, Wayne County, New York.

Respectfully Submitted,

Carrie M. Leo, Respondent
3199 Walworth Road
Walworth, NY 14568
ph:  (315) 538-8316
email:  carrieleo15@gmail.com

cc:     **VIA EMAIL** brittany.haner@ag.ny.gov
        Brittany M. Haner, Esq.
        Assistant Attorney General
        NYS Office of the Attorney General
        Environmental Protection Bureau
        The Capitol | Albany, New York 12224
        Telephone:  (518) 776-2389
        Fax (518) 650-9364
        email:  Brittany.Haner@ag.ny.gov

1

3199 Walworth Road
Walworth, NY 14568
April 27, 2021

**VIA USPS**
Judge Frank P. Geraci , Jr.
U.S. District Court of the Western District of New York
2 Niagara Square
Buffalo, NY 14202-3350

Dear Judge Geraci,

Please find enclosed a petition for review for the judicial review of the termination of AWA License 21-C-0435 as a result of two corresponding determinations by the USDA on September 8, 2020 and February 26, 2021.

Thank you.

Sincerely,

Carrie M. Leo, Plaintiff

enclosure

cc:     VIA EMAIL brittany.haner@ag.ny.gov
        Brittany M. Haner, Esq.
        Assistant Attorney General
        NYS Office of the Attorney General
        Environmental Protection Bureau
        The Capitol | Albany, New York 12224
        Telephone: (518) 776-2389
        Fax (518) 650-9364
        Brittany.Haner@ag.ny.gov

## UNITED STATES DEPARTMENT OF AGRICULTURE
## BEFORE THE SECRETARY OF AGRICULTURE

In re:

    Carrie Leo, an individual, doing business
as *Caring for Cottontails Wildlife Rescue
& Rehabilitation, Inc.*, a New York State
Corporation,
                 Respondent.

AWA Docket No. 20-J-0118

**PETITION FOR REVIEW OF DECISION
MADE BY ADMINISTRATIVE LAW
JUDGE & COMPLAINT OF
DEPRIVATION OF RIGHTS**

        The Respondent, Carrie Leo, respectfully submits this complaint and petition for review to the United States District Court for the Western District of New York for appealing the ALJ's granting of Complainant's motion for dismissal upon summary judgment resulting in the wrongful termination of the Respondent's Class C Exhibitor's License #: 21-C-0435.

### <u>ARGUMENT #1:</u>

> The two charges to which the Respondent pled in December 2018 should not be used as grounds to terminate the Respondent's license, especially since they were served upon the Respondent four and a half years ago and were minor allegations.

        9 C.F.R. § 2.11(a)(6) states "… *any Federal, State or local laws or regulations pertaining to the transportation, ownership, neglect or welfare of animals*" and is the law under which the Respondent's license should be terminated, according to the ALJ.

        First, the violations[1] are not state laws pertaining to the transportation, ownership, neglect, or welfare of animals. The report form for her LCP #623 was submitted in May 2016 with as much information as she could possibly include thereby not including any "inaccurate" information.[2] The DEC never specified exactly what "inaccurate" information was included on the report so this part of the accusation remains a mystery.

        The Respondent only admits to an untimely submission of the paperwork; which, if the Department were to interpret and enforce the regulations and laws consistently, would implement almost every licensee. Likewise, the Department has struggled constantly with timely submissions, especially in terms of issuing reports and decisions related to hearings. The Respondent waited months past the deadline dates for the ALJ's Recommendation and Report for the Commissioner and then months after the deadline for the Commissioner's Final Determination. In fact, she had

---
[1]

[2] Exhibit with LCP #623 Report submission.

to write into the Governor's Office to request the Governor initiate the production of the Commissioner's Final Determination.

Second, there were mitigating factors which should have been taken into consideration and included when considering the totality of the circumstances.

Third, these violations are not the kind which are normally used to substantiate termination of licensure by APHIS.  They are not egregious and are practiced by other licensees similarly situated to the Respondent who have not been charged for such "violations" and thus bring up issues of the Respondent not being treated equally under the law therefore compromising any protection under the law serves to provide for *all* citizens.

Furthermore, they are not willful errors which detrimentally affected the welfare of animals. If anything, the Respondent was supporting and protecting the welfare of the animals by keeping them in a more comfortable environment more congruent with the survival of the animals.[3] More about the alleged violations is discussed later.

## ARGUMENT #2:

> Neither the Complainant nor the Court identified what laws the Respondent would allegedly be circumventing if she maintained possession of her license.  It is not uncommon for licensees to maintain their AWA License after having their state license(s) revoked.

- In New York State, it is required a person interested in breeding, exhibiting, or dealing wild animals, first obtain a license under the Animal Welfare Act through the USDA-APHIS before applying for a state license. Hence there's a period of time during which the potential licensee will have a federal license but not a state license.

- There are a number of licensees who do not have a state license corresponding to their federal license, especially if they are in possession of non-indigenous and/or privately owned animals, exhibiting neither but keeping them solely as a private collection.

- There are even a number of individuals who have kept their concurrent AWA license through APHIS while and after they had their corresponding state licensees revoked.  In New York, a couple examples are Cindy Bardin[4] and The Adirondack Wildlife Refuge, both of whom have been accused of far more serious violations that those of the Respondent. This issue is another instance in which the Respondent's right to equal protection under the law was denied by the ALJ's granting of the Complainant's Motion for Summary Judgment.

---

[3] The Respondent had lost at least one opossums the year before by keeping it outside

[4] AWA Docket No. 16-0009 shows the Decision of the Court to be a Consent Order and small fine with the retention of her federal exhibitor's license after a 90-day suspension of its privileges.  The Decision also reflects Bardin's alleged circumvention of laws by assisting another licensee with a terminated USDA license exhibit his animals. Yet, Ms. Bardin was able to obtain a decision in favor of her retaining her license.  Such imposition of the law by the agency is irrational as it is unequal and fails to follow a prescribed pattern of treatment of licensees.

**ARGUMENT #3:**

> The two charges to which the Respondent pled in December 2018 are not state laws pertaining to the transportation, ownership, neglect, or welfare of animals.  They also were not due to egregious or willful actions on the part of the Respondent.

The first alleged violation was the use of stainless-steel hospital cages for housing Virginia Opossums throughout the winter.  The animals, being more intolerant to cold weather than other wildlife in the state, need extra protection from the cold due to their tendency to contract infections conditions such as frostbite and disintegration of ear margins, toes and tails.[5]  Many times the frostbite advances to more severe conditions such as Dermal Septic Necrosis or Flesh-Eating Disease.  The conditions easily become systemic and take a long time to treat, especially if the animal is resistant to certain antibiotics and/or more than one type of drug has to be tried for efficacy and effective therapy.

Furthermore, the NYSDEC, who wrote the charge against the Respondent, reached beyond its jurisdiction by enforcing husbandry conditions as this is the focus of the USDA-APHIS if the animals were non-releasable and kept for exhibition.  However, these were technically still animals in rehab and just like the husbandry of RVS animals in rehabilitation, the NYS Dept. of Agriculture has jurisdiction over animal husbandry.

Both the state and the USDA fail to consider any statements or mitigating factors concerning how and why the opossums were housed in the manner they were, temporarily to get them through the cold months of the winter.   In fact, the Respondent was supporting the welfare of the animals by keeping them more comfortable and safer in the barn under heat lamps where they slept away most of the winter.[6]  The welfare of the animals were not threatened nor detrimentally affected by keeping them in a warm, comfortable environment.

The second violation alleges the submission of untimely or inaccurate records for the Respondent's LCP license.  The details of this charge were never explained such as the erroneous allegation the DEC made concerning the records the Respondent submitted for her LWR (which was included in the DEC's *Notice of Intent to Revoke LCP #623* dated August 14, 2017 and received by the Respondent on or around August 22, 2017).[7]  The Respondent submitted the LCP Exhibition Report in May 2016 but was charged on or about July 27, 2016 for never have submitting it.

---

[5] Exhibit 6 from the Respondent's *Answer* to the Complainant's *Motion for Summary Judgment* shows the final phase of infections contracted by some of the opossums who were recovering from them and which were the ones allegedly "inappropriate housed" in the barn during the winter in the stainless-steel cages.

[6] Opossums may go into short stints of torpor during wintertime months.

[7] The DEC Division of Law Enforcement issued a plethora of alleged violations to the Respondent on July 27, 2016, in effect, overcharging her in order to "see what sticks".  As a result, the charges were either 1. outright untrue; 2. based on facts which do not prove the conduct of the Respondent was unlawful; 3. ignored her authority to have the animals and conduct the activities she was at her facility and/or 4.  charged to the Respondent irrespective of the laws regulating government agency conduct relating to the charge, such as the two charges concerning inaccurate or untimely submission of paperwork for the Respondent's LWR and LCP licenses.   The Department of Law Enforcement has a history of charging members of the public erroneously in order to bully or threaten individuals, especially those who fight back (like the Respondent).  One needs only delve into the case of McCulley v New York State Department of Environmental Conservation, Docket No. 8:2005-cv-00811, in order to see the lengths

It is also important to note that the two alleged violations to which the Respondent pled are committed by other licensees and known by the Department. Yet, according to the knowledge and belief of the Respondent, no other licensee similarly situated as the Respondent has ever been charged, much less convicted of late or inaccurate submissions of paperwork[8] or keeping animals in stainless-steel hospital cages. In fact, the cages were given to the Respondent by another rehabilitator who has been a long-time wildlife rehabilitator and board member of the New York State Wildlife Rehabilitation Council.

The Respondent understands the ALJ does not have the authority to hear causes of action related to the deprivation of civil rights. However, the Judicial Officer is and thus the Respondent is making the argument that given the common use of plea agreements, it is also common that those who plea to charges see no other choice or very little choice, either financially or otherwise, but to agree to plead guilty to offenses they never committed. Thus the Court should delve into the quality of the charges and the circumstances therein in order to take the drastic step to terminate, suspend or revoke a person's license.

It is also important to understand these charges were levied upon the Respondent almost five years ago. With the lapse of time having been so long and the alleged violations being so minor, it is inappropriate, especially on an ethical basis, to continue punishing the Respondent for them, especially since termination of a federal license isn't supposed to be punitive.

Furthermore, it is difficult to understand the value of terminating her licensure this long after she was charged by the DEC and her state license was allegedly revoked. It seems more like the staff is moving to terminate her license in order to punish her for something in particular which occurred within the last year or so than for the reason she would be circumventing any laws by keeping her federal license.

The charge involving the alleged use of inappropriate caging for the opossums in her care is a perfect example. The use of the caging and the environment the Respondent chose to keep the animals in only helped the opossums in their recovery over bacterial infections. The Respondent included pictures of some of the opossums and their conditions in her Answer to Complainant's MSJ and is referred to as "RX-6" on page 11 of the ALJ's *Decision & Order*.

It is perplexing why the ALJ thought that Respondent's filings were "*devoid of the type of supporting documentation to establish a genuine issue for [a] hearing*" (15, ALJ's *Decision & Order*) First, the Respondent did not get the chance to file her hearing exhibits like the Complainant did, therefore possibly making his argument seem stronger, especially since he submitted numerous irrelevant and prejudicial exhibits.

Second, the Respondent did file some meaningful documents, one of which was the pictures of the opossums and their infections. It isn't clear as to why it is important to the ALJ to dismiss all of her submissions, except for the reason of clear bias for staff desires to terminate the Respondent's license.

---

the Department will go to in order to falsely prosecute a person often at the expense of the person's rights.

