*Carrie M. Leo*
3199 Walworth Road
Walworth, NY 14568
(315) 538-8316
carrieleo15@gmail.com

June 15, 2021

VIA USPS on July 19, 2021
VIA EMAIL CD-ECFIntake_nywd@nywd.uscourts.gov on July 15, 2021
U.S. District Court for the Western District of New York
2120 Kenneth B. Keating Federal Building.
100 State Street
Rochester, NY 14614
ph: (585) 613-4000
fax: (585) 613-4035
CD-ECFIntake_nywd@nywd.uscourts.gov

RE:     *Leo v NYSDEC et al.* - Case #6:2020-cv-07039-FPG
        *Plaintiff's Response to Defendant's Motion to Dismiss*

Dear Court Staff,

Please find enclosed the hard copy of the *Plaintiff's Response to Defendant's Motion to Dismiss.* Soon to be sent will be *Plaintiff's Motion for Leave to Amend Complaint.*

Please feel free to contact me if there are any questions or concerns.

Thank you for your assistance in this matter.

                                                Sincerely,

                                                *[signature]*

                                                Carrie M. Leo, *Plaintiff*

enclosure

cc:     **VIA USPS**
        Brittany M. Haner, Esq.
        Reg. #5185756
        New York State Attorney General's Office, Environmental Protection Bureau
        The Capitol
        Albany, NY 12224
        Ph: (518) 776-2389
        Fax: (518) 650-9363
        brittany.haner@ag.ny.gov

        **VIA USPS**
        Michele Romance Crain
        Reg. #2174985
        New York State Attorney General's Office, Department of Law
        144 Exchange Blvd., Ste 200
        Rochester, NY 14614-2108
        ph: (585) 327-3223
        fax: (585) 238-6339
        Michele.Crain@ag.ny.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

Carrie M. Leo,
Plaintiff,

‑ v ‑

New York State Department of Environmental Conservation & the United States Department of Agriculture and the following INDIVIDUALS, in their individual and official capacities: BASIL SEGGOS ‑ Commissioner, WILLIAM POWELL ‑ Lieutenant/Captain, DEC Division of Law Enforcement; JOSEPH THERRIEN ‑ Director, DEC Special Licenses Unit, ANDREA D'AMBROSIO ‑ USDA Animal Care Inspector, and John/Jane Does #1‑15,

Defendants.

Civil Action No.   6:2020‑cv‑07039

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

I, the Plaintiff, Carrie M. Leo, representing herself in the above entitled and enumerated matter respectfully submit the following response to the Defendant's *Motion to Dismiss for Failure to State a Claim.*

Upon reading the Defendant's Motion to Dismiss, the plaintiff thought it to be best to acknowledge the motion ver batim, line‑by‑line, in order to account for any gaps in the string of events which have led to the filing of this case, as well as correct any inaccuracies from the perspective of the plaintiff.

The most effective and accurate way to respond to Defendant's motion is to refurbish the information put forth in the original complaint which was completed using a pre‑instituted form template from the court and write a traditional complaint standard in lawsuits with listed causes of action.  Plaintiff will provide such for the court to authorize.

## INTRODUCTION

This response in opposition to defendants' motion to dismiss plaintiff Carrie Leo's *Verified Complaint* for failure to state a claim upon which relief can be granted made pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 12 (b)(1) and FRCP 12(b)(6).  The factual allegations put forth by the plaintiff must be considered true.  See *Conley v. Gibson*, 355 U.S. 41 (1957); *Bass v. Grottoli*, 1995 WL 565979, *3 (S.D.N.Y. 1995); *Goldberger v. Baker*, 442 F.Supp. 659, 662 (S.D.N.Y. 1977).

## ARGUMENT

### I. Standard of Review

Defendants request dismissal of plaintiff's *Verified Complaint* pursuant to F.R.C.P. Rules 12 (b)(1) and FRCP 12(b)(6) for failure to state a claim upon which relief can be granted.  To be granted a dismissal, Defendant must demonstrate that the plaintiff is not entitled to relief under any facts which could be proved regardless how likely it may seem plaintiff will be unable to prove her case. *See Woolford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 526 (2d Cir. 2000); *Carroll v. Morrison Hotel Corp.*, 149 F.2d 404 (7th Cir. 1945).

