3199 Walworth Road
Walworth, NY 14568
December 10, 2021

**VIA USPS**
U.S. District Court for the Western District of New York
2120 Kenneth B. Keating Federal Building,
100 State Street
Rochester, NY 14614
ph: (585) 613-4000 | fax: (585) 613-4035

**RE:** *Leo v NYSDEC et al.* (6:2020-cv-07039-FPG)

Dear Court Clerk,

Please find enclosed *Plaintiff's Affidavit in Support and Additional Argument.*

Please feel free to contact me should you have any questions or concerns. Thank you for your assistance in this matter.

Thank you.

Sincerely,

Carrie M. Leo, *Plaintiff*

enclosures

cc: **VIA EMAIL** Kathryn.L.Smith@usdoj.gov
    **JAMES P. KENNEDY, JR.**
    United States Attorney
    **KATHRYN L. SMITH**
    Assistant United States Attorney
    Western District of New York
    100 State Street, 5th Floor
    Rochester, New York 14614
    (585) 263-6760
    Kathryn.L.Smith@usdoj.gov

    **VIA EMAIL** Michele.Crain@ag.ny.gov
    **LETICIA A. JAMES**
    New York State Attorney General's Office
    **MICHELE ROMANCE-CRAIN**
    Assistant Attorney General
    144 Exchange Blvd.
    Rochester, New York 14614
    (696) 327-3223
    Michele.Crain@ag.ny.gov

**To the U.S. District Court of Western New York**

**Re: Sworn Statement regarding potential dismissal of civil rights case against NYSDEC, USDA and their respective staffs.**

I thought writing a statement in letter form would make it easier to explain a few things I would like the Court to take into consideration. I hope the Court will allow me the informality to express my concerns over the events which have occurred over the last six years, and which would be pertinent to this case and causes of action.

The need for resolution in the NYSDEC and USDA's treatment of my business for which I worked very hard, my care for the animals I miss and love so much and their conduct in trying to control matters of my life which should be off limits make this case an essential turning point for my future as well as possibly the same for the future treatment of other licensees.

I learned too late that the exotic animal industry is shady. I also didn't know until the last several years that it is the way it is due to the influence the government agencies regulating the industry have on it. It's my case which makes this an undeniably stark reality since the treatment I've endured has been extreme and unnecessary – to the point in which I have put my life on-hold to resolve the obsession for control over my life, even my future, inherent in the actions of the two agencies which comprise the defense.

DEC's Division of Law Enforcement started the entire ordeal when Region 8 Lieutenant William Powell threatened to take away the licenses I had acquired through the DEC; namely, the *License for Wildlife Rehabilitation, License to Collect & Possess* and the *Nuisance Wildlife Control Operator*. This became apparent to me during a verbal confrontation we had on the phone in November 2015 after he had already mentioned before the argument, there was nothing wrong with the operation of my facility. I have evidence to show that on the same day of the phone conversation, Powell opened a dispatch complaint relating to me and kept it open for about a year. Normally, a dispatch complaint is opened when the complaint is received then the officers investigate and note their findings in the record and close it.

In the months that followed, Powell concentrated on how to prosecute me for things which either were not illegal or which I never did. An actual investigation was never done since Powell had fabricated any derogatory information he put forth and which was used to "prove" my alleged violations of the law.

The DEC and USDA have gone to extraordinary lengths to ruin my reputation and business. In fact, this case was filed not long after it was finally made known to me directly by a DEC officer that I have been banned or prohibited from having any animals again. There have been no legal action nor any reason to make such a prohibition against me if the department staff consider the truth. Unfortunately, they've been given so much latitude that the only "investigation" that takes place is Lt. Powell fabricating evidence and making up stories to pass around throughout the public and authorities in order to prejudice me in anything I do.

At one time Powell told a colleague of mine I bred rehab animals and neglected them, etc. to get her to provide "testimony" which wasn't true. However, it was used in the revocation hearing of my LCP in March 2018. Later, a necropsy report would show the only female was never bred and

1

in the fourteen months of their short lives, the animals saw a veterinarian three times for assessment and given a clean bill of health.

