UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARRIE M. LEO,

                              Plaintiff,          Case # 20-CV-7039-FPG

v.                                                               DECISION AND ORDER

NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION, et al.,
                              Defendants.
_____

## INTRODUCTION

*Pro se* Plaintiff Carrie M. Leo brought this case pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against (1) the New York State Department of Environmental Conservation ("DEC"); (2) Basil Seggos, the Commissioner of the DEC; (3) the United States Department of Agriculture ("USDA"); (4) Sonny Perdue, Secretary of the USDA; (5) Joe Therrien, Director of the Special Licenses Unit at the DEC; (6) William Powell, Lieutenant at the DEC; and (7) Andrea D'Ambrosio, Animal Care Inspector at the USDA. ECF No. 1. In her First Amended Complaint ("FAC"), Plaintiff sues the DEC, Powell, Kevin Thomas, Therrien, the USDA, and D'Ambrosio.[1] ECF No. 42.

Presently before the Court are Defendants' motions to dismiss the original complaint, ECF Nos. 13, 35, and Plaintiff's motion to amend the complaint, ECF Nos. 39, 42. For the reasons that follow, Defendants' motions to dismiss are GRANTED and Plaintiff's motion to amend is DENIED.

---

[1] Seggos, Therrien, Powell, and Thomas are collectively referred to herein as "State Defendants." The USDA, Perdue, and D'Ambrosio are collectively referred to herein as "Federal Defendants."

## BACKGROUND

**I.      Procedural Background**

Plaintiff filed the original complaint on December 4, 2020.  ECF No. 1.  The Court screened the complaint pursuant to 28 U.S.C. § 1915 and ordered that the complaint proceed to service. ECF No. 5.  The Court noted that Plaintiff's original complaint only sought equitable relief.  It acknowledged that "Leo has not clearly articulated how the facts, as alleged, align with the legal theories she has cited.  Perhaps anticipating this, Leo mentions that she intends to amend the Complaint, perhaps to clarify her claims or add parties named in the Complaint but not listed as defendants." *Id.* at 6.  But the Court declined, at that juncture to "endeavor to parse the claims and excise them, without the benefit of further briefing." *Id.*

State Defendants were served, and in March 2021, they filed a motion to dismiss.  ECF No. 13.  After several extensions of time, Plaintiff opposed the motion in July 2021.  ECF No. 33.  Federal Defendants were served after multiple service issues and, in August 2021, they filed a motion to dismiss.  ECF No. 35.  Plaintiff opposed Federal Defendants' motion to dismiss in September 2021.  ECF No. 38.  The same day, Plaintiff indicated her intent to amend the original complaint, but did not actually identify any proposed amendments.  ECF No. 39.

Plaintiff filed a motion to amend—with proposed amendments—on October 27, 2021. ECF No. 42.  The proposed First Amended Complaint ("FAC") contains more organized legal claims but omits much of the recitation of the facts contained in the original complaint.  It also seems to add claims for monetary relief to the original complaint's request for equitable relief. Federal Defendants oppose the motion to amend, ECF No. 44, while State Defendants "defer to the discretion of the Court and reserve their rights to move to dismiss the Amended Complaint after it has been served," ECF No. 45.  In her reply, filed on December 15, 2021, Plaintiff rehashes

many of the facts contained in the original complaint that were omitted from the FAC. ECF No. 50.

## II. Factual Background

Because of the confusing procedural history and posture of this case—and the omission of most of the facts from the FAC—the Court will address the pending motions based on the facts contained in all of Plaintiff's submissions.

Plaintiff's allegations arise from, what she says, are years of Defendants' abusive and conspiratorial conduct, which targeted Plaintiff's "wildlife center" in Walworth, New York, and led to the theft of her wild animals, the revocation of her wildlife licenses, and the wildlife center's ultimate demise. ECF No. 1.