[8] Samples of other licensees' inaccurate and late submissions of paperwork were included in the Respondent's Answer to the Complainant's MSJ in order to show the reader evidence of what are

It is also perplexing how the keeping of the Respondent's federal license would "empower her to circumvent the revocation of her New York State LCPEE in violation of 9 C.F.R. § 2.11(a)(5)." She has not been charged with any citations nor even alleged to have broken any local, state, or federal law since she was charged by the DEC back in 2016.  Again, the alleged revocation of her state license had been two years ago and to dwell on the alleged LCP revocation stems from bias of the administrative court in favor of the staff.  There should be a time when licensees should be allowed to move on.

If this was the case and the staff is fairly enforcing this notion, then there would be no persons possessing federal licenses without state licenses. But there is.  In New York State, a person may be federally licensed for certain regulated animals without needing a state license and there are numerous people who have a federal license without a state license.  For wildlife taken out of the wild in New York State and kept as non-releasables, the person must also get a state license to exhibit the animal.  The applicant must have the federal license before even applying for a state license.

## **ARGUMENT #4:**

> The Respondent's state licensure may never have been revoked, according to documents given to another licensee by the NYSDEC.  It may have simply expired.

In another case, *Leo v Thomas*, the Respondent became aware of a document, written by Joe Therrien of the Special Licenses Unit, for another licensee, Tyler Thomas, around the time Thomas was served with process for the case in early November 2017.  The Respondent found mention of this document in an email which was included as a responsive record to one of the Respondent's FOIL requests submitted to the NYSDEC.[9]

Later in November 2017 when the Defendant Thomas served the Ms. Leo (the Respondent in this case) with his Answer to her Complaint, it stated " … *I spoke to Mr. Paul Stringer who instructed that Ms. Leo does not maintain any authority to possess wildlife and stated that Ms. Leo does not possess the valid permits required for the animals.  A later conversation with Mr. Joe Therrien, also from the NYSDEC was had regarding the legality of returning Ms. Leo's animals.  Mr. Therrien stated that the transfer of the animals back to Ms. Leo was unlawful and could result in the revocation of my personal permits and licenses.*"  It is important to note this licensee, according to Therrien and Stringer, acquired animals from an illegal source yet, was never charged with doing so in violation of LCPEE Condition #1 which states "*The license [LCPEE] is authorized to purchase, possess, transport and import … species, that were obtained from legal sources.*"

---

[9] Although the DEC has given the statement, concerning Respondent's case and licensing, to other licensees, such as Thomas, it refuses to give the Respondent a copy of it as she has requested in FOIL requests.

Either the Respondent's LCP #623 was valid until its alleged revocation by the Commissioner on or around November 7, 2018, or it wasn't. Later Defendant Thomas stated in a social media post dated December 6, 2019, that he had "orders", presumably by the DEC for the transport and disposition of the Respondent's animals. The Respondent never has received a copy of any of this paperwork, even upon request. Clearly, this was all clandestine activity and shows that the Department really considered the LCP of the Respondent to be void as of its expiration date in July 2017. In fact, the Commissioner himself opens up his report stating her LCP "*has an expiration date of July 7, 2017*". Therefore, it should not be considered to be revoked. The revocation procedure, improperly done, was simply for tainting the public record of the Respondent and her hard work - one of the reasons why the Respondent's USDA license is now under attack almost five years after being charged for offenses which did not even happen.

The case, Leo v Thomas, is one in which the NYSDEC have taken an improper "back-seat" involvement. One way they've done so is by having a "shadow conviction", so to speak, of accusing the Respondent of having her animals taken forcibly from her by the Department due to her not being licensed to have them nor taking proper care of the animals. There is no truth to this story perpetrated by several staff members from both the DEC and USDA and hence no evidence of any neglect on the part of the Respondent nor any evidence at all of any level of government seizing her privately-owned animals.

Animal Care Inspector, Andrea D'Ambrosio, and Small Business Ombudsman, Steve Bennett, have circulated another erroneous rumor stating that the Respondent had "forfeited" her animals. Again, there is no paperwork, proceeding or any evidence whatsoever which proves there was any forfeiture. This is because there was no forfeiture. These staff members are lashing out at the Respondent because she is asserting her rights and the truth of the matter.

There is a process the government must go through in order to seize animals which are being neglected or treated cruelly and not one phase of such a process was invoked by the DEC or the USDA. Instead, a secret document was written by Joe Therrien of the DEC's Special Licenses Unit around the day the Defendant in the case, Leo v Thomas, was served. Therrien's supervisor, James Farquhar, communicated with the Thomas' attorney resulting in the attorney claiming the Respondent's LCP was invalid hence the return of her animals was prevented - using the exact same methodology the DEC was "secretly" using.

The USDA staff is involved in that the Respondent has reason to believe that Andrea D'Ambrosio, the former Animal Care Inspector for the Respondent's facility in the past, possibly along with her supervisor, Tonya Hadijis, have helped the other licensee conceal the continued possession of the animals belonging to the Respondent while the Defendant, Thomas, submitted false testimony to the Court regarding the alleged demise of the animals.[10]

Three animal care complaints submitted by the Respondent were given to D'Ambrosio and Hadijis (at least one of which participated in the occurrences of the complaints to begin with). Thus it isn't surprising they not only failed to look at the evidence the Respondent submitted with the

Denial of due
process and
enjoyment of
personal
property

---

[10] The licensee had some of the worse violations seen on inspection reports while his facility was in New York. It is expected that the USDA staff will, and has been, protecting him by giving him perfect inspections and allowing for the unlawful possession of the Respondents' animals.

complaints but also accepted a false report of an alleged necropsy done by a vet in Texas.[11] They also are protecting the licensee (who is the Defendant in *Leo v Thomas*) from the Respondent domesticating an order from the Supreme Court for the state of Texas (where he is keeping her animals) which gives her custody of her animals. This also occurred around the February-March 2020 timeframe and coincides with the start of prosecution of the Respondent by the USDA for license termination.[12]

The initial submission of the OSC by the Complainant in the case at bar also seems to coincide with the submission of a complaint made by the Respondent to the Secretary concerning the theft of her animals - an act the USDA is supposed to prevent.

According to 7 U.S.C. § 2131, the Animal Welfare Act serves to prevent the theft of animals and the use or sale of them. However, apparently, according to several members of the DEC and USDA, the Respondent should not be protected under this law, even against a licensee who has committed the same crimes against others. There were also violations of record-keeping according to 7 U.S.C. § 2140 as the licensee who stole the animals did not document their transport out of New York and into Texas nor were they documented while in Texas and he was loaning them out to facilities and exhibiting them himself. At one point, he was exhibiting the animals without a federal Exhibitor's License. Again, this shows an extreme disparity in the treatment of the Respondent and that of the licensee who is still in unlawful possession of her animals. Such a disparity in treatment is unequal treatment under the law and thus an abuse of the legal process since the Respondent is clearly being prosecuted for other reasons than the charges made up by the state and sound reasoning.

1. *Spinale v. U.S.* -- 03 Civ. 1704 (KMW)(JCF) (S.D.N.Y. Jan. 9, 2004)
2. *Kelly v. City of New York,* No. 01 Civ. 8906 (TPG) (S.D.N.Y. Sep. 7, 2005)

The remedial character of the AWA is seriously undermined by the inconsistent enforcement of the Act's provisions as well as waiting so long to punish the Respondent for alleged actions from years ago. It is ineffective and irrational to wait until the licensee has gone years without any further allegations or charges regarding her activities to then terminate her federal license.

---

**ARGUMENT #4:**

The ALJ's decision to terminate Animal Welfare License causes deprivation of rights of the Respondent.

---

1. **First Amendment Freedom of Speech** - The Respondent had submitted a number of complaints to various departments and individuals in the USDA in order to address concerns she had before she was selectively prosecuted for termination of licensure. However, all of the complaints were either immediately dismissed or ignored altogether. Her last complaint was sent around or in March 2019 to Secretary Perdue.

---

[11] Although access to which was denied via a FOIA submission by the Respondent stating there were allegedly no records which were submitted by the veterinarian who's name was on the necropsy report.
[12] *Leo v Thomas & Stacey* No. 2020-DCL-1028, Cameron County District Court, Texas.

The complaint went unanswered and the Respondent's concerns were never addressed and thus contentions festered even more. She received a phone call from OGC Attorney John Rodriguez stating that if she did not voluntarily surrender her license, it would be terminated by invoking the administrative process. The Respondent declined the voluntary surrender of her license and received no further communication from the Department concerning any complaint.

A year later, Respondent was contacted by Mr. Rodriguez from the USDA-OGC again; this time it was regarding the letter the Respondent sent to the Secretary the year before. One of the main concerns contained within the letter was the participation of a staff member in unlawful conversion, by another licensee, of animals belonging to the Respondent.

Instead of addressing the long-standing problem, the Secretary sent the *Order to Show Cause* why her federal license should not be terminated. Clearly, the proceeding had been, at least partially, in response to her submission of the complaint to the Secretary in or around March 2019.

The use, or abuse, of the legal process to silence speech and stile activities personally and politically opposed by staff of a government agency is a classic example of a prior restraint, which is both offensive to the First Amendment and contrary to the public interest. With all of the claims of availability of administrative remedies which should exist in order to address conflict among persons such as the staff and licensees, it would be expected the agency would respond to these attempts instead of using them to railroad the Respondent and set her up for licensure termination.

2.  **Violations of Due Process.**

The ALJ commented on and then dismissed several arguments made by the Respondent in her Answer to the Complainant's Motion for Summary Judgment which were made in response to arguments not made by the Complainant in the Motion. Thus, the ALJ concluded on page 19 of his decision that granting summary judgment "…*is not based upon those allegations; they are immaterial to the outcome of this case*." Yet the ALJ included accusations not included specifically in the Complainant's Motion for Summary Judgment such as her alleged unauthorized possession of wildlife which were, in reality, authorized by licensing she had at the time. She also did not do anything different than other rehabilitators did and still do and who also do not get charged with criminal offenses in doing so. It seems the Complainant not only has very little burden of proof in proving his points but at least in the case of the ALJ interjecting unproven accusations which were never mentioned in the Motion for Summary Judgment, the Complainant enjoys the privilege of having to provide no proof whatsoever.

- It's important to point out that the staff wins every single case which comes across the dockets in the administrative court of the DEC in regard to accusations including Article 11 of the ECL, such as wildlife rehabilitation and licenses like the *License to Collect & Possess*. Administrative courts require such a low standard of proof from the staff attorneys that the accusee is literally considered guilty and the outcome predetermined before the hearing even started. Such characters of a court of law has little to do with quality and everything to do with convenience and keeping the agency staff happy in excluding people for political or personal reasons.

It also keeps the special interest groups, such as animal rights groups with which the USDA and DEC are connected, content as an increasing number of exotic animal related businesses are destroyed by staged complaints and erasure of rights such as due process.

- The failure to provide Respondent with an administrative hearing prior to her licensing termination violated her Fourteenth Amendment right to due process. (re: *Matter of Cindy Bardin*)  There are triable issues of relevance; one of them being whether the Respondent is unfit to continue holding an AWA Exhibitor's License.

**3.  Selective Prosecution & Equal protection** - 369 U.S. 541 (1962), 40, Beck v.

The selective prosecution issue raised is whether the Respondent was improperly selected

for termination in contrast to other licensees who have many documented and

undocumented violations known by staff, but who have received more lenient treatment and

thus kept their federal licenses.

**<u>Bias Against the Respondent</u>**

From reading the decision of the ALJ, the main tone of the writing is clearly indicative of

bias.   If the defensive nature of the writing wasn't apparent to the reader, then the content should

have stood out as inappropriate.  An example of this is the ALJ's inclusion of the unproven (and

dismissed by Macedon town Court) allegation that the Respondent had unauthorized possession of

animals.  Not only does this serve as an example of the standard of "preponderance of the evidence"

used by the ALJ, but it reveals the Complainant had no burden to prove anything.  The unauthorized

possession of animals was not included in the Complainant's *Motion for Summary Judgment* and

its inclusion in the ALJ's decision & order was unfair. In fact, the allegation didn't come to the helm

of discussion at all during any communication between the parties.