The Court must view the facts put forth by the plaintiff in the most favorable light to the plaintiff and assuming the truth of Plaintiff's statements and facts put forth while also drawing all reasonable inferences against the defendants. *Bolt Elec. Inc. v. The City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Bass*, 1995 WL 565979 at *3; *MacNamara v. County Council of Sussex County*, 738 F.Supp. 134, 137 (D. Del. 1990).

### PRELIMINARY STATEMENT

Plaintiff, Carrie M. Leo, seeks to reverse the underserved and excessive consequences of the New York State Department of Environmental Conservation's (hereinafter referred to as "NYSDEC", "DEC" or "Department") program of selective enforcement, especially that aimed at

the plaintiff since November 2015 to the present.  If any claims or actions are time-barred but are still mentioned in this or any other filing authored by the plaintiff, it is due to the necessity of including such details in order to round out the set of details within which they have been set. Since both the NYSDEC and the United States Department of Agriculture (hereinafter referred to as "USDA") have used their postings of unfair hearing results and the termination of the plaintiff's licensure through both agencies, for no good reason, for their gain in ruining the reputation of the plaintiff, the plaintiff does seek the removal of the Commissioner's decision and that of the Administrative Law Judge.  Both decisions are not based on fact and relied on the antics of kangaroo courts which refused to take much, if any, statements originating from the plaintiff, into consideration.

In addition, since the plaintiff has not been able to afford legal counsel, both Departments have unethically violated countless rules, procedures, and ethical standards in the prosecution of the plaintiff.  IN fact, even pending cases which do not involve either department have been influenced by either staff members from either or both agencies, or associates of theirs who are coordinating their actions with an overall agenda to ensure the plaintiff's failure in each case. However, the impact of the misconduct perpetrated by both departments will be fodder for the Amended Complaint for which the plaintiff will request leave of the court shortly after this response to the defendant's motion to dismiss has been filed.  Likewise, there will be more details concerning the Commissioner's decision and ALJ Sherman's recommendation further down in the body of this document.

The uneven enforcement of the regulations governing the department and its licensees has been, at best, manipulated in order to give advantage to those individuals who do "favors" for the department and those of us who are distrusting of some government players and who would rather just be left alone so long as we are treated fairly.  Riling up neighbors and other licensees by

gossiping about the plaintiff because an officer has a personal issue with her, then unnecessarily seizing a pack of coyotes which could have continued their rehabilitation in another facility then going so far as to send secret statements around with false accusations including announcing that the plaintiff no longer owns the animals she has had title over for years, is so far from the plaintiff being "immunized by the consequences" of charges which were erroneously delved out to begin with, that such statements made by the defense counsel in the beginning of the Preliminary Statement cannot be even considered to be of this world.

The plaintiff formerly held three DEC-issued licenses for the possession, rehabilitation and transport of animals utilized for regulated purposes, such as exhibition. She acquired her License for Wildlife Rehabilitation #1646 in January 2012, License to Collect & Possess #623 in or around February 2013, and the Nuisance Wildlife Control Operator License #2255 in 2013. The Department took regulatory enforcement actions in order lash back out at the plaintiff since she had challenged then-Lieutenant William Powell regarding his conduct during a conversation between the two parties. During said conversation, Powell threatened the plaintiff that she would lose her licenses. Plaintiff has reason to believe that as soon as within an hour of the end of the conversation between he and the plaintiff, Lt. Powell started acting on the threat against the plaintiff then culminating in the unnecessary seizure of a pack of healthy coyotes in May 2016 and starting a horrendous smear campaign against the plaintiff with all sorts of accusations and inaccuracies Powell and other officers had started around "the grapevine", so to speak. It was then when the plaintiff started experiencing harrassment and shaming both on and off of the internet.