Another colleague mentioned how DEC officers aggressively tried getting her/him to say I was breeding and selling the offspring of a coyote pack I had in rehabilitation. Thankfully, this person refused and even expressed disgust over the treatment (s)he endured from the officers questioning her/him.

This was just the beginning as throughout the years that followed, Powell and Therrien led the agency in its continual violation of its rules, regulations, and the law to prosecute me, ruin my reputation and prevent a restart of my wildlife center.

Any activity I've been accused of performing illegally was either authorized by the licensing I had at the time I performed the activity or wasn't illegal in the first place. This is where the staff manipulated the interpretation and enforcement of the regulations and provisions of licensing I had at the time and resulted in unequal treatment under the law.

Although anyone situated similarly benefited from communication and warnings when suspected of wrong-doing, I received neither. In fact, to this day, the DEC and USDA staff insist on covertly influencing my pending litigation and reputation by sending around rumors blaming me for incidents which happen at other facilities and showing pictures of facilities I did not run or own with no mention whatsoever of the real culprits.

**Accusations of Animal Cruelty**

Powell began his gossip and rumor-building involving accusations that I was involved in animal cruelty and neglect around May 2016. Of course, not one inkling had ever been said to me directly nor was anything documented or noted in the hearing to revoke my license in March 2018. In fact, I was not aware of such things being said until much later after it had already started.

Such covert actions also reveal the inappropriate relationship the two agencies have had with other licensees; especially those willing to extend the DEC's authority far beyond it's limits. One of those people is Tyler Thomas. There is evidence to suggest that D'Ambrosio and Therrien have been instrumental in allowing Thomas to defy a court order in another case and to stay in unlawful possession of animals which belong to me by secreting them away and fabricating evidence that they cannot be returned because they died.

Although D'Ambrosio would tell the BBB that the business arrangement involving the temporary boarding of several animals of mine with Thomas, was a civil matter and I was still licensed by the USDA, she covertly worked with Thomas in maintaining unlawful possession of my animals and many of his which were illegally exported from New York, transported through numerous states and unlawfully imported in Texas State. To this day, none of these animals have ever been documented except for a few newer species he's currently exhibited. His attorney, the USDA and DEC worked with Texas Parks and Wildlife Department to prevent any repercussions for failing to license any of his animals in his possession, including endangered species. These actions undermine the very purpose of the Animal Welfare Act; that is, to record the movement of animals and prevent the theft of them as well.

2

In fact, this was done in tandem with the defense counsel in one of my pending cases in which I was litigating for the return of my animals from a colleague who stole them by leaving the state with them when they were boarded with him for a few months. James Farquhar and Joe Therrien had spoken directly with the defense without my knowledge at the time and covertly influenced the case. Dilatory delays were put in place when I was granted an order for the return of my animals and then tried to settle with the defense to get the regulation amended so I was prohibited from bringing my animals back into the state.

There are also other bills introduced into the legislature which are in flagrant violation of this state's residents' constitutional rights. One bill was introduced when Powell complained about how my LCP had not been revoked right away without any hearing or notice. The bill in the legislature states that once a licensee is charged with a violation, their licenses are to be suspended immediately. This is repetitive since there is already a regulation stating the Commissioner can do so in his discretion. Furthermore, the insensitivity to businesses which would lose significant income with an immediate closure should be considered.

Another bill is also targeting me in any future attempt of mine to restart my center in another state. The DEC now wants to put all those with revoked licenses to possess wild and exotic animals to be put on the Interstate Violator's Compact Agreement which would prohibit the revokee from obtaining a license in other states if their license(s) were revoked in New York State. Since the DEC revokes licenses for political and personal reasons and allows those who continually violate the law the continuance of their animal-related businesses, this is an incredibly unfair notion and shows the obsession the agency has to control not only the current actions of some of its licensees, but the drive the staff has in controlling the future of such people as well.