Plaintiff alleges that starting on November 7, 2015, DEC officials visited her wildlife center upon receiving a complaint from a neighbor that Plaintiff was harboring wild animals. ECF No. 1 at 4. Although Plaintiff was licensed by the DEC and USDA, officials returned on May 10, 2016 for an "inspection," and seized "a pack of six adult coyotes" she possessed pursuant to a DEC license. *Id.* at 5. In July 2016, the DEC cited Plaintiff with eleven citations, mostly for possession of coyotes. *Id.* The charges were resolved with a plea to two civil violations for keeping opossums in cages in the winter and for submitting an annual license log late—violations that Plaintiff contends are normally ignored by the authorities. *Id.*

Sometime in 2017, Defendant Powell and DEC Officer Thomas (who was not named in the original complaint but was later named in the FAC), made Plaintiff "take the entire center down." *Id.* In April 2017, Plaintiff boarded three animals with a colleague—who is later identified in the complaint as Tyler Thomas, but who is not included as a Defendant. Without Plaintiff's permission, "staff members of the DEC and USDA" assisted the colleague in taking the animals

out of New York State and exporting them to Texas. *Id.* More specifically, Plaintiff alleges that Defendant D'Ambrosio encouraged the colleague "to take as many animals as possible from [the] center with the intent not to return them." *Id.* at 7. Defendant Powell manipulated authorities to threaten financial retribution and collaborated with the colleague who stole the animals.

Plaintiff has been attempting to regain possession of the stolen animals since then. She claims she was granted a preliminary injunction in September 2018 but does not identify the court that issued it or the defendants who were enjoined. Plaintiff does allege that, in response to the injunction she learned that the animals were either stolen or deceased. *Id.* Plaintiff claims that, despite her repeated and frequent efforts, the DEC and USDA have been withholding information and documents regarding the animal heist.

In the original complaint, Plaintiff alleges that Defendants Powell, Therrien, and D'Ambrosio, and non-Defendants James Farquhar and Tonya Hadijis, have been "protecting the person who still has possession of" the animals. *Id.* More specifically, Defendants Powell and Therrien incited Plaintiff's neighbors to destroy her property and secretly release her animals, and defamed her to local authorities and neighbors by accusing her of animal cruelty. *Id.* at 6. She insists that these DEC and USDA employees besmirched her business and character, *id.* at 7, claiming that they have been "passing around rumors that [she] was an animal abuser and starve[d] animals," *id.* at 9; ECF No. 50 at 5 (noting an online accusation that Plaintiff had been involved in the abuse of hundreds of animals at a property in Niagara County that she did not own or live at). Plaintiff alleges that "[s]uch covert actions also reveal the inappropriate relationship the two agencies have had with other licensees; especially those willing to extend the DEC's authority far beyond it's [sic] limits." ECF No. 50 at 3.

4

As part of this abuse, Plaintiff alleges that her state licenses "were either denied renewal in a very untimely fashion or revoked." ECF No. 1 at 9. Similarly, the USDA is instituting a reciprocal proceeding to terminate her federal license based on the termination of her state license. *Id.* Plaintiff asserts that a similar New York state bill is "targeting me in any future attempt of mine to restart my center in another state." ECF No. 50 at 4. During the times relevant here, Plaintiff alleges that the DEC—and now the USDA—refused to provide her with any information or notices of actions being taken against her.

Plaintiff claims that the USDA did not investigate these actions after she complained.[2] ECF No. 1 at 7. Rather, Defendant D'Ambrosio at the USDA and DEC employees continue to protect Plaintiff's colleague and prevent her from being reunited with her animals.

Plaintiff also references court proceedings in 2017 regarding the stolen animals or her licenses and alleged wrongdoing during those proceedings. ECF No. 33 at 13. It is not clear if these proceedings are related to those in which Plaintiff claims she was awarded a preliminary injunction in 2018.

## DISCUSSION

### I.   Legal Standard

To state a valid § 1983 claim, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cty.*

---

[2] "There is . . . no constitutional right to an investigation by government officials, . . . and no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved." *Lewis v. Gallivan*, 315 F. Supp. 2d 313, 317 (W.D.N.Y. 2004) (citations and internal quotation marks omitted); *see Adamczyk v. Annucci*, 16-cv-239, 2019 WL 6123746, at *2 (W.D.N.Y. Nov. 19, 2019) ("[T]here is no constitutional right to an investigation by government officials.").