The prosecution should have an uphill effort in proving his case.  However, similar to state

administrative tribunals, it seems as though all is needed for the revocation, suspension or

termination of a license is simply a request from staff and/or those held in favor with the agency.

Furthermore, the ALJ stated the Respondent did not dispute her submission of "inaccurate" paperwork to the DEC.  This is not true.  The Respondent only pled guilty to the paperwork offense as a result of it being untimely, not inaccurate.  It is also perplexing as to why the ALJ did not consider the DEC charging the Respondent for an allegation which was covered by NYS law exposing an illegal act done by the Department.  6 NYCRR 175.5 states the Department is to return any incomplete or inaccurate paperwork to the writer with an explanation as to what is incomplete and/or inaccurate.  It is remiss the ALJ Sherman failed to make the Department accountable as to its violation of the regulation; however, the ALJ in the proceeding at bar has also done the same; that is, scan over the violations of the government, be it state or federal, in their inappropriate persecution of the Respondent.  Again, it shows there are no standards for those prosecuting licensees yet there are unreasonable standards for the licensees in proving their defenses, especially when all of their submissions are immediately dismissed by the Court.

Second, there are individuals licensed under the AWA who have had state licenses revoked but, to this day, still maintain a federal license.  One example is Cindy Bardin. It is unfair and a lack of sound judgment and standard to treat licensees so radically different, especially when they are situated similarly.  This type of action by the USDA constitutes the violation of equal protection under the law.

**Wide Disparity of Interpretation of Expectations Among Licensees**

There is also the way state laws and regulations are interpreted and thus enforced which also plays a part.  It's apparent that interpretations and enforcement of laws can change drastically between licensees.  For instance, the Respondent was charged with untimely submission of paperwork yet, as one can see from Exhibit 5 in her *Answer* to Complainant's *Motion for Summary Judgment* there have been a number of licensees who have submitted untimely and inaccurate paperwork yet have never been charged.  Additionally, the same exhibit shows how the Respondent was erroneously charged with inaccurate paperwork.  There also was no evidence submitted showing there were inaccuracies or missing information in her submitted report for which she was charged.[13]  Such details need to be used by the Administrative Court in determining how credible the State's

---

[13] The alleged inaccuracies of the Respondent's paperwork for which she was charged were stated in the document Notice of Intent to Revoke dated August 14, 2017.

charges and actions really are.  In the case of the Department of Environmental Conservation, credibility is questionable, at the very least.


## OTHER POINTS IN RESPONSE TO ALJ'S DECISION

**Secretary's Authority to Investigate.** By reciting *"The Secretary has the authority to investigate or inspect as he deems necessary to determine whether any ... exhibitor ... has violated or is violating any provision of [the AWA] or any regulations or standard issued thereunder ..."*, the Court is implying that, at the exclusion of all other laws and rationale, the Secretary may do as it pleases.  Although this has been, no doubt, the path the USDA and New York State DEC administrative agencies have taken in order to deny due process to the licensees falsely accused or accused of conduct which other licensees are known by agency staff to commit as well, it is doubtful the legislative intent of the law is meant to be taken to the extreme in which the Secretary may launch arbitrary and capricious investigations, allow inappropriate conduct among its staff members and treat a licensee with minor allegations of violations far worse than licensees who have perpetrated far more serious violations.  Such action by the Secretary not only seriously undermines the AWA of its remedial nature but also causes distrust of the public in the laws some administrative agencies inconsistently and arbitrarily enforce.


## TERMINATION OF LICENSURE INVOLVES DEPRIVATION OF RIGHTS OF THE RESPONDENT

### Deprivation of Personal Property Rights
According to 7 U.S.C. § 2131, the Animal Welfare Act serves to *"to protect the owners of animals from the theft of their animals by preventing the sale or use of animals which have been stolen."*

If the statements and evidence submitted by the Respondent were considered on equally as that of the Complainant, then the two violations to which she pled guilty, would have been mitigated by the circumstances under which they were levied to begin with.  The court seemed to not consider that the violations charged to the Respondent, including the ones which were dismissed, as well as the two to which she pled, were given in error.

She is immediately guilty until proven innocent - except the opportunity to prove innocence never arrives since the quasi-judicial forums of agency hearing offices appear to be run courts which provide constant victories for the Complainant and continual defeats for the Respondents.  This has helped to lead the agency to wielding highly inconsistent and unjust enforcement of the Animal Welfare Act, especially as it stands as a remedial statute.  Therefore, termination proceedings result from some political and/or personal interest(s) of the staff.  There is no real judgment or justice for that matter; only a certain win for the prosecuting attorney.

Mitigating factors concerning the charges to which she pled should be considered.  First, the charge claiming she kept opossums in inappropriate cages can be effectively refuted.  First, the

opossums were not long-term animals at the Respondent's facility.  They were in rehabilitation and recovering from infectious conditions and needed the added shelter and heat provided for them in the barn at the time the Respondent was documented by the inspector for having the animals in the cages they were in.

The fact that the inspector thought it was appropriate to keep animals who tend not to thrive in the cold climate and already have a weakened immune system from recovering from infections out in the bitter cold in the winter should have been a red flag to the ALJ that there was a possibility that not only the Respondent was treated unfairly by the inspector but that perhaps the inspector needs additional training or some type of address for the expectation of sub-standard care and dismissing the Respondent's attempts and reasons for keeping the animals inside the barn instead of outside.   By failing to do so, it is confusing as to why the Court believes the charge of inappropriate caging  is congruent to the rationale of the AWA as a remedial statute.  It is actually conflicting with what one would consider to be expected of a caregiver regulated by a remedial law.

It is also vital to look at the allegations made against the Respondent among the backdrop of the normal actions of the rest of the licensees situated similarly to the Respondent.

By failing to take into consideration mitigating factors regarding the charges just previously mentioned, as well as the failure of understanding the lack of severity of the charges and how other licensees have been treated in similar circumstances, makes the ALJ have a very narrow vision of the true situation and its circumstances.

**Prejudice**

Complainant's attorney, John Rodriguez, created a great deal of prejudice against the Respondent throughout the time before the MSJ was granted by the ALJ.  One way of prejudicing the Respondent was the inclusion of all of the dismissed charges given to the Respondent by DEC Officer Kevin Thomas.

It is clear Rodriguez's tactic worked with the ALJ.  Even though unadjudicated and having been dismissed for two years now, the ALJ included in his decision statement that the Commissioner "found" the Respondent possessing wildlife unlawfully.  If nothing else in the decision or the process by which it was rendered doesn't reveal the prejudice of the ALJ against the Respondent, then the inclusion of his own "guilty verdict" of unlawful possession of wildlife would be an absolute sign.

Anyone can put pen to paper and write a citation.  It doesn't make the citation truthful; especially with the reputation the officers of the DEC have in issuing false citations.  (include footnote to point to evidence of such)

The number of citations issued by Officer Thomas was the idea of William Powell who was supervising Officer Thomas in Region 8.  Powell had threatened the Respondent in his first and only conversation with her in November 2015.  Because she challenged him on his attitude that day, he threatened her that he would get her licenses terminated.  This threat was made after he had just finished telling the Respondent that there was nothing wrong with her facility and animals

(which had been seen by two officers several days before Powell and Respondent spoke on the phone).

Moreover, there are many tactics used by law enforcement in order to make a case bigger than it is if they are lacking evidence. Overcharging a person gives the "wow!" factor and makes others believe that with the number of alleged violations, the person must be guilty of at least some of them.

The Department also refused to give the Respondent the status of her licensing as well as process her applications for renewals and amendments back in 2016, and 2017.[14] The Respondent called, emailed, and made numerous attempts with various staff members in trying to find out the status of the renewal and amendment applications for her licenses. By failing to process them, the Department (while processing the fees sent in with the applications) caused the automatic approval of the applications and amendments pursuant to 6 NYCRR 175.4, including the amendments requesting the addition of opossums and coyotes to the Respondent's long-term license. The Department cannot have it both ways by accusing her of not having animals licensed properly then excluding her from the very process she is supposed to use in order to do so.

Furthermore, it is a well-known fact that wildlife rehabilitators have the discretion within which to determine when and where wildlife is to be released after successfully rehabilitating the animals. It is not uncommon to overwinter species such as coyotes and opossums. In fact, this was the plan for the animals divulged by the Respondent to Powell in the November 2015 conversation, so he knew the Respondent's intentions regarding the animals. There were no secrets, at least on the part of the Respondent.

Moreover, the animals which were alleged to have been illegally possessed by the respondent, namely the coyotes and opossums, were rehabilitation patients, not under the purview of the USDA but the USFWS if a federal agency may even impose its involvement into a state-run rehabilitation program at a facility in the state. Because these animals were rehabilitation patients, any allegation against the Respondent regarding unlawful possession, has nothing to do with the USDA Exhibitor's License which the ALJ wants to terminate. State-run wildlife rehabilitation programs are entirely different and separate from the long-term possession of non-releasable wildlife and exotic animals which is overseen by the APHIS as a division in the USDA.

Any allegation of unauthorized possession of any wildlife is an unsubstantiated accusation and should not have been included in the ALJ's decision and presented as a legitimate charge to which the Respondent either pled or found guilty after trial. The Commissioner, also biased, cannot make an accusation part of the Respondent's record of convictions simply because he makes an unfounded statement in his final determination considering the Respondent's *License to Collect & Possess* #623. By the ALJ documenting a provocative statement such as this allegation, he is clearly trying to misrepresent the case at bar by making it look like the Respondent is guilty of more than what she is.

---

[14] The citations from Officer Thomas were levied against the Respondent on July 24, 2016.

Last, it is a deprivation of the Respondent's right to due process and reveals the bias inherent in the ALJ's decision and his efforts in the overall effort of other staff members in misrepresenting the details of the Respondent's case.

**Unequal Treatment Under the Law**

§ 2131 states that one of the purposes of the AWA is "*...to protect owners of animals from the theft of their animal by preventing the ale or u e of animals which have been stolen.*" However, the USDA staff has refused to enforce this part of the AWA in support of my interests regarding stolen animals, which they have and continue to cover up helping the licensee who stole them. By doing so, the staff has severely undermined the AWA and makes their future actions untrustworthy.

The most effective strain in this case which seriously undermines the enforcement of the AWA, especially as a remedial statute, is the inconsistency of enforcement among licensees. In fact, by how the agency enforces its regulations and statutes sets precedence among the licensees in what is lawful and what is not; especially in the face of ambiguous statutes and regulations. By treating licensees with the extreme dichotomy they currently are, it gives the other licensees very confusing standards by which to operate activities regulated by the AWA.

In fact, one may see the inconsistency of enforcement as entrapment. For instance, while Powell falsely accused the Respondent of keeping wild coyotes and intentionally taming them to keep them indefinitely (which wasn't true), another facility did exactly that with the support of the Department. The Adirondack Wildlife Refuge couldn't have had a litter of four pups for a full week before they had been keeping the animals in human living quarters, posing in selfies with visitors to the facility and fit with domestic dog harnesses and led around like dogs. Not once did the facility ever try to rehabilitate the animals.

Instead of prosecuting these violations of the NYS Environmental Conservation Law and terminating all licensing given to the facility, like the Department did with the Respondent, the facility was allowed to keep the pups and even exhibit them outside of the facility in the public while they were kept on leashes. This is an egregious double standard which can even render the belief throughout the public that licensing systems like these are not only unnecessary but abusive.