The department held an administrative hearing on March 13, 2018 which they weren't originally going to do until I acquired representation from the public defender and still voiced my intention of having a trial to determine my guilt regarding the violations in the Town Court of Macedon at the time. However, the administrative hearing was an embarrassment of riches. In the

end the plaintiff was forced to answer to the alleged violations a second time, invoking the doctrine

of res judicata, which had been addressed by the Town Court by that time and of course, found

guilty with no evidence to support such accusations.   The Commissioner's Report stated I had

possessed every coyote I had possessed for rehabilitation purposes as "illegal", yet the charge had

been resolved by the town previously in the crust of a plea agreement the plaintiff made with the

town.  During the process however, Powell and Officer Kevin Thomas turned the local authorities,

the town court and other members of the community against me with gossip and false accusations.

Furthermore, they stated I was to get rid of all of the animals I had had and both the Departments

knew about due to disclosure by the plaintiff.   From the beginning, I was to be excluded from

everything, including, but not limited to, any meetings between the property owners and town

officials regarding my business and a tour of the property Powell wanted to plan with one of the

town's zoning officials although such a tour is not required of other licensees.

  The refusal to honor the Freedom of Information Act is an issue the plaintiff is requesting

the court decide.   Blocking public access of documents simply because litigation is pending is

unlawful in many circumstances and gives the Department the upper hand in any litigation since

the staff like to keep secrets and avoid transparency whenever they are able to do so.  One can rest

assured that any documents or information needed by any party opposing the plaintiff in any case,

whether either Department is involved or not, will be promptly handed over.  The DEC and USDA

just can't seem to operate within the confines of the law and continually act as though they are

above it.  These forgoing events and conduct are only part of the reason the plaintiff, as Ms. Haner

so aptly communicates in her preliminary statement, ". . . *seems to suggest that the Department's*

*actions amount to adverse interference in her pending, separate litigation with Thomas,* . . . ".

However, more details incorporating a more thorough explanation of events regarding other

shenanigans perpetrated by both Departments will be given later and/or in the Amended

Complaint.

Plaintiff's causes of action regarding various civil rights torts will also be mentioned herein and also more thoroughly in appropriate format in the Amended Complaint. Plaintiff rejects the notion put forth by the Department that such claims are time-barred.

## PLAINTIFF'S RESPONSE TO FACTS IN DEFENDANT'S MOTION TO DISMISS

There are only a few corrections the plaintiff would like to make regarding Ms. Haner's collection and presentation of the facts in her motion papers.

The plaintiff has a wildlife and exotic animal center located in Walworth, New York. It was started in January 2012 when she received her *License for the Rehabilitation of Wildlife* #1646 by the DEC. The license expired on December 31, 2021. Plaintiff's *License to Collect & Possess* #623 was first acquired by the plaintiff from the Department in or around February 2013 and although the last issued copy stated an expiration date of July 7, 2016, the privileges of the license continued on until the Commissioner issued his decision on November 7, 2018. Hence, the Commissioner stated in his letter to the plaintiff that he felt it was appropriate at that time to rehome any wild animals which Plaintiff used for a regulated purpose.

Pursuant to the NY State APA § 401.2, the Petitioner's LCP was still valid throughout the course of the department's prosecution of the Petitioner until the day the Commissioner issued his final decision, November 7, 2018, three years after the department's officers first visited the Petitioner's facility. Such was verified by NYSDEC Office of General Counsel (hereinafter "OGC") Assistant Counsel, Mark D. Sanza, in an email thread with the plaintiff in March 2018. It is thus misleading for Ms. Haner, the Commissioner or anyone else who is trying to give the impression that Plaintiff's LCP expired as of July 7, 2016, when it did not. Even Ms. Haner stated the license was never meant to be defunct since the enforcement hearing.

The plaintiff's license never expired until November 7, 2018, as summed up by Mr. Sanza in his email to the plaintiff ". . . If you get more animals [for regulated purposes], just make sure you send a list of such to the SLU."