From then on, Powell had made a rule on his own that I could not run my business nor have any animals at all indefinitely. There was no law, rule or regulation supporting his unilateral and arbitrary imposition upon my life. Even though I wasn't told until that point, the staff in the SLU and DLE along with select staff in the USDA worked covertly behind the scenes affecting my cases which were pending, helping the secreting away of animals belonging to me, violating numerous rules, regulations and laws in the process and ruining my reputation.

Joe Therrien helped Powell's mission by writing a "secret statement" (see papers accompanying this statement) for Tyler Thomas who stole three animals of mine when I boarded them at his place temporarily as I recovered from surgery. This occurred the same day I served my colleague with process for another case in which I vied to get my animals back. The statement has been circulating throughout the public as well as the courts and their staff and attorneys involved in my pending cases. From its circulation, I've discerned some of its content and am abhorred at the kind of person I have been made out to be. Powell, Therrien and others, like Farquhar, have interfered with my life and turned people against me by describing me as a person I don't even recognize.

The statement also unlawfully gives Tyler Thomas "ownership" of my animals even though I was properly licensed to repossess them at the time although Paul Stringer, Therrien, Farquhar and Powell have misrepresented my licensing status to prejudice me in my court cases. Below is part of an email thread in which an attorney from the General Counsel of the DEC confirmed that my license was still valid.

3

I've continually been denied a copy of the statement. It has detrimentally affected my cases since those who read it believe its contents to be true when it isn't. Therrien has used his position with the DEC's SLU and the credibility he is given automatically for having such a position in the underhanded destruction of another person's life.





First mention of orders in the "phone summary" statement written by Therrien on agency letterhead. This comment was published on Facebook by Tyler Thomas on 12/06 2019.

As early as December 2017, I had made the department aware of the unilateral informal revocation of my license long before it was officially revoked. An email sent to Mr. Sanza and Mr. Bassinson in the OGC made it known that my licensing was being misrepresented for the DEC staff to justify keeping my animals from me as well as by their interference in a boarding contract already noted as being a civil affair between the parties themselves and not the agencies.

On November 26, 2021, I came across an announcement on a page in Facebook which draws many followers. Although the post was published in October 2020, it had accused me of everything that happened during a raid in December 2016 in Niagara County, including the three hundred animals pulled out of the basement of another person's residence of which I knew nothing until the day of the raid. I didn't live there, nor did I run or own the facility or property. I was also being accused of starving animals located at the facility when there was no starvation which took place, according to a veterinarian who assessed the animals.

**<u>Regulations and laws have been intentionally misrepresented.</u>** Many people have been charged with or threatened to be charged with, violations which aren't true violations. One of my colleagues was cited for possessing an unregulated species. The agency should be made to go through all of its past citations and make it right by the people falsely charged as a result of officers misrepresenting laws and regulations.



**Figures Above.** *Reviews left on DEC Facebook Page from members of the public. The one on the reader's right exposes the targeting of a disabled person which has been very common with the DEC staff in the past. Small business owners, the indigent and disabled are parts of the population of the State which seem to be disproportionately targeted by the DLE.*

Likewise, the DEC told me I had to license my non-indigenous animals as well as those species which are unregulated. During the inspection the staff did of my facility in May 2016, Michael Wasilco stated I needed a license for my North American Porcupines even though they were an

unregulated species. On another occasion, he told Officer Kevin Thomas to get me to license my North American badger, a non-indigenous species when, even for exhibition, non-indigenous species need not be licensed by the state.

*Figure 1. Above is an email from Michael Wasilco to DEC Region 8 Officer Kevin Thomas*

During the hearing in March 2018 involving the revocation of my LCP, even Therrien accused me of violating the law by having custody of chipmunks, another unregulated species, without licensing. Surprisingly, the ALJ did state that unregulated species need no licensing for import into the state as well as mere possession so long as they weren't exhibited to the public. Since there was no evidence of my exhibiting such species to the public, the ALJ ruled against Therrien's accusation. Much of what was used as reasons to revoke my LCP were not true or fabricated. I am in custody of evidence which supports this assertion.