*of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). *Bivens* created a corresponding implied private right of action for plaintiffs to sue federal officials in their individual capacity to redress constitutional violations. *Ojo v. United States*, 364 F. Supp. 3d 163, 170 (E.D.N.Y. 2019). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, . . . [the plaintiff] must plead that each Government-official defendant, through his own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Here, Defendants move to dismiss the original complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff opposed the motions to dismiss but later responded by moving to amend the complaint pursuant to Rule 15. In deciding a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quoting another source), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"Rule 15(a)(2) instructs that a court 'should freely give leave [to amend] when justice so requires.'" *Willis v. Rochester Police Dep't*, No. 15-CV-6284-FPG, 2018 WL 4637378, at *2 (W.D.N.Y. Sept. 27, 2018) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 139-40 (2d Cir. 2013)). A court may, however, deny leave to amend where such amendment would be "futile." *Id.* Amendment is futile if the proposed claim "could not withstand a motion to dismiss pursuant

6

to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

"When—as in this case—a motion to amend is filed in response to a pending motion to dismiss, 'a court has a variety of ways in which' to proceed, 'from denying the motion [to dismiss] as moot to considering the merits of the motion [to dismiss] in light of the [proposed] amended complaint.'" *Willis*, 2018 WL 4637378, at *2 (quoting *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 291 (E.D.N.Y. 2016)). Here, the Court elects to consider the merits of the motion to dismiss in light of the proposed amended complaint. Because it concludes that neither the original complaint nor the FAC could withstand a motion to dismiss, the Court grants the motions to dismiss and denies leave to file the FAC. *See Pettaway v. National Recovery Solutions, LLC*, 955 F.3d 299 (2d Cir. 2020) (approving of the district court's approach in granting a motion to dismiss and denying a motion for leave to amend the complaint, filed in response to the motion to dismiss, because the new allegations could not save plaintiff's claims, *i.e.*, "the amended complaint would not withstand a motion to dismiss").

**II.     Analysis**

At the outset, the Court makes a few points that will guide and focus its analysis. First, the Court wishes to emphasize its obligation to construe *pro se* pleadings liberally to raise "the strongest argument that they suggest." *Shepherd v. Sanchez*, 27 F. App'x 31, 33 (2d Cir. 2001) (summary order) (internal quotation marks and citations omitted). Plaintiff's FAC is not a model of clarity, but the Court is generally able to understand the conduct Plaintiff is seeking to challenge and, in a basic sense, why she finds that conduct wrongful. Once viewed through the correct legal frameworks, at least some of Plaintiff's claims appear to present rational, yet perhaps not cognizable, theories for relief.

Second, one of the difficulties the Court faces is that neither party has fully briefed the myriad legal issues that Plaintiff's claims implicate. The Court does not necessarily fault the parties for this—as Plaintiff is proceeding *pro se* and Defendants were faced with responding to a sometimes vague and unclear set of allegations—but it leaves the Court without the benefit of full legal briefing.

### A.     Plaintiff's Claims may be Time-Barred

Plaintiff alleges that the unconstitutional conduct began in November 2015 and continued thereafter. But the Court is only able to discern conduct attributable to Defendants up until December 2017.[3] "In an action arising in New York pursuant to Section 1983, the applicable statute of limitations is borrowed from New York's general statute of limitations for personal injury actions, which is three years." *Ruane v. County of Suffolk*, 923 F. Supp. 2d 454, 458 (E.D.N.Y. 2013) (quoting another source). Similarly, "[t]he statute of limitations for *Bivens* actions arising in New York is three years." *Tapia-Ortiz v. Doe*, 171 F.3d 150, 151 (2d Cir. 1999). Plaintiff filed this action on December 4, 2020. ECF No. 1. Therefore, assuming, the actionable conduct ended in December 2017, most, if not all of Plaintiff's claims would be barred by the applicable statute of limitations. However, Plaintiff notes that she did not learn of some of the alleged defamatory statements until 2019 or 2020. ECF No. 33 at 17. In any event, because the Court cannot say with certainty when the alleged conduct ended, it will proceed to the merits.

### B.     Merits of the FAC and Original Complaint

The Court addresses each of Plaintiff's claims in the FAC, read together with the original complaint and Plaintiff's other submissions.

---

[3] Plaintiff indicates that the licensing revocation proceedings took place in 2018, but it does not appear that that conduct is attributable to Defendants. In addition, Plaintiff insinuates that the abuse from Defendants continued up to the date she filed the case, but she does not identify any specific conduct attributable to Defendants after 2017.