The administrative agencies wielding the authority to impose such licensing standards not only often violate the same licensing laws they expect licensees to follow but they also keep a standard of favoritism among the licensees in which animals are not benefitting. In fact, such actions undermine licensing laws like the AWA, especially as a remedial statute, and waste so many resources while the authorities play their games with licensing statuses, manipulate individuals, engage in gaslighting[15] instead of the truth, and generally abuse their authority as well as the legal and enforcement processes

---

[15] manipulating someone's perception of what is real. It is a form of narcissism and sociopathic tendencies as gas lighters look to gain power over someone. A more psychological definition of gaslighting is "*an increasing frequency of systematically withholding factual information from, and/or providing false information . . . having the gradual effect of making [others] . . . confused and less able to trust their own memory and perception*". This is how administrative agencies make others dependent on them in thoughts and/or feelings thereby increasing the agency's control over others.
(source: https://www.northpointrecovery.com/blog/gaslighting-examples-effects-confront-abuse/)

From the imposition of such inconsistent and abusive standards upon licensees, a strong disdain for the law will develop and illegal acts and conduct will rise even further. This is why it is vital to make such authorities accountable at all times instead of giving them unlimited job security and allowing them privileges at the expense of the rights of others with less authority and influence. Failure in doing so over the years has resulted in an uneven power dynamic in our society in which government agencies, especially the USDA and natural resource agencies, such as the DEC, tower over members of the public and virtually do as they please without regard for their own violations of the laws and regulations. Another label for such a practice is bullying. .

There are numerous examples of the obvious favoritism by the Animal Care Department of certain licensees and what they are allowed to do versus what people who are targeted, like the Respondent, are allowed to do. One such case is the one which has reached litigation in the Jefferson County Supreme Court, *Leo v Thomas*. This is a case in which licensee Tyler Thomas literally and unlawfully converted ownership of animals in his care which belonged to the Respondent. He is also guilty of unlawful possession, fraudulent inducement, unlawful transfer and disposition, unlawful import into Texas State, illegal possession of the animals (including his esp. endangered species he has), unlawful exhibition, transfer, and other violations of the AWA, and both New York and Texas State Conservation Laws. Yet, not one hint of accountability has been invoked by the staff in regulating such actions which are specifically and clearly related in the AWA as being actionable; that is, the transfer and sale of stolen animals.

In Tyler Thomas' *Answer* to the Respondent's Complaint, sent to the Respondent on November 28, 2017, he admitted Animal Care Inspector, Andrea D'Ambrosio, encouraged him to take animals from the facility of the Respondent with the intention of never returning them. This is fraud and a violation of due process and personal property rights. This was to occur on April 23, 2017 when Thomas transported three of the Respondent's animals from her facility to his for short-term boarding to last for 3-6 months while the Respondent underwent and recovered from long-needed knee surgery. Throughout the course of the case, the Respondent has learned from evidence she has acquired that both the USDA and DEC have been instrumental in helping Thomas secret the animals away in the state of Texas without any repercussions and in direct violation of the Respondent's rights and the AWA.

Any animal care complaints I submitted to APHIS were immediately given to Andrea D'Ambrosio, one of the main impetuses of the case in the first place, and her supervisor, Tonya Hadijis, to investigate. This was done after I had requested Andrea D'Ambrosio, in particular, refrain from gaining access to any information pertaining to my facility which is not needed. By then, she was no longer my inspector.

The Respondent has also learned the DEC has written two statements for Thomas regarding the animals stolen from the Respondent. One of those documents is a "phone summary" written by Joe Therrien on November 7-8, 2017 and another one giving Thomas "orders" to transfer and dispose of the animals. However, these are privately owned animals which were paid for by the Respondent and lawfully possessed. The Department has no authority to give another person's animals away to another. In addition, there are procedures to be taken in order to lawfully seize animals from a person. A further violation occurred when the Department and Tyler Thomas refused to give a copy of the papers to her even though they were addressing her animals she owned

17

and were levying further allegations of animal cruelty and stating the false story of seizing the Respondent's animals, when nothing even remotely similar, was true, nor is there any evidence for the other side to support their gaslighting and story-telling. This is a violation of the Respondent's personal property and due process rights. The Respondent mentioned a "shadow effort" or project coinciding with the recent USDA hearing terminating her Exhibitor's License.[16] Based on acquired evidence, Powell, Therrien, Kevin Thomas, Andrea D'Ambrosio, Tyler Thomas and his attorney, Michael Young of Lowville, NY, have been passing around an alternate, albeit erroneous, version of events. The main disservice to the Respondent is the falsified story of the DEC saying they allegedly "seized" the animals when nothing could have been further from the truth.

The animals were, as clearly shown by evidence submitted by the Respondent to the Supreme Court in the Leo v Thomas case, subject to a boarding contract between the parties. The animals were to be returned to the Respondent upon her request as she maintained ownership of them throughout the time the contract was in effect. Neither the DEC nor the USDA were never involved with anything to do with the creation of the contract (as it was known by the Respondent as she didn't know, at the time, that D'Ambrosio was encouraging Thomas to take more animals then he did from the Respondent).

### Misrepresentation of Licensing Status

A great deal of gaslighting among the opposing "team"[17] of people has led to an entirely different reality than what the truth reveals. In their reality, the Respondent did not have her animals lawfully as she allegedly didn't have licensing in place for the badger, fisher, and fox - the animals stolen by licensee Tyler Thomas, with the encouragement of the USDA and the NYSDEC, and undedr the color of law, repeatedly

Other accusations Powell wanted to make against the Respondent, such as her starving her animals, breeding wild coyotes and selling the offspring, breeding and selling foxes as pets and the accusation of the Respondent being a psychologically unstable hoarder (among even more allegations) simply are not true. It is highly unethical, thus unprofessional, for such agency staff to be making such ludicrous and unfounded accusations in turning local authorities and officials against the Respondent, as well as her colleagues and others. Not only do such actions show the ethical bankruptcy in the officers' dealings with licensees and the public but it is also indicative of their need to supplement a case with false statements and accusations. Mostly, these actions by Powell give others insight as to how personal he made the prosecution of the Respondent.

## LACK OF SOUNDNESS IN JUDGMENT BY THE SECRETARY RESULTING IN UNEQUAL TREATMENT OF LICENSEES

It has become increasingly apparent that the agency will not take proper steps in resolving conflicts concerning a licensee against whom they have a grudge. It is also apparent the Secretary takes to the extreme his privilege to *"... issue licenses to dealers and exhibitors upon application*

---

[16] It appears the ALJ helped the effort a bit by including the allegation of unlawful possession of animals in his decision which wasn't even part of the Motion for Summary Judgment argument nor the answer to the MSJ from the Respondent. Most importantly, the charge was dismissed and never proven thereby violating the Respondent's right to due process.

[17] consists of involved staff from the USDA and the DEC, Tyler Thomas and his partner, Nicholas Stacey.

*for a license in such form and manner as the Secretary of Agriculture may prescribe*." (7 U.S.C. § 2133).

However, such privileges should also coincide with existing laws and regulations without depriving the licensee of any constitutional right. Such privilege should also respect and exist in obeyance of other applicable laws such as the Small Business Non-Retaliation Act, Access to Justice Act, etc.

By selectively enforcing the law against the Respondent results in an abuse of process and a complete disregard for other protective laws such as those previously mentioned. It is vital the Secretary abide by all rules, regulations, and laws, especially when prosecuting a person as the termination, revocation or suspension of licensure affects business and commerce thus the way the licensee makes a living.

From the Respondent's point of view, the Secretary and NYSDEC Commissioner pay no mind to any rule, regulation, or statute, nor any facts or statements which contradict the established goal of the government in proceeding against a licensee in order to take away licensure. Hence, any hearing or involvement of a judge, although giving the semblance of due process, is normally the agency going through the steps but already acting upon a predetermined opinion and decision according to what agency staff and other government agencies want. This simply is not due process.

At every step of the way, there has been some degree of deprivation of due process from the phone call between the Respondent and Powell in November 2015, during proceedings from the town court appearances and the plea to the proceeding presided over by ALJ Channing Strother. The prosecution should always have an up-hill battle in the burden of proof required to convict a licensee. Unfortunately, at the very most, all that exists is a plateau.

**Date:** April 27, 2020

Carrie M. Leo, Respondent
3199 Walworth Road
Walworth, NY 14568
315.538.8316

19

## VERIFICATION

WAYNE COUNTY
NEW YORK STATE
} ss:

  Carrie M. Leo, being duly sworn, depose and say, that she is the Petitioner in the entitled action; that she has read the foregoing Petition and knows the contents therein, that this Petition is true to her own knowledge, except as to matters stated to be alleged upon information and belief, and as to those matters they believe to be true.

Date: April 27, 2021

Carrie M. Leo, *Petitioner pro se*
3199 Walworth Road
Walworth, NY 14568
ph: (315) 538-8316
carrieleo15@gmail.com

*Sworn to before me this 27ʰ day of April 2021*

Notary Public

LAUREN FRIEDL
Notary Public - State of New York
NO. 07FR6383306
Qualified in Wayne County
My Commission Expires Nov 13, 2022

## CERTIFICATE OF SERVICE

  **IT IS HEREBY CERTIFIED** that a copy of the within Complainant Carrie Leo's Petition has been served upon the NYSDEC by way of representing counsel of record, Brittany Haner, using her email address brittany.haner@ag.ny.gov.

**VIA EMAIL** brittany.haner@ag.ny.gov
Brittany M. Haner, Esq.
Assistant Attorney General
NYS Office of the Attorney General
Environmental Protection Bureau
The Capitol | Albany, New York 12224
Telephone: (518) 776-2389
Fax (518) 650-9364
email: Brittany.Haner@ag.ny.gov

Dated: Walworth, New York
   April 27, 2021

By:

Carrie M. Leo, Petitioner
3199 Walworth Road
Walworth, NY 14568
Tel: 315-538-8316
carrieleo15@gmail.com

2

UNITED STATES DEPARTMENT OF AGRICULTURE
BEFORE THE SECRETARY OF AGRICULTURE

In re:                                                    )
                                                          )
    Carrie Leo, an individual, doing business as          )
    Caring for Cottontails Wildlife Rescue &              )    AWA Docket No. 20-J-0118
    Rehabilitation, Inc., a New York State corporation,   )
                                                          )
                        Respondent.                       )

**DECISION AND ORDER GRANTING COMPLAINANT'S MOTION FOR
SUMMARY JUDGMENT AND DENYING RESPONDENT'S CROSS-MOTIONS
FOR DISMISSAL OF ORDER TO SHOW CAUSE AND SUMMARY JUDGMENT**

Appearances:

*John V. Rodriguez, Esq., with the Office of the General Counsel, United States Department of
Agriculture, Washington, DC, for the Complainant, the Administrator of the Animal and Plant
Health Inspection Service ("APHIS")*

*Carrie Leo, pro se Respondent*

Before Channing D. Strother, Chief Administrative Law Judge

### Preliminary Statement

This is a proceeding under the Animal Welfare Act, as amended (7 U.S.C. §§ 2131 *et
seq.*) ("AWA"); the regulations promulgated thereunder (9 C.F.R. §§ 1.1 *et seq.*)
("Regulations"); and the Rules of Practice Governing Formal Adjudicatory Proceedings
Instituted by the Secretary Under Various Statutes (7 C.F.R. §§ 1.130 *et seq.*) ("Rules of
Practice"). The matter initiated on April 21, 2020 with an Order to Show Cause Why Animal
Welfare Act License 21-C-0435 Should Not Be Terminated ("Order to Show Cause") filed by
the Administrator of the Animal and Plant Health Protection Service, United States Department
of Agriculture ("APHIS" or "Complainant").