However, the DEC began to interfere with the plaintiff's animal ownership when, on November 7, 2027, Joseph Therrien of the Special Licenses Unit authored a "secret statement" which the plaintiff has reason to believe was making false accusations against the plaintiff and stated the plaintiff's animals, in the possession of Thomas at the time the statement was written, were his and not mine. Yet not only is it unethical for the staff of any public service agency to assist a party in pending litigation, but to issue secret anything is simply ludicrous. The plaintiff continues to be denied a copy of the letter to this day and has likely been submitted to the judges and defense attorneys throughout Texas, Oklahoma, and New York in order to ensure the plaintiff's failure in the cases.

James Farquhar and Paul Stringer are also DEC staff members who had chosen to interfere in the plaintiff's agreement with Thomas as well as misrepresent the licensing law and status of the plaintiff's licensing at the time. Both held the same mantra with Thomas and/or his attorney, Michael F. Young of Lowville, NY, falsely concluding the plaintiff didn't have "the authority" to possess her animals. These individuals allegedly told Thomas he could not return the animals to the plaintiff because she didn't have the proper licensing to possess them (as if mere possession of privately owned animals had to be licensed) and Thomas could be punished by the department if he returned the animals to the plaintiff. Yet the department allowed Thomas to violate the provision in all of his licenses which states a licensee cannot acquire animals from an illegal source.[1] The plaintiff would have been an illegal source if what Therrien, Stringer and Farquhar had said was

---

[1] note licensing provision and refer to exhibit with one of tyler's licensing in them.

correct regarding the plaintiff not having the authority to repossess her animals.

From the plaintiff's perspective, this appears to be more of an unlawful seizure of plaintiff's animals for retaliation by the department who simply took advantage of the fact that her animals were not in her possession so therefore they could spread the rumor she wasn't licensed for them. The Department staff has continued to keep the plaintiff in the dark excluding her from acquiring information and receiving disclosure when the department becomes involved in a pending case filed by the plaintiff.

In April 2017, Plaintiff boarded her animals with a zoo in Wynnewood, Oklahoma as she was about to start the process of moving her facility to that area after she was to undergo outpatient surgery which would require a 3–6-month post-operative recovery period. . The three animals which would not fit in the carrier's vehicle she boarded with Tyler Thomas, a colleague and some Plaintiff considered a friend at the time. The carrier transported Plaintiff's animals on or around April 20, 2017, and Thomas transported a fox, fisher cat, and badger from Plaintiff's facility in Walworth, NY to his facility at the time in Alexandria Bay, NY.

According to Thomas[2] and unbeknownst to the plaintiff at the time, Thomas had encouragement of Andrea D'Ambrosio, Animal Care Inspector with the USDA's Animal and Plant Inspection Service (hereinafter "APHIS") to take as many animals as he could with the intent of never returning them - a violation of the temporary boarding agreement the plaintiff had with Thomas. It is now Plaintiff's understanding that the NYSDEC did not become involved (covertly of course) until after Thomas moved down to Texas.

---

[2] Exhibit with Thomas' Original Answer from Leo v Thomas.

Thomas violated numerous regulations and laws by transporting both his and the plaintiff's animals from New York State to Texas,. The violations consist of failure to obtain health certificates for each animal thirty days prior to transport[3], tort of conversion by transferring the plaintiff's animals out of the state without her approval since she was the owner (and still is), unlawful export without clearance from the state of New York and the USDA, unlawful import into Texas State without approval from the Texas Parks & Wildlife Service, failure to license the indigenous species, like the plaintiff's badger, furbearers (like all three of the animals in his possession at the time),



**Figure 1:** A sample health certificate is seen above for an animal, at the time this certificate was filled out by the veterinarian, which had yet to be transported to his destination.

he possessed as well as the endangered species, and the list continues onward.

After attempting to work with Thomas in the return of the animals to no avail, Plaintiff then filed suit in the New York State Supreme Court of Jefferson County and was eventually granted a preliminary injunction for the return of all three animals. However, Thomas created false testimony stating the animals were dead or stolen and thus non-returnable to the plaintiff.