The DEC has worked directly with the defense attorney in at least one of my cases, which I mentioned earlier, *Leo v Thomas*, causing dilatory delays to adopt the amendment to the regulation 180.1 which would prevent me from bringing my animals back into the state. This occurred not long after I was granted injunctive relief which ordered the defendant to return the animals within two weeks. He, with the help of the DEC and USDA, is still in violation of such an order, which was issued first in 2018 then amended in 2019.

The USDA and D'Ambrosio have chimed in by working with a Texas veterinarian to fabricate testimony submitted to courts which falsely alleges one of my animals is deceased since she supposedly did a necropsy on it. This veterinarian went even further and not only submitted the same false statement in other courts, but she lied under oath and submitted yet an additional piece of fabricated evidence in the form of a necropsy report. Even though it clearly stated in the report, as well as in an email she sent me, that she sent copies of the letter and report to the USDA, she lied about it while under oath during a deposition in May 2021. If the court had stopped this veterinarian when it had the chance, she would not have falsified documentation and given substandard care of endangered species at another facility for which she is currently under investigation.

Another incident occurred when USDA staff abruptly altered my inspection reports to include derogatory information in clear violation of their own policy. Again, no redress was available since nothing was done to correct the situation.

A judge in another state gave me two writs for the repossession of other animals I was boarding at a zoo. However, she refused a third writ for repossession, when I had to reschedule the transfer of the animals from the zoo, after becoming under the influence of someone who exposed her to the

5

"secret statement" written by Therrien. This court, I believe, was influenced by the post mentioned earlier which encouraged people to submit false complaints to the USDA about me.

I've also learned that since I've made public statements about wanting to move onto another state and start my business over with my animals, the DEC has introduced a bill into the state legislature that revokes the license(s) to possess exotic and wild animals in every other state if it is revoked in the state of New York. That would mean the department would have control over enforcing the laws of other states and they would prevent me from starting over even in another state, which I'm sure was the initial impetus to introducing such a bill. This type of conduct, in my opinion, is extreme and goes far beyond the control any government agency should have.

To my knowledge, there is no other state in the country where the conservation or natural resources department has absolute control over domesticated exotic animals. It is the agricultural department of other states which have jurisdiction overregulating the exotic animal industry.

There is a wealth of additional details and testimony which support the contentions I make herein. However, in the interest of brevity, I just wanted to mention a few specific examples and express to the court my concern over the increasing extremism and lawlessness of the DEC and USDA. Although I am not the only one who has experienced such harsh treatment, I am one of the few who has the courage to challenge it. At this point, I have no choice since I have no other avenue of remedy.

-------

Complaints have been filed over the last six years with every authority I could think of which would have jurisdiction. I even gave each agency a chance for years to fix the problems from within the agencies before I engaged any entities outside of the agencies. Unfortunately, these two agencies will not do the right thing or resolve a conflict unless they are forced to do so.

Complaints have been filed with several members of the General Counsel in both agencies, the USDA-APHIS OIG, the NYS OIG, NYS OAG (which understandably referred me to the OIG due to a conflict of interest), the Small Business Ombudsman, and numerous other individuals such as the governor of the state, the heads of the agencies (Commissioner Seggos and Secretary Perdue), etc.[1] I stopped counting at fifty complaints sent over the years relating to misconduct perpetrated by the staff and agencies named as defendants in this action. (see accompanying affidavit). It has been clear both the usda and dec have closed all avenues for redress I could have had if the system was left alone to function as it should. Even the EEOC failed me by failing to respond to my pleas.

However, there have been times soon after I sought redress during which I've experienced retaliation. An example of this is the USDA denying my appeal to the agency in February only days after an attorney in the OGC contacted me concerning a complaint I had written a year prior.

Last year, one of my legislators brought up my concerns in a meeting with the environmental committee. Immediately afterward, the DEC started charging me for paper copies of records I requested via FOIL even though I asked for electronic versions. They knew I was indigent and

---

[1] see accompanying affidavit listing some of the reports, statements and complaints submitted for possibility of resolution.