### 1. First Claim Against the DEC

As best as the Court can discern, Plaintiff's first claim is against the DEC for "wrongfully depriv[ing] the Plaintiff of her property without due process." ECF No. 42 ¶ 6. Specifically, Plaintiff alleges that the DEC subjected her to "administrative citations; property/animal[] seizures, deprivation of licensure under false pretense; and additional '[s]pecial' administrative burdens." *Id.*

At the outset, the Court notes that this claim is directed at the DEC, not an individual. Although the original complaint lists Basil Seggos, Commissioner of the DEC, as a defendant, it does not allege that he was personally involved in any wrongful conduct. Section "1983 does not permit such vicarious liability. If an individual defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant." *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir. 2019). Therefore, Plaintiff has not stated a claim against Defendant Seggos.

With respect to the DEC, "[s]tates, state agencies, and state officials sued in their official capacities for monetary relief are not suable 'persons' for the purpose of Section 1983." *Frankel v. New York Office of Children & Fam. Servs.*, No. 11-CV-7973, 2015 WL 1290973, at *2 (S.D.N.Y. Mar. 23, 2015). "The Eleventh Amendment separately bars claims for monetary relief against a state, state agency, or state officials sued in an official capacity." *Id.* "The Eleventh Amendment does not bar, however, suits for injunctive or declaratory relief against state officials in their official capacities." *Id.* Therefore, to the extent Plaintiff seeks to sue the DEC for monetary relief, such relief is not available. To the extent Plaintiff seeks injunctive relief against the DEC for failure to enforce *state law*, the Court does not have subject matter jurisdiction over such a claim. *Fishman v. Daines*, 743 F. Supp. 2d 127, 139 (E.D.N.Y. 2010) ("[T]he Supreme Court held

that the Eleventh Amendment prevents federal courts from granting declaratory or injunctive relief against state officials for violations of *state* law.").

It is unclear whether Plaintiff seeks injunctive relief against the DEC based on violations of federal constitutional law separate from the writs she seeks. Even if Plaintiff could assert a claim against the DEC for violations of federal law, her due process claim would fail. To state a due process claim under the Fourteenth Amendment, Plaintiff must allege facts plausibly suggesting that government action deprived her of a protected property interest. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). Plaintiff does not have a constitutionally-protected property interest in exotic animals. *Wilkins v. Daniels*, 913 F. Supp. 2d 517, 536 (S.D. Ohio 2021), *aff'd*, 744 F.3d 409 (6th Cir. 2014) ("Plaintiffs have a limited property interest in their exotic animals or dangerous wild animals (as described in the Act), such that a fundamental Constitutional right is not implicated."); *Grant v. Am. Soc'y for the Prevention of Cruelty to Animals*, No. 16 CIV. 2765 (ER), 2017 WL 1229737, at *4 (S.D.N.Y. Mar. 31, 2017) ("Owners of dogs, cats and other types of pets have a property interest in their animals under New York law, although the interest is qualified and subject to regulation."). Nor does she have a state-protected interest in the possession of wild animals. *Evelyn Alexander Wildlife Rescue Ctr. Inc. v. N.Y. State Dep't of Envtl. Conserv.*, 57 Misc. 3d 1213(A), at *5 (Sup. Ct. 2017) ("ECL § 11-0105 clearly establishes that the State of New York owns all fish, game, and wildlife and the right of the State to protect wild animals is too well established to be called into question . . . . Any purported right petitioners allege over wildlife is not a property right protected by due process.").

Although Plaintiff may have a property interest in her DEC licenses during the term of the license, *see Thomas-Ateba v. SAMHSA of U.S. Gov't*, No. 13-cv-4662, 2014 WL 1414577, at *6

(E.D.N.Y. Nov. 20, 2019), she has not specifically challenged the revocation of them,[4] *see* ECF No. 50 (noting that Plaintiff's last license is still available), or otherwise alleged that the DEC interfered with such an interest. To the extent Plaintiff also suggests that the DEC violated her due process rights by causing the failure of her wildlife rehabilitation center, such allegations do not state a claim because the Fourteenth Amendment "is not so broad as to protect the right to a particular job." *Cityspect Inc. v. Smith*, 617 F. Supp. 2d 161, 169 (E.D.N.Y. 2009).