On June 19, 2020, Complainant filed a Motion for Summary Judgment against Carrie
Leo, an individual doing business as Caring for Cottontails Wildlife Rescue & Rehabilitation

Center, Inc., a New York State corporation ("Respondent"), including a Memorandum of Points

and Authorities, based on section 1.143(b) of the Rules of Practice (7 C.F.R. § 1.143(b)). On July

30, 2020, Respondent filed an answer to Complainant's Motion, wherein Respondent raised

affirmative defenses and set forth counter-motions for dismissal of Complainant's Order to Show

Cause and summary judgment. Complainant filed a response thereto on August 3, 2020.

     Based on careful review of the pleadings and evidence before me, I find there are no

issues of material fact to warrant a hearing in this matter. As set out further below, I find that

Respondent's actions render her unfit to hold an AWA license as she (1) would be operating in

violation or circumvention of State or local laws and (2) has been found to have violated State or

local laws or regulations pertaining to the transportation ownership, neglect, or welfare of

animals. Therefore, Complainant's Motion for Summary Judgment shall be granted, and

Respondent's AWA license shall be terminated. For the same reasons, as also set forth below,

Respondent's counter-motions for dismissal and summary judgment shall be denied.

     This Decision and Order is based upon consideration of the record evidence; the

pleadings, arguments, and explanations of the parties; and controlling law.

## Jurisdiction and Burden of Proof

     The AWA vests the United States Department of Agriculture ("USDA") with the

authority to regulate the transportation, purchase, sale, housing, care, handling, and treatment of

animals subject to the AWA.[1] Pursuant to the AWA, persons who sell and transport regulated

animals, or who use animals for research for exhibition, must obtain a license or registration

---

[1] *See* 7 U.S.C. §§ 2131, 2133; Pub. L. No. 99-198 § 1752, 99 Stat. 1354, 1645 (1985) (codified
at 7 U.S.C. § 2143(a) (1994)); *Animal Legal Defense Fund, Inc. v. Perdue*, 872 F.3d 602, 607-08
(D.C. Cir. 2017).

issued by the Secretary of Agriculture.[2] Further, the AWA authorizes the Secretary to promulgate appropriate regulations, rules, and orders to promote the purpose of the AWA.[3] The AWA and related Regulations fall within the enforcement authority of the Animal and Plant Health Inspection Service ("APHIS"), an agency of USDA.[4] APHIS is the agency tasked to issue licenses under the AWA.[5]

As noted above, APHIS filed its Order to Show Cause[6] pursuant to the Rules of Practice, which apply to the AWA and related Regulations. The case was assigned to me on June 9, 2020 and is properly before me for resolution.

APHIS, as the proponent of an order against Respondent in this proceeding, has the burden of proof.[7] The standard of proof applicable to adjudicatory proceedings under the Administrative Procedure Act, such as this one, is the preponderance of the evidence.[8]

---

[2] 7 U.S.C. § 2133.

[3] 7 U.S.C. § 2151.

[4] *See ALDF v. Perdue*, 872 F.3d at 607; Animal Welfare; Inspection, Licensing, and Procurement of Animals, 69 Fed. Reg. 42089, 42089 (July 14, 2004) (to be codified at 9 C.F.R. pts. 1, 2).

[5] *ALDF*, 872 F.3d at 607-08.

[6] *See* 7 C.F.R. § 1.132 ("*Complaint* means the formal complaint, order to show cause, or other document by virtue of which a proceeding is instituted.").

[7] 5 U.S.C. § 556(d).

[8] *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387-92 (1983); *Steadman v. SEC*, 450 U.S. 91, 92-104 (1981); *White*, 73 Agric. Dec. 114, 153 (U.S.D.A. 2014); *Tri-State Zoological Park of W. Md.*, 72 Agric. Dec. 128, 174 (U.S.D.A. 2013); *Pearson*, 68 Agric. Dec. 685, 727-28 (U.S.D.A. 2009), *aff'd*, 411 F. App'x 866 (6th Cir. 2011); *Schmidt*, 66 Agric. Dec. 159, 178 (U.S.D.A. 2007); *Lawson*, 57 Agric. Dec. 980, 1015 (U.S.D.A. 1998) ("The standard of proof in administrative proceedings conducted under the Animal Welfare Act is preponderance of the evidence."); *Lawson*, 57 Agric. Dec. 980, 1098 (U.S.D.A. 1998) ("Complainant has the burden of proving a violation of the Animal Welfare Act and [the] Regulations [and Standards] by a preponderance of the evidence.") (citing *Lesser*, 52 Agric. Dec. 155, 166 (U.S.D.A. 1993), *aff'd*,

Furthermore, the Judicial Officer has set forth the standard for summary judgment in a

proceeding before a USDA Administrative Law Judge as follows:

### The Summary Judgment Standard

The Rules of Practice do not specifically provide for the use or exclusion of summary judgment; however, I have consistently held that hearings are futile and summary judgment is appropriate in proceedings in which there is no factual dispute of substance. A factual dispute of substance is present if sufficient evidence exists on each side so that a rational trier of fact could resolve the dispute either way and resolution of the dispute is essential to the proper disposition of the claim. The mere existence of some factual dispute will not defeat an otherwise properly supported motion for summary judgment because the fact dispute must be material. The usual and primary purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.

If the moving party supports its motion for summary judgment, the burden shifts to the non-moving party who may not rest on mere allegation or denial in the pleadings, but must set forth facts showing there is a genuine issue for trial. In setting forth such facts, the non-moving party must identify the facts by reference to depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials. In ruling on a motion for summary judgment, all evidence must be considered in the light most favorable to the non-moving party with all justifiable inferences to be drawn in the non-movant's favor.

*Knaust*, 73 Agric. Dec. 92, 98-99 (U.S.D.A. 2014) (footnotes omitted).

### Statutory and Regulatory Authority

Congress enacted the AWA, in part, "to insure that animals intended for use in research

facilities or for exhibition purposes or for use as pets are provided humane care and treatment."[9]

To achieve this purpose, Congress provided that the "Secretary shall issue licenses to dealers and

exhibitors upon application therefor in such form and manner as he may prescribe[.]"[10] The

---

34 F.3d 1301 (7th Cir. 1994)).

[9] 7 U.S.C. § 2131(1).

[10] 7 U.S.C. § 2133.

power to require and issue licenses under the AWA includes the power to terminate a license and

to disqualify a person whose license has been terminated from becoming licensed.[11]

The AWA authorizes the Secretary of Agriculture to "promulgate such rules, regulations,

and orders as he may deem necessary in order to effectuate the purposes of [the Act]."[12] The

Regulations specify certain bases for denying an initial application for an AWA license[13] and

further state that an AWA license may be terminated for any reason that an initial license

application may be denied.[14] Applicable here is section 2.11(a) of the Regulations (9 C.F.R. §

2.11(a)), which provides that a "license will not be issued to any applicant who . . . [i]s or was

operating in violation or circumvention of any Federal, State, or local laws"[15] or "has been found

to have violated any Federal, State, our local laws or regulations pertaining to the transportation,

ownership, neglect or welfare of animals, or is otherwise unfit to be licensed and the

Administrator determines that the issuance of a license would be contrary to the purposes of the

Act."[16]

### Procedural History

APHIS initiated this proceeding on April 21, 2020 by filing an order to show cause why

---

[11] *See Bauck*, 68 Agric. Dec. 853, 856, 862 (U.S.D.A. 2009), *appeal dismissed*, No. 10-1138 (8th Cir. Feb. 24, 2010); *Animals of Mont., Inc.*, 68 Agric. Dec. 92, 105-06 (U.S.D.A. 2009); *Bradshaw*, 50 Agric. Dec. 499, 507 (U.S.D.A. 1991).

[12] 7 U.S.C. § 2151.

[13] *See* 9 C.F.R. § 2.11.

[14] 9 C.F.R. § 2.12 ("A license may be terminated during the license renewal process or at any other time for any reason that an initial license application may be denied pursuant to § 2.11 after a hearing in accordance with the applicable rules of practice.").

[15] 9 C.F.R. § 2.11(a)(5).

[16] 9 C.F.R. § 2.11(a)(6).

Respondent's AWA license should not be terminated ("Order to Show Cause").[17] The Order to

Show Cause states, in pertinent part:

> The Respondent pled guilty to two violations of the State law of New
> York pertaining to the welfare and ownership of animals, and maintaining
> accurate records involving animals. The Respondent's state LCPEE license has
> been revoked, based in part, on the two violations of State law pertaining to
> animals and maintaining accurate records involving the animals. The
> Respondent's actions render her unfit to hold an AWA license as she: 1. would be
> operating in violation or circumvention of State or local laws; 2. has been found
> to have violated State or local laws or regulations pertaining to the transportation,
> ownership, neglect, or welfare of animals; and 3. has refused to provide APHIS
> officials access for inspection. The Administrator has determined that the
> Respondent's continuous possession of an AWA license would be contrary to the
> purpose of the Act, and that said license should be terminated.

Order to Show Cause at 4. Moreover, the Order to Show Cause requested "this proceeding be

decided based upon the written record, or by summary judgment; or, alternatively, following an

oral hearing in conformity with the Rules of Practice governing proceedings under the Act; and

that such order or orders be issued as are authorized by the Act and warranted under the

circumstances."[18]

On June 2, 2020, Respondent filed an answer that admitted some allegations of the Order

to Show Cause, denied other allegations of the Order to Show Cause, and raised thirteen

"affirmative defenses."[19]

---

[17] The Order to Show Cause included five attachments: (1) New York State Department of
Environmental Conservation, License to Collect or Possess    Education/Exhibition: License
Information/Conditions; (2) New York State Arrest Records for Carrie M. Leo; (3) Certificate of
Conviction in Case No. 16080141 (State of New York, Wayne County, Macedon Town Court);
(4) July 20, 2018 Hearing Report of Richard A. Sherman, Administrative Law Judge (DEC Case
No. OHMS 2017-72265); (5) November 7, 2018 Order of the Commissioner (DEC Case No.
OHMS 2017-72265).

[18] Order to Show Cause at 4-5.

[19] *See* Answer at 1-7. The Answer also included an attachment: "Answer to Commissioner

On June 16, 2020, I issued an order ("Exchange Order") setting deadlines for prehearing submissions by each party.[20]

On June 19, 2020, APHIS filed a Motion for Summary Judgment "based on section 1.143(b) of the Rules of Practice that govern proceedings under the Animal Welfare Act (7 C.F.R. § 1.143(b)), on all of the pleadings and papers on file herein and on [an] attached memorandum of points and authorities."[21] On July 30, 2020, following two extensions of time,[22] Respondent filed an "Answer to Complainant's Motion for Summary Judgment & Counter-Motion" that included several exhibits.[23] Respondent's Counter-Motion asserted that "Complainant's Order to Show Cause Should be Dismissed in its entirety upon summary

---

Seggos' Final Determination of November 7, 2018" ("Attachment 1").

[20] Pursuant to the Exchange Order, Complainant had until August 17, 2020 to file with the Hearing Clerk a list of exhibits and witnesses and to send copies of its exhibits and list to Respondent. Respondent was given until October 16, 2020 to do the same. *See* Exchange Order at 1-2. Complainant filed its Witness and Exhibit List on August 17, 2020. Respondent has not filed a list of witnesses and exhibits, but her deadline for doing so has yet to pass. On August 18, 2020, Respondent filed a "Request to Produce Documents" and "Notice of Objection to Complainant's Exhibit List." Given the herein ruling of summary judgment against Respondent, however, it is unnecessary for me to reach a determination on Respondent's Request and Objection.

[21] Motion for Summary Judgment at 1. The Motion includes a "MEMORANDUM OF POINTS AND AUTHORITIES and an "ATTACHMENT 1," composed of Respondent's AWA license documents.