However, the plaintiff has evidence this is not so. On Thomas' November renewal

---

[3] cite AWA

application for one of his animal collection licenses for New York State, he stated the fisher was "on loan" to his colleague in Texas, Courtney Frenchak. Likewise, Plaintiff has at least one picture posted by Thomas after his claim that the badger was deceased on social media in which the badger was featured with a date associated with the picture later than his statement that the animal was deceased. Also, Plaintiff has an admission from another colleague of Thomas' in Mineola, Texas who confirmed that Thomas was boarding the animal there in September 2018, although Thomas claimed the animal died in mid-July 2018. Thomas also admitted to the plaintiff directly in an August 2017 phone conversation that all three animals were alive and well including the fisher. Yet when a Madisonville, TX police officer contacted him on behalf of the plaintiff about his possibility of returning the animals, he then made up the story about the fisher dying right after he had imported her into Texas,  Clearly, these statements are not true.

Whether or not Thomas has the support of the USDA and NYSDEC in secreting away the plaintiff's animals, it is still illegal as they belong in the possession of the plaintiff. Other licensees similarly situated as the plaintiff and who had licenses revoked by the NYSDEC were able to keep their animals until the very last day before the Commissioner made his or her decision.(See *In the Matter of Cindy Bardin*, and *In the Matter of Jeff Ash)*.    However, due to the USDA's and DEC's involvement, as well as that of Thomas and his attorney, Mr. Young, the plaintiff was denied access to her animals so she could have set up her facility outside of New York in which it was still legal to possess them although technically it was legal in New York State at the time as well, although the NYSDEC made up new laws at times denying such. More details pertaining to this set of facts will be divulged in the Amended Complaint.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S ARGUMENT

### Statutes of Limitations

The plaintiff has been excluded as much as possible by the Defendants possibly due to staff knowing if they continue to hide everything they are doing which affects the plaintiff's business, reputation, inc., she will not know from what event or date from which to accrue any claims. Furthermore, the staff's tendency to gaslight has been far more successful when done in secret since the plaintiff has not been able to exercise her right to face her accusers and effectively refute their allegations.  The staff has been replacing reality and the truth with their own conjurings and falsehoods.

1. **Claim #1:  Bivens**

   Section 1983 provides an individual the right to sue state government employees and others acting "*under color of state law*" for civil rights violations.  It is a legal claim alleging a civil rights violation based on **42 U.S.C. § 1983**. These actions may be brought in state or federal court.  As of the Amended Complaint, the plaintiff will seek monetary damages and injunctive relief.

   According to the defense, a valid 1983 claim must allege, privilege or immunity secured by the Constitution or laws of the United States and

   a. deprivation of a right;
   b. the challenged conduct was attributable to a person acting under color of law.

**Deprivation of a right.**

1. **Due process.**  Due process is a guaranteed right ensuring a person's right to face her accusers and hear first-hand the accusations against her.  Many times a process is invoked such as a hearing or trial in order for an impartial decision-maker to determine the guilt of the defendant and if determined to be guilty, the degree of culpability and punishment needed for reasons of restitution and/or avoidance of recidivism,

respectfully.

However, such a process, which is deep-rooted in American legal culture since the inception of the Magna Carta, fails to dissuade the NYSDEC and USDA and their helpers, such as Tyler Thomas, from acting "under the color of law" in order to cause as many injuries to the plaintiff as possible.

The main instrument used in order to circumvent due process is the statement written by Joe Therrien for Tyler Thomas in early November 2017 either the same day or the day after the latter was served with process for Leo v Thomas recognized by Index number 2017-1668. The plaintiff did not know about this statement until well into 2018 and understood how it has been used against the plaintiff on or around December 6, 2020.