6

couldn't afford such but felt they could use my financial status, a condition they caused, against me.

I have had my constitutional rights violated repeatedly and the DEC and USDA will not leave me alone unless there is an authority to tell them to do so. I don't believe this is a case in which deference or immunity should take hold since these staff members have conducted themselves far outside of the realm of acceptable behavior and the function of their jobs with the agencies. They have an incredible amount of latitude to do as they please, and if this action gets dismissed, they will never leave me alone and will continually make sure they have control over aspects of my life in and out of the state, which they should not have the authority to do.

I am beginning to view following the law as nothing more than a handicap since it seems I am the only one required to do so. Where people such as Tyler Thomas rack up countless violations in the expression of their greed by the theft of exotic animals belonging to other people and is still allowed to continue to do so to this day without reprisal, I am still victim to false accusations being encouraged by the DEC, USDA and their "helpers" such as Tyler Thomas, without any recourse for remedy or way to make the state and federal governments accountable.

I already must take the law into my own hands when addressing those trespassing on my parents' property to release animals of mine in the recent past. Such a lack of protection from local police departments has resulted from the DEC since Powell has also influenced the local police to not investigate any complaints I have concerning my animals. Powell also has the local police blaming me for the possible violations of other animal owners as well as considering any animal which at large as mine when it is not. These are yet more false accusations desperately clung onto by Powell as the only "evidence" of my alleged wrongdoing and thus the need for constant surveillance and investigation which has become an invasion of privacy.

I ask the Court to allow this case to move on and give me a chance I've been constantly denied; that is, a chance <u>to be heard</u> in an impartial forum and a chance to put this conflict to rest and move on with my life, after all these years. This can only happen if the DEC and USDA are held accountable and made to stay within their respective jurisdictions; i.e., prohibiting them from controlling every aspect of our lives.

If I must drop the demand for monetary compensation from both agencies in order for this action to continue on towards resolution, I am willing to do that, although the defendants have ruined so much that they did not have reason or authority to do. As a pro se litigant, I am not familiar with ADR or any other mediation but would be willing to participate in such to end this conflict with a resolution acceptable to both sides.

I am a self-represented litigant solely due to financial hardship. I have been, and will continue to, look for an attorney suitable to take this case. If the court would prefer I request a continuance in order to secure counsel, I would be willing to do so.

Date: <u>December 10, 2021</u>

Respectfully Submitted,

*[signature]*

Carrie M. Leo
3199 Walworth Rd.,
Walworth, NY 14568
(315) 538-8316 | carrieleo15@gmail.com

7

## VERIFICATION

STATE OF NEW YORK  }
WAYNE COUNTY      } ss:

I verify that all foregoing statements and claims have been made by me, Carrie M. Leo, out of good faith and because I truly believe them to be true. All illustrations such as, but not necessarily limited to, emails, social media posts and comments are true and correct and having been filed in a court of law of various jurisdictions. This I state under the penalty of perjury.

Date: December 10, 2021

Sworn to before me this
10th day of December 2021

_Notary Public_

LAUREN FREDL
Notary Public - State of New York
NO. 01FR6353106
Qualified in Wayne County
My Commission Expires Nov 13, 2022

Carrie M. Leo,
3199 Walworth Road
Walworth, NY 14568
phone: 315-538-8316
carrieleo15@gmail.com

8

# Additional Argument for the Plaintiff's Cause of Action for the Unconstitutionality of 6 NYCRR 180.1

**Public Hearing not scheduled but needed**

I. Introduction

This is commentary offered by a professional in the wildlife and exotic animal industry and who received licensure from the New York State Department of Environmental Conservation. I am an exotic animal owner and caregiver who <u>owned</u> a wildlife and exotic animal facility in Wayne County. I have had numerous interactions with DEC staff and those licensed through the Special Licenses Unit. I have been conducting research relating to the Department's various licensing systems as well as case histories of individual operations licensed through the Special Licenses Unit. In addition, I have researched the treatment of licensees and members of the public by the staff of the NYSDEC – both good and bad. I am also focusing on the possibility of the Department favoring policy decisions and licensing provisions which diminish the exotic animal industry and business interests without solid support and facts that demonstrate an urgent or new <u>demonstrate an urgent or new need to revamp the laws relative</u> to these issues in New York State.