2.  **Second and Third Claims Against Powell and Thomas**

Plaintiff next asserts that Defendants William Powell and Kevin Thomas,[5] employees of DEC, "used [their] power to impose civil administrative punishments on my family and continuedto [sic] constantly threaten tens of thousands of future and/or impending fines/sanctions to intimidate" and "widely making it known around my town . . . that [they] intended tobe [sic] such an unrelenting burden that [they] would close my farm, business, and force me out of town." ECF No. 42 ¶¶ 10, 14. They disseminated "unrelenting and nonstop disparaging information that [they] spread and proliferated around my community." *Id.* ¶ 14. In the original complaint, Plaintiff alleged that Defendant Powell told others that she was an animal abuser. At bottom, it appears that Plaintiff seeks to allege that Defendants Powell and Thomas damaged her reputation.[6]

But there is no federally protected right to be free from reputational injury. *See, e.g.*, *Paul v. Davis*, 424 U.S. 693, 701 (1976). A plaintiff may state a claim for defamation against a state employee if she can allege "a stigmatizing statement plus a deprivation of a tangible interest."

---

[4] To the extent she does challenge the revocation of those licenses, the Court notes that those license are the subject of lengthy administrative proceedings. *See* ECF No. 13-1 (attaching various information regarding Plaintiff's DEC licenses). It is not at all apparent to the Court which licenses Plaintiff seeks to challenge, or the basis for challenging them in federal court.

[5] The allegations in the Second and Third Claim largely mirror each other.

[6] To the extent Plaintiff seeks to allege that DEC employees retaliated against her based on her own speech, Plaintiff has not identified what conduct or speech of her own was protected by the First Amendment. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

*Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005). Such a claim requires that the plaintiff show "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (quoting another source). "Thus, even where a plaintiff's allegations would be sufficient to demonstrate a government-imposed stigma, such defamation is not, absent more, a deprivation of a liberty or property interest protected by due process." *Id.*

Plaintiff's claims regarding reputational injury are vague. The only specific allegation she makes is that Defendant Powell spread rumors that she was an animal abuser. ECF No. 1 at 9. Plaintiff claims that these statements are false. But Plaintiff *did* plead guilty to a violation for keeping opossums in a cage overnight during the winter. ECF No. 1 at 5. Even then, the statement—even if it was made—that Plaintiff is an animal abuser is an opinion if the statement did not imply that it was based on any facts. *See Wright v. Yacovone*, No. 12-cv-27, 2014 WL 1165834, at *8 (D. Vt. Mar. 21, 2014) (concluding that statement that person was an abuser, based on agency opinion that abuse had occurred, did not meet the requisite sigma plus standard); *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 286 (1986) ("It is well settled that an opinion cannot form the basis of a claim for defamation since expressions of an opinion false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions." (quoting other sources)). Plaintiff does not allege that Defendant Powell's alleged statement implied that it was based on facts that justified the opinion and it is therefore not actionable. *Id.*

### 3. Fourth Claim Against Therrien

Plaintiff alleges that Defendant Joseph Therrien, the Director of the Special Licenses Unit at the DEC, endeavored to "impose civil administrative burdens, compliance rituals, and other requirements hardly and/or rarely utilized and/or used by his office." ECF No. 42 ¶ 18. More specifically, she claims that Defendant Therrien treated her disparately and that the laws were "not uniformly being applied." ECF No. 42 ¶ 18. The Court construes Plaintiff's allegations as an attempt to make out an equal protection claim.

"The Equal Protection Clause requires the government to treat all similarly situated people alike." *Assoko v. City of New York*, 539 F. Supp. 2d 728, 734 (S.D.N.Y. 2008). Typically, an equal protection claim concerns discrimination based on membership in a protected class but where, as here, "a plaintiff does not actually allege membership in such a class, she can still prevail under a 'class of one' equal protection claim." *Id.* at 734-35. "A class-of-one claim requires the plaintiff to allege facts showing that the plaintiff has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Missere v. Gross*, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011). "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010) (quoting another source). "Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.*

Plaintiff does not satisfy this standard. First, Plaintiff has not alleged any comparators, therefore the Court cannot discern the degree of similarity between her and others. Second, Plaintiff does not allege that Defendant Therrien *intentionally* treated her differently from others. Third, Plaintiff does not allege, as required, that Defendant knew that he was treating Plaintiff differently from similarly situated individuals. *See Giordano v. City of New York*, 274 F.3d 740, 751 (2d Cir. 2001) (requiring that plaintiff plead that defendants knew they were treating plaintiffs differently from anyone else). Fourth, Plaintiff does not allege that the disparate treatment was irrational. Indeed, Plaintiff's own allegations undermine her implicit claim that Defendant Therrien singled her out. Although she alleges that Defendant Therrien's approach is "hardly and/or rarely utilized," ECF No. 42 at ¶ 18, those allegations do not support a conclusion that Defendant Therrien's conduct was so dissimilar from conduct applied to others such that it singled her out. Finally, and critically, it is not at all clear to the Court exactly what Plaintiff alleges Defendant Therrien actually *did*. Aside from general allegations that Defendant Therrien imposed burdens and compliance rituals, none of which Plaintiff alleges exceed his authority, Plaintiff does not allege any specific acts of disparate treatment.