[22] *See* Order Granting Respondent's Unopposed Request for Extension of Time to Respond to Complainant's Motion for Summary Judgment (filed July 14, 2020); Order Granting Respondent's Second Request for Extension of Time to Respond to Complainant's Motion for Summary Judgment (filed July 24, 2020).

[23] The "Exhibit List" included with Respondent's Answer and Counter-Motion identified the following: (1) "Respondent's Letter to USDA General Counsel, Steve Vaden," dated 04/22/2019; (2) "Email Thread between Rodriguez and Leo," dated 03/26/2020; (3) "Email from Respondent to Complainant," dated 04/03/2020; (4) "Letters indicating incomplete and/or inaccurate paperwork," dated "various"; (5) "Email between state and federal staff members," dated "*pending*"; and (6) "Images of Opossum Bacterial Infections," dated 8/17/2019. However, the cover pages for Exhibits 4 and 5 were marked "*pending*" with no actual documents to follow.

judgment in favor of the Respondent."[24]

On August 3, 2020, Complainant filed a "Response to Respondent's Answer to Complainant's Motion for Summary Judgment" that "move[d] for immediate summary judgment to have the Respondent's AWA license 21-C-0435 terminated without a hearing" and "move[d] for denial of Respondent's counter-motion."[25] Respondent filed an Exhibit 5 on August 5, 2020 and Exhibits 4A, 4B, 4C, and 5 on August 10, 2020[26].[27]

---

[24] Respondent's Answer to Complainant's Motion for Summary Judgment ("Answer to MSJ") at 21.

[25] Response to Respondent's Answer to Complainant's Motion for Summary Judgment *she* ("Response to Answer to MSJ") at 7. The Response included two attachments: (1) print-out of U.S. DEP'T OF AGRIC., ANIMAL & PLANT HEALTH INSPECTION SERVS., ENFORCEMENT SUMMARIES, https://www.aphis.usda.gov/aphis/ourfocus/business-services/ies/ies_performance_metrics/ies-panels/enforcement-summaries; and (2) print-out of N.Y. ENVTL. CONSERV. LAW § 71-4001 (McKinney 2019). In the Response, Complainant requested that "Respondent be denied from supplementing her Answer MSJ and filing and further motions as to the MSJ after 4:30 p.m. Eastern on Friday, July 31, 2020." *Id.* at 6 (noting that Respondent "failed to file Exhibits [4 and 5] to her Answer MSJ"). I did not grant Complainant's request, as Complainant failed to show how it would be prejudiced by supplementation.

[26] The "Exhibit 5" filed on August 5, 2020 includes two emails——one from William V. Powell and one from Andrea D'Ambrosio   as well as Respondent's explanations regarding said emails. The August 10, 2020 exhibits include: documents relating to the denial of Respondent's LCPEE application (Exhibit 4A); documents relating to the renewal application of a different licensee (Exhibit 4B); a letter that purportedly serves as an "example [of] many wildlife rehabilitators who turn in annual rehabilitation logs grossly late for submission" (Exhibit 4C); and emails from William V. Powell and Andrea D'Ambrosio, as well as Respondent's explanations regarding said emails (Exhibit 5) (same as Exhibit 5 filed on August 5, 2020).

[27] On August 25, 2020, Complainant filed a "Motion to Strike Respondent's Answer to Complainant's Motion for Summary Judgment Exhibits 4 & 5." However, the Motion fails to demonstrate how Complainant would be prejudiced by my admitting Respondent's exhibits to the record, and Complainant's sole reason for objecting appears to be that the exhibits were filed after Respondent's deadline to answer Complainant's Motion for Summary Judgment had passed. *See* Motion to Strike at 2-3; *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* [party], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotations omitted). Therefore, Complainant's Motion to Strike Respondent's Exhibits 4 and 5 is DENIED.

## Summary of the Evidence[28]

### A. Admissions

In her Answer to APHIS's Order to Show Cause, Respondent failed to deny—and

therefore admitted[29]   that she is an individual doing business as Caring for Cottontails Wildlife

& Rescue Rehabilitation, Inc.; that she operated as an exhibitor, as that term is defined in the Act

and Regulations; and that she held AWA license 21-C-0435. Respondent further admitted she

was convicted of two offenses in the State of New York, Wayne County: (1) failing to provide

proper caging facilities for opossums in violation of Condition #10 of her New York State

License to Collect or Possess   Education/Exhibition ("LCPEE"); and (2) failing to submit an

accurate and complete inspection report in violation of Condition #22 of her LCPEE.[30] In

addition, Respondent admitted that on or about November 7, 2018, the Commissioner of the

New York State Department of Environmental Conservation issued an order revoking

Respondent's New York State LCPEE (DEC Case No. OHMS 2017-72265).[31]

### B. Documentary Evidence

APHIS Exhibits[32]

---

[28] This Decision and Order relies upon the pleadings and upon declarations and documentary evidence attached to APHIS's Order to Show Cause, Respondent's Answer to Notice to Show Cause, APHIS's Motion for Summary Judgment, Respondent's Answer to Motion for Summary Judgment and Counter-Motion, APHIS's Response to Respondent's Answer to Motion for Summary Judgment and Counter-Motion, and the exhibits filed by Respondent on August 5, 2020 and August 10, 2020.

[29] *See* 7 C.F.R. § 1.136(b)(1),(c); Answer at 1-2.

[30] *See* Answer at 1.

[31] *Id.* at 2.

[32] Official notice is taken of CX-3 (Certificate of Conviction in Case No. 1608131, State of New York, Wayne County, Macedon Town Court), CX-4 (Hearing Report of ALJ Richard A.

9

CX-1         New York State Department of Environmental Conservation, License to
             Collect or Possess – Education/Exhibition: License Information/Conditions

CX-2         New York State, Arrest Records for Carrie M. Leo

CX-3         Certificate of Conviction in Case No. 1608141 (State of New York, Wayne
             County, Macedon Town Court)

CX-4         July 20, 2018 Hearing Report of Richard A. Sherman, Administrative Law Judge
             (DEC Case No. OHMS 2017-72265)

CX-5         November 7, 2018 Order of the Commissioner (DEC Case No. OHMS 2017-
             72265)

CX-6         AWA Class C Exhibitor License Documents (No. 21-C-0435)[33]

CX-7         Print-out of APHIS's "Enforcement Summaries" webpage from USDA.gov

CX-8         Print-out of McKinney's Consolidated Laws of New York Annotated § 71-4001

Respondent Exhibits

RX-1         Answer to Commissioner Seggos's Final Determination of November 7, 2018

RX-2         April 22, 2019 Letter from Respondent to Secretary Sonny Perdue (CC to Steven
             Vaden, General Counsel)

RX-3         March 2020 email thread between Respondent and John V. Rodriguez

---

Sherman, DEC Case No. OHMS 2017-72265), and CX-5 (Order of the Commissioner, DEC
Case No. OHMS 2017-72265). 7 C.F.R. § 1.141(h)(6).

[33] These documents include: Application for License Renewal dated 7/23/19; AWA License
Certificate No. 21-C-0435 (Expiration Date: August 25, 2020); Application for License Renewal
dated 8/17/18; AWA License Certificate No. 21-C-0435 (Expiration Date: August 25, 2019);
Application for License Renewal dated 7/31/17; AWA License Certificate No. 21-C-0435
(Expiration Date: August 25, 2018); Application for License Renewal dated 8/19/16; AWA
License Certificate No. 21-C-0435 (Expiration Date: August 25, 2017); Application for License
Renewal dated 8/1/15; AWA License Certificate No. 21-C-0435 (Expiration Date: August 25,
2016); Application for License (New License) dated 1/4/13; AWA License Certificate No. 21-C-
0409 (Expiration Date: February 28, 2014).

RX-4          April 3, 2020 email from Respondent to John V. Rodriguez

RX-5A         New York State Department of Environmental Conservation, Notices of
              Application/License Denial

RX-5B         Documents from renewal application of unidentified licensee, with explanation by
              Respondent

RX-5C         September 25, 2005 letter from Elise Able of Fox Wood Wildlife Rescue, Inc.,
              with explanation by Respondent

RX-6          Images of bacterial infections in the Virginia opossum

RX-7          May 12, 2017 email from William V. Powell and March 29, 2017 email from
              Andrea D'Ambrosio, with explanations by Respondent

I hereby admit to the record all of the exhibits identified herein above.

## Discussion

As previously noted, an administrative law judge may enter summary judgment if the
pleadings, affidavits, or other materials show there is no genuine issue as to any material fact.[34]
An issue is "genuine" if sufficient evidence exists on each side so that a rational trier of fact
could resolve the issue either way, and an issue of fact is "material" if under the substantive law
it is essential to the proper disposition of the claim.[35] The mere existence of some factual dispute

---

[34] *Veg-Mix, Inc. v. U.S. Dep't of Agric.*, 832 F.2d 601, 607 (D.C. Cir. 1987) (affirming the
Secretary of Agriculture's use of summary judgment under the Rules of Practice and rejecting
Veg-Mix, Inc.'s claim that a hearing was required because it answered the complaint with a
denial of the allegations); *see also Livingston Care Ctr. v. Dep't of Health & Human Servs.*, 108
F. App'x 350, 354 (6th Cir. 2004) ("This Court recently determined that the rule which allows
administrative law judges to grant a summary judgment without an in-person haering is legally
enforceable.").

[35] *Wallace v. Leidos Innovations Corp.*, 805 F. App'x 389, 392 (6th Cir. 2020); *Adler v. Wal-
Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998);

will not defeat an otherwise properly supported motion for summary judgment, as the factual

dispute must be "material to an issue affecting the outcome of the case."[36]

If the moving party supports its motion, the burden then shifts to the non-moving party.[37]

The non-moving party may not rely upon the mere allegations or denials of her pleading; rather,

must offer specific facts showing there is a genuine issue for hearing.[38] The non-moving must

identify such facts by reference to affidavits, depositions, transcripts, or specific exhibits.[39] The

non-moving party may not rest upon ignorance of facts, on speculation, or on suspicion and may

not escape summary judgment in the mere hope that something will turn up at hearing.[40]

However, all evidence must viewed in the light most favorable to the non-moving party.[41]

## I.   No Genuine Issue of Material Fact

The material facts are not in dispute in this case, and a hearing is therefore unnecessary.

As previously discussed, sections 2.11 and 2.12 of the Regulations (9 C.F.R. §§ 2.11 and 2.12)

authorize the Department to terminate the AWA license of any person, at any time, who "[i]s or

was operating in violation or circumvention of any Federal, State or local laws"[42] or "has been

---

[36] *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (citing *Anderson*, 477 U.S. at 247-49; *Spencer v. Zimmerman*, 873 F.2d 256, 257 (11th Cir. 1989)); *see Schwartz v. Bhd. of Maintenance Way Employees*, 264 F.3d 1181, 1183 (10th Cir. 2001).

[37] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[38] *Celotex Corp.*, 477 U.S. at 324; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir. 1993).

[39] *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988)

[40] *Id.* at 793-94.

[41] *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Anderson*, 477 U.S. at 242-43; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

[42] 9 C.F.R. § 2.11(a)(5).

found to have violated any Federal, State, or local laws or regulations pertaining to the

transportation, ownership, neglect, or welfare of animals, or is otherwise unfit to be licensed and

the Administrator determines that the issuance of a license would be contrary to the purposes of

the Act."[43] As set out herein, the record is undisputed that Respondents have "been found to

have violated . . .  Federal, State, or local laws or regulations pertaining to the transportation,

ownership, neglect, or welfare of animals . . ."[44] Thus, Complainant has met its burden of

showing that Respondent's actions render her unfit to hold an AWA license as she (1) would be

operating in violation or circumvention of State and local laws and (2) has been found to have

violated State or local laws or regulations related to the ownership and welfare of animals.