Defense counsel in each of the plaintiff's pending cases have been given the statement and it has even reached the judges. As a result,. there is commonality in statements made by both defense counsel and judges which indicate the content of the statement. Each person who has been subject to Thomas', his attorney, Mike Young's, NYSDEC's and USDA's secrets regarding the plaintiff, has treated the plaintiff with unmistaken hostility sometimes erupting into outright anger. One judge, in particular, flipped completely from being down-to-earth, fair and professional to excluding the plaintiff from remote hearings, lying about the status of the plaintiff's property (not directly related to the case at bar), etc. virtually overnight. Clearly, someone from outside of the case influenced her. In another case, a judge brought up totally irrelevant items for discussion out of the blue such as, but not limited to, the plaintiff terminating her USDA Exhibitor's license and even made a statement on the record that the plaintiff does not own the animal at the focus of that suit when she did. In fact, the staff and

their helpers have operated so efficiently and effectively, the plaintiff most likely will not be treated fairly in any court. Once she files a case, one of the agencies is on it and starts circulating statements and rumors, all of which are untrue, in order to prejudice the plaintiff. Plaintiff also has reason to believe there even may be regular, secret, meetings with defense counsel, possibly judges and staff from one or both agencies (NYSDEC and USDA).

1.      First, it likely states Plaintiff was neglecting her animals which, in turn, caused a confiscation of all of her privately-owned animals by the NYSDEC and/or USDA. This couldn't be further from the truth and if it was, due process by way of a hearing or trial is required in order to give the plaintiff an opportunity to face her accusers and examine any evidence supporting such accusations and an opportunity to be heard in order to refute such evidence, if she so desires.

        The NYSDEC plays in the court of public opinion which consists of the most gullible "decision-makers" to date, not to mention public shaming, bullying and "band-wagoning" is common and can ruin a person's reputation and thus means of earning a living. Such instigation violates another guaranteed freedom; that is, freedom from harrassment.

2.      Second, the statement likely includes an accusation alleging the plaintiff did not have adequate licensing for her animals because her *License to Collect & Possess* #623 "expired" on July 7, 2016. As mentioned earlier, Plaintiff's license never expired and, in fact, was kept valid and active until November 7, 2018 - long after the plaintiff was asking for her animals back from Thomas. There was no communication, by writing, phone, electronic mail, sock puppets, etc. by the staff to the plaintiff that she could not be in possession of any of her animals since she

is not considered to have a license.  Given Lt. Powell's obsession with targeting the plaintiff, as seen by his use of excessive citations with allegations either of things the plaintiff did not do or things which were not illegal when other licensees use them in their practices.   Should Plaintiff had been in unlawful possession of her animals between the date of expiration of her LCP #623 on July 7, 2016, to the date of the Commissioner's final determination for revocation issued on November 7, 2018, Powell and other enforcement staff would have been at the plaintiff's facility "with bells on" to seize the plaintiff's animals, especially since at least two helpers of the Department wanted certain species from Plaintiff's menagerie.

3.  Third, the plaintiff's animals were given to other individuals and/or forfeited to the USDA.  Again, this is not true.  There is no essential proof of forfeiture by a signed document which the staff did have when they seized a pack of six coyotes in rehabilitation which the Department felt the plaintiff had for too long, although the timeframe was standard throughout the wildlife rehabilitation facilities throughout the northeast when rehabilitation Eastern Coyotes therefore being used by other facilities without punishment from any department.   This situation also invokes Plaintiff's guaranteed right protecting her from the deprivation of her private property without just compensation.

**The challenged conduct was attributable to a person acting under color of law.**

In *Leo v Thomas*, filed on or around August 22, 2017 and served upon the defendant, Tyler Thomas, on November 7, 2017, the defense attorney admitted to speaking with James Farquhar.[4] After such, Attorney Young consistently spouted off misrepresentations of the licensing laws

---

[4] Exhibit with letter in which Young admits to speaking with Farquhar.

which only the NYSDEC employs against people, like the plaintiff, over which they want greater control.  Likewise, Thomas admitted in a sworn statement filed in the same case how both Paul Stringer and Joe Therrien misrepresented the licensing status of Plaintiff and coaxed Thomas not to return the animals since it would allegedly be illegal, although if that was the case, it would be illegal for Thomas to acquire the animals from the plaintiff in the first place for which he was never cited or experienced any enforcement action.