2. The ECL § 11-0303(1) sets forth the scope, breadth, and purpose of the power

> *§ 11-0303. Management of fish and wildlife resources; general purposes and policies governing manner of exercise of powers.*
>
> *1. The general purpose of powers affecting fish and wildlife, granted to the department by the Fish and Wildlife Law, is to vest in the department, to the extent of the powers so granted, the efficient management of the fish and wildlife resources of the state. Such resources shall be deemed to include all animal and vegetable life and the soil, water and atmospheric environment thereof, owned by the state or of which it may obtain management, to the extent that they constitute the habitat of fish and wildlife as defined in section 11-0103. Such management shall be deemed to include both the maintenance and improvement of such resources as natural resources and the development and administration of measures for making them accessible to the people of the state. To obtain these results it shall include, to the extent authorized by law, the undertaking and execution of reciprocal and cooperative arrangements with the government of the United States, with other states, and with other departments and agencies of this state, political subdivisions and public corporations of this state and owners and lessees of privately owned lands and waters and shall also include continuation of research and educational programs.*

A notable part of the previous quoted text is the referral only to wildlife as it is defined in section §11- 0103. The definition, as stated in 11-0103, clearly does not include exotic (non-indigenous) and privately-owned animals. When looking at the "Dangerous Wildlife Law", it is clear that the term "wildlife" is used which designates only state-owned animals as the only focus of the law; that is, animals originating from the wild. Wolf-hybrids, which are listed as covered by the *"Dangerous Wildlife Law"*, are not wildlife and thus should not have been included in the law and

1

thus subject to seizure.

This is the same case for the name of the entire body of law, the Fish and Wildlife Law, which allows the function of the Department to include <u>only State-owned animals</u>. There is no mention of exotic animals or any privately-owned personal property to be managed identically to that which belongs to the state, or in the case of the statutory intent of the Department.

3. ECL § 11-0511 The Actual Authority Being Asserted as the Basis for the Proposed Changes

This section quickly and neatly sweeps all animals without exception to those owned, acquired,

> *§ 11-0511. Possession and transportation of wildlife.*
>
> *Subject to the provisions of section 11-0512 of this article, no person shall, except under a license or permit first obtained from the department containing the prominent warning notice specified in subdivision nine of section 11-0917 of this article, possess, transport or cause to be transported, imported or exported any live wolf, wolfdog, coyote, coydog, fox, skunk, raccoon, venomous reptile, endangered species designated pursuant to section 11-0535 of this title, species named in section 11-0536 of this title or other species of native or non-native live wildlife or fish where the department finds that possession, transportation, importation or exportation of such species of wildlife or fish would present a danger to the health or welfare of the people of the state, an individual resident or indigenous fish or wildlife population. Environmental conservation officers, forest rangers and members of the state police may seize every such animal possessed without such license or permit. No action for damages shall lie for such seizure, and disposition of seized animals shall be at the discretion of the department.*

and purchased by private individuals into the province of State property. The initial authority and purpose as set forth *supra* did not allow such an "imminent domain" type of interest as it was expressly limited to the State's own "wildlife resources". The bigger point is that no uniform standard has been defined as a basis to know which exotic animals and/or particular species in the possession of private individuals has shown a factual and statistical demonstrated record of causing injuries to the citizens of the State of New York. This proposed Rule change may be the idea or desired policy of some group or person, but there are no hard figures, studies, or commissioned surveys to support this proposed rule change. As a matter of basic procedure to bringing forth a legal claim, general conclusory statements are insufficient to state a claim. "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (U.S. Supreme Court, 2009); **Nielsen v. Elaine A. Rabin M.D.**, 746 F.3d 58 (2nd Cir. 2014). This is a situation where a list was compiled that is supposed to reflect animals that "present a danger to the health or welfare of the

people", but this list is not based on new statistical facts showing any new threat or uptick in injuries or attacks specifically by exotic animals owned by private owners. Meaning, the assertion that we are at a time when a list of animals can be composed and offered as a "present danger" thereby entitling the State to usurp all private ownership rights and superior property interests is wholly conclusory and woefully deficient of factual support. Legislative action ought to be supported by data that can be factually corroborated.