    **4.**    **Fifth Claim Against the USDA**

Plaintiff next alleges that the USDA "deprive[d] the Plaintiff of her property without due process" and engaged in a "disparate, arbitrary, and nonsensical manner of enforcing, disciplining, and using the rules, policies, and regulations to inflict harm and injury" on Plaintiff. ECF No. 42 ¶ 21. Specifically, Plaintiff alleges that the USDA imposed "administrative citations; property/animal seizures, deprivation of licensure under false pretense; and additional 'Special' administrative burdens thrust upon the Plaintiff by these government agents/employees to comply

with such mandates that were not demanded of similarly situation [sic] like persons, i.e., discriminatory discipline." *Id.*

First, Plaintiff cannot bring a *Bivens* action against the USDA. *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 472 (1994) (holding that "the logic of *Bivens* itself does not support" the extension of *Bivens* from federal agents to federal agencies). Because Plaintiff purported to also sue Defendant then-Secretary of Agriculture Sonny Perdue in the original complaint, the Court will construe the allegations in Plaintiff's fifth claim in the FAC as against the Secretary of Agriculture.

Yet, like under § 1983, a defendant is only liable under *Bivens* when he or she is "personally involved in the claimed constitutional violation." *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009). In other words, because vicarious liability is "inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has not pled that former Secretary Perdue or the current Secretary of Agriculture were *personally* involved in the conduct of which she complains. Accordingly, Plaintiff has not made out a *Bivens* claim against the Secretary of Agriculture for damages.

Nor has Plaintiff pled a *Bivens* claim against the Secretary of Agriculture for equitable relief. "The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." *Kantipuly v. United States*, No. 12-cv-932, 2014 WL 7177875, at *5 (W.D.N.Y. Dec. 16, 2014). Accordingly, Plaintiff cannot obtain equitable relief under *Bivens*. *See Kabba v. United States*, 20-cv-237, 2021 WL 2917680, at *8 (W.D.N.Y. July 12, 2021) ("Because a remedy under *Bivens* is limited to monetary relief . . . Plaintiff cannot obtain such equitable relief.") (quoting another source). In any event, the Secretary of Agriculture—

especially the *former* Secretary of Agriculture—has no authority in his *individual* capacity to effectuate the relief Plaintiff seeks, *i.e.,* the termination of USDA employees.[7]

### 5.     Sixth Claim Against D'Ambrosio

Plaintiff asserts that Defendant D'Ambrosio, an Animal Care Inspector at the USDA, imposed "civil administrative burdens, compliance rituals, and other requirements hardly and/or rarely utilized and/or used by his [sic] office in overseeing and monitoring license compliance concerning the public and/or a citizen's desire to properly and lawfully own, possess, and maintain, and/or exhibit exotic animals." ECF No. 42 ¶ 24. Like State Defendants, Plaintiff alleges that Defendant D'Ambrosio failed to uniformly apply the law.

To the extent Plaintiff attempts to assert an equal protection claim against Defendant D'Ambrosio, that claims fails for the same reasons explained above. To the extent Plaintiff seeks to assert that Defendant D'Ambrosio illegally seized her animals, the original complaint and FAC make clear that Plaintiff willingly entrusted the animals to a friend. ECF No. 1 at 5. Neither the original complaint nor the FAC allege that Defendant D'Ambrosio took those animals or prevented Plaintiff's friend from returning the animals to Plaintiff. Moreover, as explained above with respect to the Fourteenth Amendment, courts have not recognized a constitutionally-protected property interest in exotic animals, and none exists in New York. *See Wilkins*, 913 F. Supp. 2d at 535 (noting that any source of property right would derive from state law). Finally, to the extent

---

[7] The Court pauses to address one other possible argument regarding equitable relief against the USDA. On May 3, 2021, Plaintiff filed a "Petition for Review of Agency Final Determination Made by ALJ & Complaint of Deprivation of Rights." ECF No. 23. In it, Plaintiff sought judicial review of an Order from USDA, entered on February 26, 2021, terminating her Animal Welfare Act ("AWA") License, 21-C-0435. ECF No. 23 at 1-2.