It is undisputed that on or about December 12, 2017, the State of New York, Wayne

County, in Case No. 1608141, convicted Respondent of the offenses cited in Arrest Records

BF0195322 and BF0195333.[45] In fact, Respondent pleaded guilty to both offenses,[46] each of

which pertains to the transportation, ownership, neglect, or welfare of animals: (1) failing to

provide proper caging facilities for opossums in violation of LCPEE #623 Condition 10 and (2)

failing to submit an accurate and complete exhibition report in violation of LCPEE #623

Condition 22.[47] Respondent's guilty pleas and convictions meet the standard imposed by 9

C.F.R. § 2.11(a)(6).[48]

---

[43] 9 C.F.R. § 2.11(a)(6).

[44] 9 C.F.R. § 2.11(a)(5).

[45] *See* CX-3.

[46] *See id.*

[47] *See* CX-2; CX-3.

[48] *See* 9 C.F.R. § 2.11(a)(6) ("A license will not be issued to an applicant who . . . has pled *nolo contendre* (no contest) or has been found to have violated any Federal, State, or local laws or

Further, Complainant has established that Respondent's LCPEE (New York State
License to Collect or Possess -- Education/Exhibition) was revoked. There is no dispute that on
or about July 20, 2018, after an administrative hearing, DEC Administrative Law Judge Sherman
("ALJ Sherman") recommended that DEC Commissioner Basil Seggos ("Commissioner
Seggos") issue an order revoking Respondent's LCPEE.[49] The recommendation was based in
part on Respondent's failure to submit timely reports to the DEC (the conviction of Arrest
Record BF0195333) and failure to comply with the terms and conditions of LCPEE #623 (the
conviction of Arrest Record BF0195322).[50] There also is no dispute that on or about November
7, 2018, Commissioner Seggos, in *In re Carrie Leo*, DEC Case No. OHMS 2017-72265, issued a
decision upon ALJ Sherman's recommendation and revoked Respondent's New York State
license, LCPEE #623.[51] There is no question that allowing Respondent to maintain her AWA
license would empower her to circumvent the revocation of her New York State LCPEE in
violation of 9 C.F.R. § 2.11(a)(5).[52]

Complainant has proven by a preponderance of the evidence that Respondent qualifies
for license termination pursuant to both 9 C.F.R. §§ 2.11(5) and 2.11(6).[53] Accordingly, I find

---

regulations pertaining to the transportation, ownership, neglect, or welfare of animals[.]").

[49] *See* CX-4.

[50] *See id.*

[51] *See* CX-5.

[52] *See* 9 C.F.R. § 2.11(a)(5) ("A license will not be issued to an applicant who . . . [i]s or would
be operating in violation or circumvention of any Federal, State, or local laws[.]"); *Ludwig*, 71
Agric. Dec. 449, 454 (U.S.D.A. 2012) (finding the petitioner's failure to maintain a state license
met the standards imposed in 9 C.F.R. § 2.11(a)(5)).

[53] *See Ash*, 71 Agric. Dec. 900, 913-14 (U.S.D.A. 2012) (holding that termination was the
appropriate sanction where the "proceeding was instituted under the authority of the Secretary of
Agriculture to terminate an Animal Welfare Act license and the Administrator consistently

that summary judgment   in favor of Complainant   is appropriate in this case.[54]

## II.   Respondent's Defenses

Respondent raises several defenses in response to both the Order to Show Cause and Complainant's Motion for Summary Judgment. As discussed below, however, these arguments   for which Respondent fails to cite any supporting legal authority   are without merit or are immaterial to the summary disposition of this case. Moreover, Respondent's filings are devoid of the type of supporting documentation necessary to establish a genuine issue for hearing.

First, Respondent denies that "both allegations [in the Arrest Records] were true 'offenses.'"[55] I reject this argument, as the record shows that the convictions resulting from those Arrest Records were substantiated numerous times. First, the offenses were substantiated on or about December 12, 2017, when the State of New York, Wayne County, in Case No, 16080141, convicted Respondent of the two offenses.[56] The offenses were also substantiated on or about July 20, 2018, in *In re Carrie Leo*, DEC Case No. OHMS 2017-72265, where Respondent admitted to pleading guilty to the two offenses and DEC met its burden to establish

---

sought termination of [Respondent's] Animal Welfare Act license").

[54] *See Bauck*, 68 Agric. Dec. 853, 858 (U.S.D.A. 2009), *appeal dismissed*, No. 10-1138 (8th Cir. Feb. 24, 2010) ("I have repeatedly held summary judgment appropriate in cases involving the termination of an Animal Welfare Act license and disqualification from becoming licensed under the Animal Welfare Act based upon prior criminal convictions. Hearings are futile where, as in the instant proceeding, there is no factual dispute of substance.") (citing *Animals of Mont., Inc.*, 68 Agric. Dec. 92, 104 (U.S.D.A. 2009); *Amarillo Wildlife Refuge, Inc.*, 68 Agric. Dec. 77, 81 (U.S.D.A. 2009); *Vigne*, 67 Agric. Dec. 1060, 1060-61 (U.S.D.A. 2008); *Levinson*, 65 Agric. Dec. 1026, 1028 (U.S.D.A. 2006)).

[55] Answer at 1 ¶ 5.

[56] *See supra* note 44 and accompanying text.

that Respondent violated Condition 10 of her LCPEE by failing to provide proper caging

facilities for opossums[57] and Condition 22 of her LCPEE by failing to submit the LCPEE report

form.[58] The offenses were again substantiated on or about November 7, 2018, in *In re Carrie*

*Leo*, DEC Case No. OHMS 2017-72265, when Commissioner Seggos issued a decision upon the

recommendation of ALJ Sherman and revoked Respondent's New York State LCPEE #623

based in part on the two offenses.[59] Finally, the offenses were substantiated on or about June 2,

2020, in Respondent's Answer to the Order to Show Cause.[60] Even assuming, *arguendo*, that

Respondent's convictions of the Arrest Records were not qualifying offenses, to allow

Respondent to continue holding her AWA license would nonetheless allow her to circumvent the

revocation of LCPEE #623.[61]

      Second, Respondent contends that the Order to Show Cause "is purposely vague."[62] As

Complainant correctly points out,[63] the Rules of Practice simply require that a complaint or

order to show cause "state briefly and clearly the nature of the proceeding, the identification of

the complainant and the respondent, the legal authority and jurisdiction under the proceeding is

instituted, the allegations of fact and provisions of law which constitute a basis for the

proceeding, and the nature of the relief sought."[64] I find that the Order to Show Cause satisfies

---

[57] CX-4 at 12.

[58] CX-4 at 9.

[59] *See supra* note 50 and accompanying text.

[60] Answer at 1 ¶ 5.

[61] *See supra* note 51 and accompanying text.

[62] Answer at 3.

[63] *See* Motion for Summary Judgment at 9.

[64] 7 C.F.R. § 1.135(a).

each of these requirements, and is therefore not impermissibly vague.[65] Therefore, Respondent's contention that summary judgement should be denied because the Order to Show Cause is "purposely vague" is rejected.

Third, Respondent asserts that her New York State LCPEE #623 was improperly revoked for numerous reasons.[66] The issue to be determined in this AWA license-termination proceeding before me is whether Respondent has been found to have violated State or local laws or regulations related to the ownership and welfare of animals. Respondent does not deny that she has been so found but posits that those findings were improper, which is, in essence, a collateral attack on the state proceedings, which is something beyond the scope of this AWA license-termination proceeding, and, therefore, will not be entertained. If Respondent wishes to contest her LCPEE revocation she must turn to the State Courts of New York, as that is the proper forum in which to direct her argument.[67]

Fourth, Respondent states it is her "understanding she pled with Alford Pleas therefore not allowing the citations to be able to be used against her again in another proceeding such as this administrative proceeding."[68] This argument lacks merit. While Respondent offers no actual evidence that an *Alford* plea was made, Complainant's evidence shows that Respondent pleaded guilty to two offenses.[69] An *Alford* plea allows a defendant to plead guilty to and to accept a

---

[65] *See* Order to Show Cause at 1-5.

[66] Answer at 4.

[67] *Bauck*, 68 Agric. Dec. at 863.

[68] Answer at 4; *see also* Respondent's Answer to MSJ at 18.

[69] *See* CX-3.

guilty verdict and conviction as to criminal charges, while maintaining innocence as to them.[70]

Even if Respondent were able to show that her convictions were indeed based on *Alford* pleas, an

*Alford* plea is nonetheless a guilty plea and the conviction a conviction;[71] it would not change

the fact that Respondent was found by the State of New York, Wayne County, to have violated a

law or regulation relating to the transportation, ownership, neglect, or welfare of animals.[72]

Further, if a *nolo contendre* plea would have been adequate grounds to terminate Respondent's

license,[73] a guilty plea certainly suffices. And as Complainant correctly states: "In the end it

really doesn't matter because Respondent's state LCPEE license has been revoked and to allow

her to maintain AWA license 21-C-0435 would allow the Respondent to operate in violation or

circumvention of State or local law."[74]

Fifth, Respondent contends that Complainant did "not sufficiently establish[] the element

of willfulness required to revoke Respondent's license."[75] In its Answer to Complainant's

Motion for Summary Judgment, Respondent states:

> [T]he willfulness factor was discussed in the *Answer* of the Respondent to the
> Complainant's *Order to Show Cause* because it can be considered one of the
> factors which comprise the egregiousness actions which the government finds
> offensive. Willfulness indicates good-faith v. bad-faith and an egregious error or
> offense lacks any good faith effort.

---

[70] *North Carolina v. Alford*, 400 U.S. 25, 37 (1970); *see United States v. Taylor*, 659 F.3d 339, 347 (4th Cir. 2011); *United States v. Mancinas-Flores*, 588 F.3d 677, 681 (9th Cir. 2009).

[71] *Abimbola v. Ashcroft*, 378 F.3d 173, 181 (2d Cir. 2004); *see also United States v. Ramirez-Gonzalez*, 755 F.3d 1267, 1273 (11th Cir. 2014); *United States v. King*, 673 F.3d 274, 281 (4th Cir. 2012).

[72] *See* CX-3; *King*, 673 F.3d at 282-83 ("A court's acceptance of an *Alford* plea, like an acceptance of a guilty plea, indisputably qualifies as an 'adjudication.'").

[73] 9 C.F.R. §§ 2.11(a)(4), 2.12.

[74] Complainant's Response to Respondent's Answer to MSJ at 5.

[75] Answer at 5; *see* Respondent's Answer to MSJ at 19.

Answer to MSJ at 19. The applicable Regulations do not require a showing of willfulness.[76]

Section 1.133(b)(3) of the Rules of Practice, however, states:

> As provided in 5 U.S.C. 558, in any case, except one of willfulness or one in which public health, interest, or safety otherwise requires, prior to the institution of a formal proceeding which may result in the withdrawal, suspension, or revocation of a "license" as that term is defined in 5 U.S.C. 551(8), the Administrator, in an effort to effect an amicable or informal settlement of the matter, shall give written notice to the person involved of the facts or conduct concerned and shall afford such person an opportunity, with a reasonable time fixed by the Administrator, to demonstrate or achieve compliance with the applicable requirements of the statute, or the regulation, standard, instruction or order promulgated thereunder.

7 C.F.R. § 1.133(b)(3). Although Complainant does use the term "willful" in its Order to Show Cause when alleging violations of 7 U.S.C. § 2146(a) and 9 C.F.R. § 2.126(a),[77] Complainant's Motion for Summary Judgment is not based upon those allegations; they are immaterial to the outcome of this case.[78] Therefore, willfulness is not an element that Complainant need establish, and neither prior written notice nor an opportunity to demonstrate compliance were required. Nonetheless, Respondent's criminal convictions both evidence willfulness and implicate the ownership and well-being of animals.[79] Respondent's willfulness argument is therefore rejected.