### Statute of Limitations

The plaintiff did not know about the statement until quite a bit of time had passed from the day it was written, when she acquired it as a responsive record for one of her Freedom of Information Requests.   However, even if the plaintiff had known of the statement on the day it was written, it didn't seem to cause damage to the plaintiff until she heard from members of the public who, although not directly involved in the case, Leo v Thomas, were speaking with Thomas and insinuating they had seen pictures of plaintiff's facility and "the deaths" caused by the plaintiff. About a year later, the plaintiff realized Thomas was using photos, newspaper articles, and other mediums of information to pass off another  facility at least two hours away from the plaintiff's facility, as hers.  The person who owned the facility was charged with animal cruelty and it was she who caused the deaths of scores of animals, yet Thomas juxtaposed the entire event on the plaintiff then used such as an explanation as to why she allegedly had her animals confiscated. The plaintiff did not cause the deaths at the facility two hours away from hers, nor did she have any of her animals confiscated.  All of her animals were kept under her ownership since the government had no evidence of neglect or cruelty perpetrated by the plaintiff; simply because there was no neglect or cruelty which was occurring.  Plaintiff had three different veterinarians view her facility at least on an annual basis and her parents were also surveying the animals daily.  Visitors stopped by and toured the facility as well as staff members and volunteers so if the animals were

not well-kept, the department would have heard about it long before they started accusing the plaintiff of such ludicrous treatment of her beloved animals.

According to Ms. Haner's argument, she puts forth that the statute of limitations on § 1983 claims begin "... *when the plaintiff knows or has reason to know of the injury that is the basis of his claim.*" (*Def. Mot. @6*)  When the plaintiff initially became aware of "the statement" written by Therrien on or around November 7, 2017, although the plaintiff understood authoring such a statement was inappropriate and unethical, as well as a violation of agency policy, it was most likely authored and given to Thomas for use in litigation against the plaintiff. At that time, the plaintiff had enough confidence in the judiciary to feel secure in the fact that they would not allow such a prejudicial document to be filed and considered during the case, Leo v Thomas. It wasn't until 2019 or 2020 when the plaintiff realized how the statement was being used to defame her, ruin her business and deprive her wrongly of her valuable animals  and her guaranteed rights. With the statute of limitations tolling from the time the plaintiff "knows or has reason to know of the injury" not to exceed three years from said date, the plaintiff is well within the statute of limitations.

**Equal Protection Under the Law.**

To prove an equal-protection claim based on uneven enforcement of a law, the plaintiffs must show (1) that the government official is treating them differently from similarly situated persons, and (2) that the government is unequally applying the laws for the purpose of depriving the individual of life, liberty and/or property.

**How it all started.**  Plaintiff puts forth that from the time of the phone conversation with Powell on or around November 11, 2015, he opened up the "war and peace" of CSFs and kept it going for well over a year.  It's no coincidence that he opened a new CSF on the plaintiff within an hour of the end of the conversation on the phone with the plaintiff.  Everything from the way

the CSF was written and kept open for months on end seemingly in anticipation of more to come against the plaintiff to the horrible rumors Powell circulated around about the plaintiff, it was obvious he had a personal vendetta or grudge against the plaintiff which has never subsided to this day. Even other licensees who had DEC officers threaten them did not get such treatment in which the officer who elicited the threat made personal remarks and false accusations in order to turn the person's town officials, local courts, neighbors, colleagues and even a strain of the public against the individual like Powell did to the plaintiff.

There are a plethora of additional times when the plaintiff was treated differently than others who had similar facilities and licensing. Excluding the plaintiff from the whereabouts of her stolen animals, Therrien writing statements which have been secretly passed around, yet the plaintiff is constantly denied a copy. The way the two agencies have influenced the plaintiff's other cases in which they are not involved is also an extreme option exercised by the defendants and, as far as Plaintiff recalls, other wildlife rehabilitators and exotic animal owners have not had a smear campaign, especially the one of the magnitude Powell, Therrien, Mike Young and Thomas had carried on and still is to this day. The staff are threatened of the plaintiff because is the only one at this time challenging the corruption she has witnessed involving the staff of both the DEC and USDA-APHIS.