**The Absent Factual Support for Promulgating A Conclusory Rule Depriving Private Owners of Due <u>Process Prevents a Reasonable Discussion About the Assessment of the Threat of Danger</u>**

The State's best and only argument is that an exotic wild animal in captivity owned by private individuals is an ever-persistent danger. This conclusion is never shown to be truthful in relation to any other ever- present persistent contemporary danger relative to State interests. There are no figures provided as to how many injuries and deaths result each year from the operation of motor vehicles in the State or in the United States making such machines a state interest relative to the present danger to the health or welfare of the people. More to the point for comparison purposes, despite swimming pools and boats contributing to 3,960 deaths from drowning each year in the United States[i] or 11 deaths each day of the year, there is no movement afoot to confiscate and outlaw boats and swimming pools in the State. The figures that we all accept as true that lumps in all exotic animals from primates to big cats demonstrates that there have been 91 total deaths from such attacks between the 21-year period of 1990-2021[ii], or 4.3 deaths per year for an entire nation with the population size of the United States. To give this number a bit more context, consider that from 1980-1992, 5,348 people working as electricians died by way of electrocution in the United States, or 411 deaths per year[iii]. Finally, consider that in 2019, 754 women died while in labor attempting to give birth in the United States[iv]. There are no studies that would show or demonstrate that a new rule that can seize a private owner's exotic animals in the State of New York will in any regard have any effect on the national average of 4.3 deaths in the context of a national population estimated to be 331 million people.

If the figures do not demonstrate the objectivity of any present danger, there is no catalyst justifying the State's right to infringe upon the property interests of exotic animal/pet owners.

---

[i] https://www.cdc.gov/drowning/facts/index.html

[ii] https://pawsomeadvice.com/pets/exotic-pet-statistics/

[iii] WORKER DEATHS BY ELECTROCUTION A Summary of NIOSH Surveillance and Investigative Findings U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES Public Health Service Centers for Disease Control and Prevention National Institute for Occupational Safety and Health **May 1998**, NIOSH Publication No.98-131, Worker Deaths by Electrocution.

[iv] https://www.cdc.gov/nchs/data/hestat/maternal-mortality-2021/maternal-mortality-2021.htm

In 2019, **754 women** were identified as having died of maternal causes in the United States, compared with 658 in 2018 (2). The maternal mortality rate for 2019 (20.1 deaths per 100,000 live births) was significantly higher than the rate for 2018.

3

# Service of Defendant

 Gmail                                                     Carrie Leo <carrieleo15@gmail.com>

## re: Supporting Affidavit & Additional Argument
1 message

**Carrie Leo** <carrieleo15@gmail.com>                                    Fri, Dec 10, 2021 at 11:55 PM
To: "Crain, Michele" <Michele.Crain@ag.ny.gov>, Kathryn.L.Smith@usdoj.gov

Please see attached papers.

Thank you,
Carrie Leo

📎 **Affidavit, Supporting & Additional Argument.pdf**
9860K

Carrie M. Leo
3199 Walworth Road
Walworth, NY 14568



7021 0350 0002 1877 2571

CERTIFIED MAIL



FIRST CLASS

U.S. District Court-Western NY
2120 Kenneth B. Keating Fed. Bldg.
100 State St., 5th Floor
Rochester, NY 14614



DEC 15 2021
USDC WDNY
ROCHESTER



UNITED STATES POSTAL SERVICE

14614



U.S. POSTAGE PAID
FCM LG ENV
WALWORTH, NY
14568
DEC 13, 21
AMOUNT
$5.51
R2305M144083-04