As the Court explained in its May 6, 2021 Order denying Plaintiff's motion, pursuant to 7 U.S.C. § 2149, an aggrieved AWA licensee may, "within 60 days after entry" of "a final order of the Secretary," seek review of "such order in the appropriate United States Court of Appeals." Accordingly, to the extent Plaintiff again seeks to challenge the decision regarding her AWA license, the Court does not have jurisdiction over that claim.

Plaintiff requests that Defendant D'Ambrosio return the animals to her, such equitable relief is precluded for the same reasons explained above with respect to the Secretary of Agriculture.

### 6. Writ of Prohibition Against DEC

Plaintiff seeks a writ of prohibition under the All Writs Act, 28 U.S.C. § 1651, prohibiting the DEC from enforcing 6 N.Y.C.R.R. § 180.1, which, according to Plaintiff, "equates private personal property with state property thereby making it immediately subject to seizure." ECF No. 42 ¶ 47. She alleges that the regulation is "unnecessarily restrictive" in that it "blanket prohibits" former exotic animal owners, zoos, and breeders from having ownership of various exotic animals. ECF No. 42 ¶ 27.

The text of the All Writs Act confers on all federal courts the authority to issue orders where three requirements are satisfied: "(1) issuance of the writ must be 'in aid of' the issuing court's jurisdiction; (2) the type of writ requested must be 'necessary or appropriate' to provide such aid to the issuing court's jurisdiction; and (3) the issuance of the writ must be 'agreeable to the usages and principles of law.'" *In re Apple, Inc.*, 149 F. Supp. 3d 341, 350 (E.D.N.Y. 2016) (quoting 28 U.S.C. § 1651(a)). Plaintiff has not alleged how any of these elements are met. Rather, it appears that Plaintiff seeks a finding that 6 N.Y.C.R.R. § 180.1 is unconstitutionally overbroad or vague. Accordingly, the Court construes Plaintiff's claim as one for equitable relief under § 1983.

Even then, Plaintiff has not alleged what is unconstitutionally overbroad or vague about 6 N.Y.C.R.R. § 180.1. That regulation prohibits individuals from, *inter alia*, owning or transporting "animals which present a danger to the health or welfare of the people"—which the regulation then goes on to define—without a license. 6 N.Y.C.R.R. § 180.1(a)-(b). The regulation also permits the State to "seize listed specifies of dangerous animals possessed without permit or license." 6

17

N.Y.C.R.R. § 180.1(e). The Court cannot discern anything vague or overbroad about this regulation, nor does Plaintiff articulate exactly what is vague or overbroad about it, beyond that it has prevented her from possessing some wild animals. The regulation appears to be squarely within the State's police power. *Slaughter-House Cases*, 83 U.S. 36, 62 (1872) (noting that the police power extends "to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the State . . . and persons and property are subject to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the State.").

### 7. Writ of Mandamus Against Federal Defendants

Plaintiff seeks a writ of mandamus requiring that the USDA return her animals to her pursuant to 28 U.S.C. § 1651(A). However, the Court analyzes Plaintiff's claim under 28 U.S.C. § 1361 because that section provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

In any event, Plaintiff does not state a claim for a writ of mandamus. She admits that an individual non-defendant, Tyler C. Thomas, possesses her animals—not the federal government. Accordingly, by Plaintiff's own admission, Federal Defendants do not have the authority to compel the return of animals in the possession of private persons.

### 8. FOIA

Plaintiff appears to have abandoned some claims she made in the original complaint. To the extent Plaintiff sought in the original complaint to seek redress for denial of her FOIA requests, Plaintiff does not indicate that she properly appealed such denial. *See* 5 U.S.C. § 552(a)(6)(A)(i) (requiring that FOIA denials be appealed to heads of agencies); *see also Robert v. Dep't of Justice*,

193 F. App'x 8, 9 (2d Cir. 2006) (summary order) (discussing requirement to exhaust administrative remedies before challenging FOIA denial in federal court).  Dismissal is therefore appropriate.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss, Nos. 13, 35, are GRANTED and Plaintiff's motion to amend the complaint, ECF Nos. 39, 42, is DENIED.  Because Plaintiff amended her complaint in response to Defendants' motions, the Court declines to provide her with another opportunity to do so.  The Clerk shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 14, 2022
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York