---

[76] *See* 9 C.F.R. §§ 2.11 and 2.12.

[77] *See* Order to Show Cause at 2 ¶ 6, 4 ¶ 11.

[78] *See supra* note 36 and accompanying text.

[79] *See Bauck*, 68 Agric. Dec. at 861 (U.S.D.A. 2009) ("In a number of proceedings, I have terminated an Animal Welfare Act license based upon a licensee's criminal conviction without any written notice or opportunity to demonstrate or achieve compliance prior to the institution of the proceeding. The United States Court of Appeals for the District of Columbia Circuit has also held that criminal convictions fall within the willfulness exception of 5 U.S.C. § 558(c) and, thus, has upheld license terminations based on criminal convictions without any prior written notice and opportunity to demonstrate or achieve compliance.") (citing *Kleiman & Hochberg, Inc. v. U.S. Dep't of Agric.*, 497 F.3d 681, 691 (D.C. Cir. 2007), *cert. denied sub nom. Hirsch v. Dep't of Agric.*, 128 S. Ct. 1748 (2008); *Coosemans Specialties, Inc. v. U.S. Dep't of Agric.*, 482

The remainder of Respondent's "defenses" contend that the Secretary has treated Respondent unfairly and differently than other AWA licensees. Respondent contends the instant proceeding is a "shadow trial or judgment" wherein USDA "staff is able to accuse and convict Respondent of anything they desire and manipulate the law and people in order to achieve such ends."[80] Respondent provides no evidence that would support these contentions. Here the Respondent has indisputably been found to have violated State or local laws or regulations related to the ownership and welfare of animals. The AWA and regulations provide that in such circumstances Respondent is thereby in violation of the AWA. Nothing herein demonstrates any untoward actions by USDA "staff" and certainly no ability by USDA staff to convict Respondent of anything USDA staff might desire or to in any respect manipulate the law or people. The Secretary has the authority to investigate or inspect "as he deems necessary to determine whether any . . . exhibitor . . . has violated or is violating any provision of [the AWA] or any regulations or standard issued thereunder."[81] Through this authority, delegated to him through 7 C.F.R. § 2.80(6), the Administrator of APHIS has determined that Respondent is in violation of the AWA and her continued possession of an AWA license would be contrary to the purposes of the Act. As found herein, I agree. The Administrator's determination as to other AWA licensees is not relevant to these proceedings.[82]

---

F.3d 560, 567-78 (D.C. Cir. 2007), *cert. denied*, 128 S. Ct. 628 (2007)).

[80] Respondent's Answer to MSJ at 6.

[81] 7 U.S.C. § 2146.

[82] *See Terranova*, 78 Agric. Dec. 248, 342 (U.S.D.A. 2019) ("[N]othing in the Act, Regulations, or case law requires that the violations in one case must parallel those in another to justify license revocation."); *see also Koretoff v. Vilsack*, 614 F.3d 532, 543 n.3 (D.C. Cir. 2010) (Henderson, J., dissenting in part) (stating that "case-by-case determinations are the hallmark of administrative and judicial adjudications").

### III.    Respondent's Counter-Motion to Dismiss Order to Show Cause

Respondent submits that "Complainant's Order to Show Cause Should be Dismissed in its entirety upon summary judgment in favor of the Respondent."[83] Respondent's request is a motion to dismiss on the pleadings, which is prohibited by section 1.143(b)(1) of the Rules of Practice (7 C.F.R. § 1.143(b)(1)).[84] Even if the Rules allowed for such a motion, dismissal of Complainant's Order to Show Cause would be inappropriate under the circumstances. Other than a few general statements regarding her opinion of APHIS's actions, Respondent has failed to offer any support for her motion.[85] As found herein, APHIS has demonstrated that Respondent is in violation of the AWA. Therefore, Respondent's Cross-Motion to Dismiss Complainant's Order to Show Cause must be DENIED.

### IV.    Respondent's Counter-Motion for Summary Judgment

Respondent contends: "If summary judgment is granted at all, it should be granted in favor of the Respondent."[86] However, Respondent offers no evidence in support thereof and has failed to meet her burden as the moving party.[87] Furthermore, summary judgment is proper in cases where there is "no genuine issue as to any material fact."[88] That Respondent spends the majority of her Answer to Complainant's Motion for Summary Judgment arguing "there *are*

---

[83] Respondent's Answer to MSJ at 21.

[84] *See* 7 C.F.R. § 1.143(b)(1) ("Any motion will be entertained other than a motion to dismiss on the pleading."); *Lindsay Foods, Inc.*, 56 Agric. Dec. 1643, 1647-48, 1650-51 (U.S.D.A. 1997) (Remand Order); *see also* 7 C.F.R. § 1.132 ("*Complaint* means the formal complaint, *order to show cause*, or other document by virtue of which a proceeding is instituted.") (emphasis added).

[85] *See* Respondent's Answer to MSJ at 21.

[86] *Id.*

[87] *See Knaust*, 73 Agric. Dec. at 98-99 (footnotes omitted).

[88] *Anderson*, 477 U.S. at 255.

issues of material fact" in this case completely undermines her argument.[89]   Accordingly,

Respondent's Counter-Motion for Summary Judgment must be DENIED.

## Findings of Fact

n.   Respondent Carrie Leo is an individual who does business as Caring for Cottontails Wildlife
Rescue & Rehabilitation, Inc., whose mailing address is in New York. (Order to Show Cause
at 1; Answer at 1).

2.   At all times material herein, Respondent operated as an exhibitor, as that term is defined in
the Act and Regulations, and held AWA license 21-C-0435. (Order to Show Cause at 1;
Answer at 1).

3.   On or about May 10, 2016, the State of New York cited Respondent in Arrest Record
BF0195322 for the offense of failing to provide proper caging facilities for opossums in
violation of License to Collect or Possess    Education/Exhibition # 623 ("LCPEE #623")
Condition 10 and in Arrest Record BF0195333 for the offense of failing to submit an
accurate and complete exhibition report in violation of LCPEE #623 Condition 22. (CX-1;
CX-2).

4.   The State of New York initiated a proceeding before the Department of Environmental
Conservation ("DEC") to revoke Respondent's New York State License to Collect or Possess
– Education/Exhibition ("LCPEE # 623"). The bases, in part, for the State of New York's
revocation proceeding were the offenses cited in Arrest Records BF0195322 and
BF0195333. (CX-2; CX-4).

5.   On or about December 12, 2017, the State of New York, Wayne County, in Case No.

---

[89]   Respondent's Answer to MSJ at 6 (emphasis added).

22

1608141, convicted Respondent of the offenses cited in Arrest Records BF0195322 and

BF019533. (CX-2; CX-3).

6. On or about July 20, 2018, DEC Administrative Law Judge Richard A. Sherman, in *In re*

*Carrie Leo*, DEC Case No. OHMS 2017-72265, after a hearing, concluded and

recommended the following:

> As detailed above, I conclude that Department staff has met its burden to establish
> that, as alleged in the notice of intent, respondent Carrie M. Leo (i) possessed
> wildlife without a proper license from the Department; (ii) failed to submit timely
> reports to the Department; (iii) failed to comply with the terms and conditions of
> LCPEE #623; and (iv) failed to comply with the terms of a federal license directly
> related to the activity authorized by LCPEE #623.
>
> Accordingly, I recommend that the Commissioner issue an order revoking
> LCPEE #623. I further recommend that the Commissioner direct Respondent to
> transfer or otherwise dispose of all wildlife held at the facility without proper
> authorization from the Department within 60 days of service of the
> Commissioner's order.

(CX-4).

7. On or about November 7, 2018, DEC Commissioner Basil Seggos, in *In re Carrie Leo*, DEC

Case No. OHMS 2017-72265, issued a decision upon the recommendation of Judge Sherman

and revoked Respondent's New York State LCPEE #623. (CX-5). Commissioner Basil found

that Respondent committed the following DEC violations:

> A. Failed to comply with License Conditions 6 (Addition or Replacement of
> Animals Without Written Authorization Prohibited), 10 (Providing Care for
> Animal[s]) and 22 (Education/Exhibition Reporting Requirement) of a
> License to Collect or Possess Certain Species of Wildlife for
> Education/Exhibition Purposes (LCPEE) #623;
>
> B. Failed to comply with the terms of a federal license directly related to the
> activity authorized by LCPEE #623[;]
>
> C. Possessed wildlife without a proper license from the Department of
> Environmental Conservation; and

    D.  Failed to keep accurate records and submit timely reports to the Department.
(CX-5).

## Conclusions

1. The Secretary of Agriculture has jurisdiction in this matter.

2. The material facts involved in this matter are not in dispute, and the entry of summary judgment in Complainant's favor is appropriate.

3. Respondent has been found to have violated a State or local law or regulation pertaining to the transportation, ownership, neglect, or welfare of animals, as provided in 9 C.F.R. § 2.11(a)(6).

4. Respondent's convictions of the offenses set forth in Arrest Records BF0195322 and BF0195333 involve the ownership and welfare of animals.

5. Respondent's convictions of the offenses set forth in Arrest Records BF0195322 and BF0195333 demonstrate that Respondent is unfit to hold Animal Welfare Act license 21-C-0435.

6. The Administrator of APHIS has shown good cause to grant the relief requested in the "Order to Show Cause Why Animal Welfare Act License 21-C-0435 Should Not Be Terminated" filed against Respondent on April 21, 2020.

7. To allow Respondent to maintain her AWA license would enable her to operate in circumvention of a State or local law in violation of 9 C.F.R. § 2.11(a)(5).

8. The termination of Respondent's AWA license pursuant to 9 C.F.R. §§ 2.11(a)(5), 2.11(a)(6), and 2.12 is appropriate, promotes the remedial purposes of the Animal Welfare Act, and is supported by the evidence of record.

## ORDER

1. Complainant's Motion for Summary Judgment is GRANTED.

2. Respondent's Cross-Motion to Dismiss Complainant's Order to Show Cause is DENIED.

3. Respondent's Cross-Motion for Summary Judgment is DENIED.

4. Respondent's AWA license, 21-C-0435, is hereby TERMINATED in accordance with 9

   C.F.R. § 2.12.

   This Decision and Order shall be final and effective without further proceedings thirty-

five (35) days after service upon Respondent unless an appeal to the Judicial Officer is filed with

the Hearing Clerk within thirty (30) days after service, as provided in section 1.145 of the Rules

of Practice (7 C.F.R. § 1.145).

   Copies of this Decision and Order shall be served upon the parties and counsel by the

Hearing Clerk.

                            Done at Washington, DC,
                            this 8th day of September 2020

                            _____
                            Channing D. Strother
                            Chief Administrative Law Judge

Hearing Clerk's Office
U.S. Department of Agriculture
South Building, Room 1031
1400 Independence Avenue, SW
Washington, D.C. 20250-9203
Tel:  202-720-4443
Fax: 844-325-6940
SM.OHA.HearingClerks@USDA.GOV

Carrie M. Leo
3399 Walworth Road
Walworth, NY 14568

FIRST CLASS



7019 1640 0000 3352 9185

CERTIFIED MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

20-cv-07039

Judge Frank P. Geraci , Jr.
U.S. District Court of the Western District of NY
2 Niagara Square
Buffalo, NY 14202-3350


USDC - WDNY
APR 29 2021
BUFFALO


1000

14202



U.S. POSTAGE PAID
FCM LG ENV
WALWORTH, NY
14568
APR 27, 21
AMOUNT

$6.20

R2305M144083-04