The DEC and USDA-APHIS have constantly applied the laws differently with the plaintiff than they do with others. One example of this is their allowance of the numerous violatiosn Thomas incurred when he failed to follow regulations in the transport of animals from New York State to Texas State. He had no import certificates issued by the Texas Parks & Wildlife Department as well as no possession certifications or permits. He had exhibited animals publicly while failing to maintaining an USDA license not to mention he has falsified evidence, lied on numerous occasions, and has committed conversion in relation to the plaintiff's animals he refuses

to return.   Status of licensing giving the plaintiff authority to possess her animals was misrepresented by both agencies as well as Thomas and his attorney, even though the plaintiff had identical licensing as did Thomas when he possessed her animals while in New York before leaving to Texas.   Clearly, these actions by the agencies and their "helpers" are highly arbitrary and unfair.

In the interest of brevity, the plaintiff will include the rest of her response to the defendants' arguments found in their motion to dismiss in her *Amended Complaint* which will be submitted in the near future.   As a result, the plaintiff respectfully requests the court allow her to submit the amended complaint before making a decision on dismissal.   There is more to be said; however, the plaintiff would rather present it once in a pleading without having redundancy inherent in her responses and pleadings filed with the court.

For the foregoing reasons and all the others discussed in Plaintiff's Complaint and her Amended Complaint, the present *Motion to Dismiss* should be denied.

**WHEREFORE**   Plaintiff, Carrie M. Leo, requests the court to deny the defendant's motion to dismiss for failure to state a claim.   Before considering dismissal, if the court does, the plaintiff requests she first be granted the opportunity to file an amended complaint in furtherance of justice pursuant to the Federal Rules of Civil Procedure 15(a).

Dated:  July 15, 2021
Walworth, New York

STATE OF NEW YORK
WAYNE COUNTY          } ss:

## CERTIFICATE OF SERVICE

I certify that an initial copy of the above was served on the Defendant by way of its counsel of record, Brittany Haner of the NYS Office of the Attorney General, via electronic mail on the 15th day of July 2021 in accordance with the Federal Rules of Civil Procedure and also sending the response to the court via the electronic email, CM-ECFIntake_nywd@nywd.uscourts.gov, which the plaintiff understands to be for the intake of documents for the U.S. District of Western New York.  Attached to this page is a true and correct copy of the email sent to Ms. Haner and the court on July 15, 2021.

On the 19th of July 2021, a copy of the foregoing was served upon Michele Crain of the NYS Office of the Attorney General when Plaintiff was informed by Ms. Haner that she is no longer involved in the case and referred all matters regarding the case to Mr. Crain as lead attorney.

## VERIFICATION

I declare under penalty of perjury that this information is true.

Date: July 19, 2021

Carrie M. Leo, Plaintiff *pro se*
3199 Walworth Road
Walworth, NY 14568
ph:  (315) 538-8316
e-mail:  carrieleo15@gmail.com

Sworn to before me this 19th day of July 2021

*Notary Public*

LAUREN FRIEDL
Notary Public - State of New York
NO. 07FR6383306
Qualified in Wayne County
My Commission Expires Nov 13, 2022

7/19/2021

Case 6:20-cv-07039-FPG   Document 33   Filed 07/21/21   Page 21 of 21
Gmail - 6:2020-cv-07039 Leo v NYSDEC et al.

 Gmail                                    **Carrie Leo <carrieleo15@gmail.com>**

---

# 6:2020-cv-07039 Leo v NYSDEC et al.
1 message

---

**Carrie Leo** <carrieleo15@gmail.com>                    Thu, Jul 15, 2021 at 1:21 PM
To: "Haner, Brittany" <brittany.haner@ag.ny.gov>, CM-
ECFIntake_nywd@nywd.uscourts.gov

Hello Ms. Haner and court staff,

Please find attached my response to the defendants' Motion to Dismiss to be filed.
Leave to Amend Complaint will be submitted in the near future.

Thank you,
Carrie Leo, pro se Plaintiff

---

📄 **PLAINTIFF'S RESPONSE to Defendant's Motion to Dismiss - 15-July 2021 (OFFICIAL VERSION &
WAS FILED).pdf**
746K